# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| LightSquared Inc., *et al.*, | ) | Case No. 12-12080 (SCC) |
| Debtors. | ) | Jointly Administered |

-------------------------------------------------------------- x

| | | |
|---|---|---|
| LightSquared Inc.; | ) | |
| LightSquared LP; and | ) | |
| LightSquared Subsidiary LLC, | ) | No. 13-CV-8157 (RMB) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Deere & Company; Garmin International, Inc.; | ) | |
| Trimble Navigation Limited; The U.S. GPS Industry | ) | |
| Council; The Coalition to Save Our GPS; John Doe No. | ) | |
| 1, as a representative of The Coalition to Save Our GPS; | ) | |
| and John Doe No. 2, as a representative of The Coalition | ) | |
| to Save Our GPS. | ) | |
| | ) | |
| Defendants. | ) | |

-------------------------------------------------------------- x

| | | |
|---|---|---|
| | ) | |
| Harbinger Capital Partners LLC; Harbinger Capital | ) | |
| Partners II LP; Harbinger Capital Partners Master Fund I, | ) | No. 13-CV-5543 (RMB) |
| LTD.; Harbinger Capital Partners Special Situations | ) | |
| Fund, L.P.; Harbinger Capital Partners Special Situations | ) | |
| GP, LLC; HGW GP, LTD; HGW Holding Company, | ) | |
| L.P.; HGW US GP Corp.; HGW US Holding Company, | ) | |
| L.P.; Credit Distressed Blue Line Master Fund, LTD.; | ) | |
| and Global Opportunities Breakaway Ltd., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Deere & Company; Garmin International, Inc.; | ) | |
| Trimble Navigation Limited; and The U.S. GPS Industry | ) | |
| Council, | ) | |
| Defendants. | ) | |

-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN
## <u>SUPPORT OF MOTIONS TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................... 1

Statement of Facts ................................................................................................. 3

ARGUMENT ........................................................................................................ 8

I.      APPLICABLE STANDARDS ................................................................... 8

    A.      Standard of Review ......................................................................... 8

    B.      Choice of Law .................................................................................. 8

II.     PLAINTIFFS' CONTRACT-RELATED CLAIMS MUST BE DISMISSED. ............... 9

    A.      Plaintiffs Fail to Allege Breach of Contract. ............................ 9

        1.      The Letter Agreements Do Not Contain the Alleged Promises ............... 10

        2.      The Alleged Extra Communications Do Not State a Claim for Breach of Contract. ................... 11

        3.      Harbinger Is Not a Third-Party Beneficiary of the 2009 Letter Agreement. ........................ 14

    B.      LightSquared Fails to State A Claim for Promissory Estoppel. ................... 15

        1.      No Definite Promise is Alleged. ................................................ 15

        2.      The Contract Allegations Preclude Promissory Estoppel. ........................ 16

        3.      Actual Reliance is Not Alleged ................................................. 16

    C.      LightSquared's Breach of the Implied Covenant Must Fail. ............... 17

    D.      LightSquared's Quantum Meruit and Unjust Enrichment Claims Fail. ............... 17

III.    THE PETITION CLAUSE BARS ALL OF  LIGHTSQUARED'S AND HARBINGER'S NON-CONTRACT CLAIMS. ................................................ 18

    A.      Defendants' Communications and Acts Were Petitioning Activity. ............... 19

    B.      LightSquared's and Harbinger's Claims Are Based Upon Defendants' Petitioning Activity. ................... 21

IV.     THE FEDERAL COMMUNICATIONS ACT PREEMPTS LIGHTSQUARED'S AND HARBINGER'S CLAIMS. ..................... 22

V.      PLAINTIFFS' MISREPRESENTATION CLAIMS MUST BE DISMISSED ............... 24

    A.      Negligent Misrepresentation and Equitable Estoppel Are Not Recognized Causes of Action. ................... 24

    B.      Plaintiffs' Misrepresentation Allegations Are Plainly Insufficient. ................... 24

        1.      Plaintiffs Have Not Pled With Particularity ................................... 26

        2.      The Representations Are Not Alleged To Be False. ................................ 27

        3.      Actual Reliance Has Not Been Pled. ............................................ 27

# TABLE OF CONTENTS
(continued)

**Page**

|  |  | 4. | The "Coexistence" Promises Are Not Actionable in Tort. | 28 |
|  |  | 5. | Defendants' Statements to MSV and SkyTerra Are Not Actionable by Plaintiffs. | 29 |
|  |  | 6. | There Was No Duty to Disclose. | 30 |
|  | C. |  | Harbinger's Request for Punitive Damages Should Be Stricken | 33 |
| VI. |  |  | HARBINGER'S SECURITIES CLAIMS MUST BE DISMISSED. | 33 |
|  | A. |  | Harbinger's Rule 10b-5 Claim Should Be Dismissed. | 33 |
|  |  | 1. | Harbinger Lacks Standing To Assert A Rule 10b-5 Claim. | 33 |
|  |  | 2. | Harbinger's Complaint Does Not Comply With Rule 9(b) and the PSLRA. | 35 |
|  |  | 3. | Harbinger Has Failed to Satisfy The "In Connection With" Requirement. | 36 |
|  |  | 4. | Harbinger Has Failed to Plead Any Actionable Omission. | 37 |
|  |  | 5. | Harbinger's Claims Against the Corporate Defendants Are Barred By *Janus* | 38 |
|  |  | 6. | Harbinger Has Not Pled Loss Causation. | 39 |
|  | B. |  | Harbinger's Control Person Claim Should Be Dismissed. | 40 |
| VII. |  |  | PLAINTIFFS' REMAINING CLAIMS MUST BE DISMISSED. | 41 |
|  | A. |  | Harbinger's Consumer Protection Claim Fails. | 41 |
|  | B. |  | LightSquared Has Failed to State Claims for Tortious Interference | 42 |
|  | C. |  | LightSquared's Civil Conspiracy Claim Must Be Dismissed. | 44 |
| VIII. |  |  | MOST OF PLAINTIFFS' CLAIMS ARE TIME-BARRED. | 44 |
|  | A. |  | Many of LightSquared's Claims Are Time-Barred. | 44 |
|  | B. |  | Harbinger's Claims Are Largely Time-Barred. | 46 |
|  |  |  | CONCLUSION | 48 |

## TABLE OF CONTENTS
(continued)

Page

**ADDENDUM**

Ex. A:      July 17, 2002 Letter to FCC signed by Mobile Satellite
            Ventures LP and GPS Council

Ex. B:      August 17, 2009 Letter to FCC signed by SkyTerra
            and GPS Council

## CONCORDANCE

| **LightSquared Count** | | **Where Addressed** |
|---|---|---|
| I. | Promissory Estoppel | Point II.B (pp. 15-17) |
| II. | Quantum Meruit | Point II.D (pp. 17-18) |
| III. | Breach of Contract (2002 Agreement) | Point II.A (pp. 9-15) |
| IV. | Breach of Contract (2009 Agreement) | Point II.A (pp. 9-15) |
| V. | Breach of Implied Covenant | Point II.C (p. 17) |
| VI. | Unjust Enrichment | Points II.D (pp. 17-18) |
| VII. | Negligent Misrepresentation | Point V.A (p. 24) |
| VIII. | Constructive Fraud | Point V.B (pp. 24-33) |
| IX. | Tortious Interference with Existing Relationships | Point VII.B (pp. 42-44) |
| X. | Tortious Interference with Prospective Relationships | Point VII.B (pp. 42-44) |
| XI. | Civil Conspiracy | Point VII.C (p. 44) |

| **Harbinger Count** | | **Where Addressed** |
|---|---|---|
| I. | Violation of Rule 10b-5 | Points VI.A (pp. 33-40) |
| II. | Violation of Section 20(a) | Point VI.B (pp. 40-41) |
| III. | Fraud | Point V.B (pp. 24-33) |
| IV. | Negligent Misrepresentation | Point V.A (p. 24) |
| V. | Constructive Fraud | Point V.B (pp. 24-33) |
| VI. | Equitable Estoppel | Point V.A (p. 24) |
| VII. | Breach of 2009 Agreement | Point II.A.3 (pp. 14-15) |
| VIII. | Deceptive Consumer Practices | Point VII.A (pp. 41-42) |

## TABLE OF AUTHORITIES

**Page**

**CASES**

*@Wireless Enterprises, Inc. v. AI Consulting, LLC,*
   2006 WL 3370696 (W.D.N.Y. Oct. 30, 2006) ........................................31

*A.T. Massey Coal Co., Inc. v. Rudimex GmbH,*
   2006 WL 44278 (E.D. Va. Jan. 9, 2006) ........................................24

*Abercrombie v. Andrew Coll.,*
   438 F. Supp. 2d 243 (S.D.N.Y. 2006)........................................26

*Alliance Tech. Grp., LLC v. Achieve 1, LLC,*
   2013 WL 143500 (E.D. Va. Jan. 11, 2013) ........................................43

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
   486 U.S. 492 (1988)........................................20, 21

*Allstate Ins. Co. v. Stolarz,*
   81 N.Y.2d 219 (N.Y. 1993) ........................................9

*Amusement Indus., Inc. v. Stern,*
   786 F. Supp. 2d 758 (S.D.N.Y. 2011)........................................32

*Apace Commc'ns, Ltd. v. Burke,*
   522 F. Supp. 2d 509 (W.D.N.Y. 2007) ........................................27

*Apple, Inc. v. Motorola Mobility, Inc.,*
   886 F. Supp. 2d 1061 (W.D. Wisc. 2012)........................................11

*Architectronics, Inc. v. Control Sys., Inc.,*
   935 F. Supp. 425 (S.D.N.Y. 1996)........................................47

*Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.,*
   622 F. Supp. 2d 46 (S.D.N.Y. 2009)........................................39

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.,*
   885 F. Supp. 2d 156 (D.D.C. 2012) ........................................15, 17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................8

*ATSI Commc'n, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007)........................................40

*Bank of Montreal v. Signet Bank,*
   193 F.3d 818 (4th Cir. 1999) ........................................33

*Bastien v. AT&T Wireless Servs., Inc.*,
205 F.3d 983 (7th Cir. 2000) ................................................................22

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*,
229 F.3d 1135 (2d Cir. 2000)...............................................................19

*Beasley v. FV-I, Inc.*,
2013 WL 1192018 (E.D. Va. Mar. 21, 2013) ......................................44

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*,
235 F. Supp. 2d 485 (E.D. Va. 2002) ...................................................12

*Blackwelder v. Millman*,
522 F.2d 766 (4th Cir. 1975) ................................................................46

*Blythe v. Deutsche Bank AG*,
399 F. Supp. 2d 274 (S.D.N.Y. 2005)...................................................36

*Boudinot v. Shrader*,
2012 WL 489215 (S.D.N.Y. Feb. 15, 2012)........................................46

*Breton LLC v. Graphic Arts Mut. Ins. Co.*,
2010 WL 678128 (E.D. Va. Feb. 24, 2010)..........................................12

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996) .....................................................................48

*Bright v. QSP, Inc.*,
20 F.3d 1300 (4th Cir. 1994) ................................................................18

*Brink's Ltd. v. South African Airways*,
93 F.3d 1022 (2d Cir. 1996)...................................................................9

*Brownsville Golden Age Nursing Home v. Wells*,
839 F.2d 155 (3d Cir. 1988)..................................................................19

*CAC Grp., Inc. v. Maxim Grp., LLC*,
2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012).......................................26

*Caldwell v. Craig*,
62 Va. 132 (1871) .................................................................................12

*Carter v. Bank of Am.*,
845 F. Supp. 2d 140 (D.D.C. 2012)......................................................16

*Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. "Rosvoorouzheinie,"*
172 F. Supp. 2d 79 (D.D.C. 2001) ........................................................28

*Chiarella v. United States*,
  445 U.S. 222 (1980)........................................................................37

*Clinton v. Brown & Williamson Holdings, Inc.*,
  2013 WL 3111122 (S.D.N.Y. June 20, 2013) .......................................21

*Cnty. of Grayson v. RA-Tech Servs.*,
  2013 U.S. Dist. LEXIS 161323 (W.D. Va. Nov. 12, 2013) ....................29

*Coastal States Mktg., Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) .........................................................20

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
  944 F.2d 1525 (9th Cir. 1991) .........................................................20

*Copenhaver v. Rogers*,
  384 S.E. 2d 593 (Va. 1989)..............................................................14

*Coppola v. Applied Elec. Corp.*,
  1998 WL 667934 (E.D.N.Y. Aug. 3, 1998)...........................................37

*Cross v. Zyburo*,
  587 N.Y.S.2d 670 (2d Dep't 1992).....................................................33

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)..............................................................41

*Cumisky v. James River Corp.*,
  1995 WL 520021 (E.D.N.Y. Aug. 17, 1995)..........................................31

*Cyberlock Consulting, Inc. v. Info. Experts, Inc.*,
  939 F. Supp. 2d 572 (E.D. Va. 2013) ..................................................10

*Daisley v. Riggs Bank, N.A.*,
  372 F. Supp. 2d 61 (D.D.C. 2005) .....................................................16

*Davison v. FastComm*,
  46 Va. Cir. 25 (1998) .......................................................................10

*Delshah Group LLC v. Javeri*,
  2013 WL 2322488 (S.D.N.Y. May 28, 2013) ........................................39

*Duane Reade, Inc. v. Clark*,
  2004 WL 690191 (Sup. Ct. N.Y. Co. Mar. 31, 2004)...............................8

*Dura Pharm. Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................39

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009).............................................................................35

*Ernest Lawrence Grp. v. Mktg. Americas, Inc.*,
   2005 WL 2811781 (S.D.N.Y. Oct. 27, 2005) ........................................................30

*Evans v. New York Botanical Garden*,
   2002 WL 31002814 (S.D.N.Y. Sept. 4, 2002)........................................................3

*Fentress Families Trust v. Va. Elec. & Power Co.*,
   81 Va. Cir. 67 (2010) ...................................................................................27

*Fezzani v. Bear, Stearns & Co. Inc.*,
   716 F.3d 18 (2d Cir. 2013)...............................................................................38

*Filak v. George*,
   594 S.E.2d 610 (Va. 2004)...............................................................................29

*Firestone v. Wiley*,
   485 F. Supp. 2d 694 (E.D. Va. 2007) ..................................................................44

*Fisher Bros. Sales, Inc. v. United Trading Co. Desarrollo y Comercio, S.A.*,
   595 N.Y.S.2d 175 (1993)................................................................................33

*Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*,
   202 F.3d 223 (4th Cir. 2000) ...........................................................................14

*Frere v. Orthofix, Inc.*,
   2003 WL 24091982 (S.D.N.Y. May 21, 2003) .........................................................1

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
   313 F. Supp. 2d 339 (S.D.N.Y. 2004)..............................................................21, 22

*Frutico S.A. de C.V. v. Bankers Trust Co.*,
   833 F. Supp. 288 (S.D.N.Y. 1993).....................................................................48

*GE Investors, Ret. Plan v. Gen. Elec. Co.*,
   447 F. App'x 229 (2d Cir. 2011) .......................................................................40

*Gershon v. Wal-Mart Stores, Inc.*,
   901 F. Supp. 128 (S.D.N.Y. 1995).....................................................................37

*Glassberg v. Boyd*,
   116 A.2d 711 (Del. Ch. 1955)..........................................................................46

*Glick v. Berk & Michaels, P.C.*,
   1991 WL 152614 (S.D.N.Y. July 26, 1991) ...........................................................41

*Glonti v. Stevenson*,
  2009 WL 311293 (S.D.N.Y. Feb. 6, 2009)............................................................46

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2004) ..........................................................................................41, 42

*Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk*,
  848 F. Supp. 446 (S.D.N.Y. 1994).........................................................................32

*Green v. Niles*,
  2012 WL 987473 (S.D.N.Y. March 23, 2012) .......................................................11

*Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*,
  2009 U.S. Dist. LEXIS 93471 (E.D. Va. Sept. 29, 2009)................................17, 18

*Hartog Rahal Foods, Inc. v. Quality Kitchen Corp.*,
  1997 WL 118367 (S.D.N.Y. Mar. 14, 1997) .........................................................16

*Hercules & Co. v. Shama Rest. Corp.*,
  613 A.2d 916 (D.C. 1992) .....................................................................................28

*Hercules, Inc. v. Tomaszewski*,
  2011 WL 6951839 (Del. Com. Pl. Dec. 29, 2011) ................................................45

*Hirschfeld v. Spanakos*,
  104 F.3d 16 (2d Cir. 1983).....................................................................................19

*Horner v. Ahern*,
  153 S.E.2d 216 (Va. 1967).....................................................................................31

*Horner v. Holt*,
  47 S.E. 2d 365 (Va. 1948).......................................................................................14

*Hunt v. Enzo Biochem, Inc.*,
  530 F. Supp. 2d 580 (S.D.N.Y. 2008)....................................................................26

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010)....................................................................35

*In re BNX Sys. Corp.*,
  310 F. App'x 574 (4th Cir. 2009) ...........................................................................10

*In re Buspirone Patent Litig.*,
  185 F. Supp. 2d 363 (S.D.N.Y. 2002)....................................................................19

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
  2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009)......................................................20

*In re Gaston & Snow*,
  243 F.3d 599 (2d Cir. 2001)......................................................................8

*In re Global Crossing, Ltd. Sec. Litig.*,
  2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)................................................40, 41

*In re J.P. Jeanneret Assocs., Inc.*,
  769 F. Supp. 2d 340 (S.D.N.Y. 2011)..........................................................38

*In re Lehman Bros. Sec. & Erisa Litig.*,
  2013 WL 3989066 (S.D.N.Y. July 31, 2013) ...............................................32

*In re Marketxt Holdings Corp.*,
  361 B.R. 369 (Bankr. S.D.N.Y. 2007)..........................................................33

*In re Nortel*,
  238 F. Supp. 2d 613 (S.D.N.Y. 2003)..........................................................34

*In re Optimal U.S. Litig.*,
  2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011)................................................38

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)...............................................38

*In re Vebeliunas*,
  252 B.R. 878 (Bankr. S.D.N.Y. 2000)..........................................................31

*In re Wireless Consumers Alliance, Inc.*,
  15 F.C.C.R. 17021 (2000).........................................................................22

*Ins. Co. of N. Am. v. NVF Co.*,
  2000 WL 305338 (Del. Super. Ct. Jan. 20, 2000) ........................................45

*Int'l Motor Sports Grp., Inc. v. Gordon*,
  1999 WL 619633 (S.D.N.Y. Aug. 16, 1999).................................................28

*Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*,
  977 F.2d 895 (4th Cir. 1992) ....................................................................10

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011)..............................................................................38

*Jeffrey J. Nelson & Assocs., Inc. v. LePore*,
  2012 WL 2673242 (E.D. Va. July 5, 2012)...............................................43, 44

*Johnson v. Zerbst*,
  304 U.S. 458 (1938)..................................................................................11

*Jones v. Fulton Bank, N.A.*,
   2013 WL 3788428 (E.D. Va. July 18, 2013) ........................................................................17

*Josephson v. United Healthcare Corp.*,
   2012 WL 4511365 (E.D.N.Y. Sept. 28, 2012) ......................................................................42

*JP Morgan Chase Bank v. Winnick*,
   350 F. Supp. 2d 393 (S.D.N.Y. 2004)..................................................................................32

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................................35

*Kaufman v. Sirius XM Radio, Inc.*,
   751 F. Supp. 2d 681 (S.D.N.Y. 2010)..................................................................................41

*Kavowras v. New York Times Co.*,
   328 F.3d 50 (2d Cir. 2003)......................................................................................................3

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ...........................................................................................26

*Krasner v. Rahfco Funds LP*,
   2012 WL 4069300 (S.D.N.Y. Aug. 9, 2012) .......................................................................39

*Krasner v. Rahfco Funds LP*,
   2012 WL 4069362 (S.D.N.Y. Aug. 9, 2012) .......................................................................26

*Kwan v. Schlein,*
   441 F. Supp. 2d 491 (S.D.N.Y. 2006)..................................................................................47

*Lawler v. Schumacher Filters Am., Inc.*,
   832 F. Supp. 1044 (E.D. Va. 1993) .....................................................................................28

*Lentell v. Merrill Lynch & Co.,*
   396 F.3d 161 ...............................................................................................................26, 39, 40

*Lescs v. William R. Hughes, Inc.*,
   1999 WL 12913 (4th Cir. Jan. 14, 1999) .............................................................................24

*Leykin v. AT & T Corp.*,
   423 F. Supp. 2d 229 (S.D.N.Y. 2006)..............................................................................36, 37

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138 (2d Cir. 2013)....................................................................................................8

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*,
   902 F. Supp. 2d 329 (S.D.N.Y. 2012)..................................................................................35

*Lismont v. Alexander Binzel Corp.*,
 2013 WL 6095461 (E.D. Va. Nov. 18, 2013) ........................................................45

*Litman v. Toll Bros., Inc.*,
 263 F. App'x 269 (4th Cir. 2008) .........................................................................12

*Long Island Lighting Co. v. Imo Indus. Inc.*,
 6 F.3d 876 (2d Cir. 1993) ....................................................................................47

*Lopez v. Aeropostale, Inc.*,
 2012 U.S. Dist. LEXIS 19956 (S.D.N.Y. Feb. 10, 2012) .....................................27

*Mandarin Trading Ltd. v. Wildenstein*,
 16 N.Y.3d 173 (2011) .........................................................................................29

*Masco Contractor Servs. E., Inc. v. Beals*,
 279 F. Supp. 2d 699 (E.D. Va. 2003) ..................................................................43

*Matanic v. Wells Fargo Bank, N.A.*,
 2012 WL 4321634 (E.D. Va. Sept. 19, 2012) .......................................................17

*Matsushita Elecs. Corp. v. Loral Corp.*,
 974 F. Supp. 345 (S.D.N.Y. 1997) ......................................................................22

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
 914 N.Y.S.2d 604 (Sup. Ct. N.Y. Cnty. 2010) ....................................................30

*Merck & Co., Inc. v. Reynolds*,
 559 U.S. 633 (2010) ...........................................................................................46

*Meridien Int'l Bank Ltd. v. Gov't of the Rep. of Liberia*,
 23 F. Supp. 2d 439 (S.D.N.Y. 1998) ...................................................................46

*Mongold v. Woods*,
 677 S.E.2d 288 (Va. 2009) ..................................................................................15

*Moorman v. Blackstock, Inc.*,
 661 S.E. 2d 404 (Va. 2008) .................................................................................14

*Morris v, Runyon*,
 870 F. Supp. 362 (D.D.C. 1994) .........................................................................24

*MP Leasing Corp. v. Colonna's Shipyard*,
 2009 WL 2581575 (E.D. Va. May 8, 2009) .........................................................18

*Muto v. CBS Corp.*,
 668 F.3d 53 (2d Cir. 2012) ..................................................................................44

*MyPlayCity, Inc. v. Conduit Ltd.*,
  2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) .......................................................42

*N. Am. Van Lines, Inc. v. Am. Int'l Cos.*,
  2006 WL 908653 (Sup. Ct. N.Y. Cnty. 2006) ......................................................47

*Natowitz on Behalf of Lexington/56th Assocs. v. Mehlman*,
  567 F. Supp. 942 (S.D.N.Y. 1983).................................................................36, 37

*Nay v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2006 WL 2109467 (S.D.N.Y. July 25, 2006) .....................................................26

*Newbro v. Freed*,
  409 F. Supp. 2d 386 (S.D.N.Y. 2006).............................................................30, 32

*Ningbo Prods. Imp. & Exp. Co., Ltd. v. Eliau*,
  2011 WL 5142756 (S.D.N.Y. Oct. 31, 2011) .....................................................10

*Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*,
  677 F. Supp. 2d 852 (E.D. Va. 2009) .................................................................31

*Norfolk-Portsmouth Newspapers, Inc. v. Stott*,
  156 S.E.2d 610 (Va. 1967)..................................................................................15

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
  51 F. Supp. 2d 457 (S.D.N.Y. 1999)...............................................................47, 48

*Ontario Pub. Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*,
  369 F.3d 27 (2d Cir. 2004).................................................................................33

*Peterson v. City of N.Y.*,
  1998 WL 247530 (S.D.N.Y. May 14, 1998) ......................................................24

*Plesha v. Ferguson*,
  725 F. Supp. 2d 106 (D.D.C. 2010) ...............................................................16, 17

*Prickett v. N.Y. Life Ins. Co.*,
  896 F. Supp. 2d 236 (S.D.N.Y. 2012).................................................................41

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012).................................................................29

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
  219 F.3d 92 (2d Cir. 2000).................................................................................20

*Pro-Concepts, LLC v. Resh*,
  2014 WL 549294 (E.D. Va. Feb. 11, 2014).........................................................24

*Prof'l Realty Corp. v. Bender*,
222 S.E.2d 810 (Va. 1976)...............................................................................15

*Pross v. Katz*,
784 F.2d 455 (2d Cir. 1986)............................................................................36

*Rand v. Anaconda-Ericsson, Inc.*,
794 F.2d 843 (2d Cir. 1986)............................................................................37

*RBA Capital, LP v. Anonick*,
2009 U.S. Dist. LEXIS 29266 (E.D. Va. Apr. 8, 2009)....................................27

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007).............................................................................3

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S., LLP*,
682 F.3d 1043 (D.C. Cir. 2012) ......................................................................13

*Sabilia v. Richmond*,
2011 WL 7091353 (S.D.N.Y. Oct. 26, 2011) ..................................................47

*Saylor v. Lindsley*,
302 F. Supp. 1174 (S.D.N.Y. 1969)................................................................45

*Schultz v. Boy Scouts of Am.*,
65 N.Y.2d 189 (1985) .......................................................................................9

*Scottrade, Inc. v. BroCo Investments, Inc.*,
774 F. Supp. 2d 573 (S.D.N.Y. 2011).............................................................35

*Sebastian Holdings, Inc. v. Deutsche Bank AG*,
912 N.Y.S.2d 13 (1st Dep't 2010) ..................................................................32

*Sinay v. CNOOC Ltd.*,
2013 WL 1890291 (S.D.N.Y. May 6, 2013) ...................................................35

*Smith v. Henderson*,
2013 WL 5592905 (D.D.C. Oct. 10, 2013) .....................................................15

*Sofi Classic S.A. de C.V. v. Hurowitz*,
444 F. Supp. 2d 231 (S.D.N.Y. 2006)..............................................................26

*Soley v. Wasserman*,
823 F. Supp. 2d 221 (S.D.N.Y. 2011)..............................................................13

*Solutia Inc. v. FMC Corp.*,
385 F. Supp. 2d 324 (S.D.N.Y. 2005)..............................................................15

*Steginsky v. Xcelera, Inc.*,
    741 F.3d 365 (2d Cir. 2014)..............................................................................37

*Supervalu, Inc. v. Johnson*,
    666 S.E.2d 335 (Va. 2008)................................................................................29

*Tamar v. Mind C.T.I., Ltd.*,
    723 F. Supp. 2d 546 (S.D.N.Y. 2010)...............................................................40

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) ................................................................22, 23, 24

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*,
    158 F. Supp. 2d 335 (S.D.N.Y. 2001)...............................................................32

*Tuosto v. Philip Morris USA Inc.*,
    2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)...................................................19

*United Mine Workers of America v. Pennington*,
    381 U.S. 675 (1965)..........................................................................................21

*Victor v. Riklis*,
    1992 WL 122911 (S.D.N.Y. May 15, 1992) .....................................................26

*Vitolo v. Mentor H/S, Inc.*,
    426 F. Supp. 2d 28 (E.D.N.Y. 2006) ................................................................42

*Von Hoffmann v. Prudential Ins. Co. of Am.*,
    202 F. Supp. 2d 252 (S.D.N.Y. 2002)...............................................................47

*W. Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*,
    520 F. Supp. 2d 777 (E.D. Va. 2007) ...............................................................30

*Waite v. Schoenbach*,
    2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ...................................................31

*Ward's Equip., Inc. v. New Holland N. Am., Inc.*,
    493 S.E.2d 516 (Va. 1997)................................................................................17

*Westpac Banking Corp. v. Deschamps*,
    66 N.Y.2d 16 (1985) .........................................................................................30

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
    2008 WL 5352063 (Del. Ch. Dec. 23, 2008).....................................................45

*Wolf v. Fed. Nat'l Mortg. Ass'n*,
    830 F. Supp. 2d 153 (W.D. Va. 2011) ..............................................................29

## STATUTES AND RULES

11 U.S.C. § 108 ................................................................................................................. 44

28 U.S.C. § 1658(b)(2) .................................................................................................... 46

47 U.S.C. § 332(c)(3)(A) ................................................................................................ 22

Civ. Rts L. § 76-a .............................................................................................................. 8

Del. Code Ann. Title 10, § 8106 ..................................................................................... 45

Federal Rule of Civil Procedure 8(a) ............................................................................. 10

Federal Rule of Civil Procedure 9(b) ............................................................ 10, 26, 35, 38

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 8

New York General Business Law § 349 ..................................................................... 41, 42

N.Y. CPLR § 3211(g) ....................................................................................................... 8

N.Y. CPLR § 202 ............................................................................................................ 44

N.Y. CPLR § 213(1) ....................................................................................................... 45

N.Y. CPLR § 213(2) ....................................................................................................... 45

N.Y. CPLR § 213(8) ....................................................................................................... 47

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z–1, 78u–4 .................. 35

Va. Code Ann. § 8.01-246 ............................................................................................... 45

Va. Code § 11-2 .............................................................................................................. 14

## OTHER AUTHORITIES

Rest. (Second) of Conflict of Laws, § 188 cmt. ................................................................ 9

U.S. Const., Amendment I .................................................................................... 8, 18, 19

Defendants Deere & Company, Garmin International, Inc., Trimble Navigation Limited and The U.S. GPS Industry Council (the "GPS Council") (collectively "Defendants")[1] submit this Memorandum and the accompanying Declaration of William A. Isaacson in support of their Motions to Dismiss the Complaints.[2]

## Preliminary Statement

LightSquared's and Harbinger's eighteen counts depend on a single easily dismissed assumption.  According to Plaintiffs, Defendants' 2010 Federal Communications Commission ("FCC") objections to LightSquared's proposal breached "promises" to its predecessors that their satellite network "could coexist with GPS operations."  Harbinger—as did LightSquared in its original Complaint—asserts that those statements are found in letters filed with the FCC in 2002 and 2009 (the "Letter Agreements").  LightSquared now asserts that the Letter Agreements are incomplete summaries of supposed promises made in earlier emails and verbal exchanges.  Both Plaintiffs imply, without actually alleging, that Defendants agreed to waive their right to object to future FCC applications (the "FCC Waiver").  And LightSquared goes even further, implying, but again without actually alleging, that Defendants promised in perpetuity to design GPS receivers to be impervious to interference generated by future satellite or terrestrial systems (the "Design Change").

---

[1] The undersigned counsel do not represent the Coalition to Save Our GPS, which is an informal group that lacks the capacity to be sued.  *See Frere v. Orthofix, Inc.*, 2003 WL 24091982, at *4 (S.D.N.Y. May 21, 2003) (Berman, J.) (an "unincorporated association may not sue or be sued in its own name").  Additionally, service of the Complaint on one member is not sufficient to effect service on the group.

[2] Unless otherwise noted, all emphasis is our own.  LightSquared's first Complaint will be cited as "LC", its Amended Complaint as "LAC," and the Third Amended Harbinger Complaint as "HAC."  Exhibits to the Declaration of William A. Isaacson will be cited as "Ex. __" and exhibits to the Addendum to this Memorandum as "Adden. Ex. __."

As the Court can readily determine from the brief text of the Letter Agreements, neither provides any support for these wildly implausible claims. (The Letter Agreements appear as Exhibits A and B to the Addendum to this Memorandum.) If the parties had intended to create perpetual commitments impacting the very lifeblood of the world's leading GPS manufacturers, they would have done so expressly. But the Letter Agreements do not contain any FCC Waiver and Design Change promises. Nor does the LightSquared Complaint identify any other communications concerning these promises. The Letter Agreements resolved a specific objection raised by the GPS Council and say nothing about waiving any other objections, known or unknown, present or future. These glaring defects are fatal to all of Plaintiffs' baseless claims.

The Complaints must fail for multiple, independent reasons. *First*, neither Plaintiff asserts a cognizable and plausible claim for relief under applicable state law. Their contract-based claims fail because the Letter Agreements refute, rather than support, Plaintiffs' central theories, and their exotic quasi-contract claims cannot overcome the Letter Agreements' plain language. LightSquared's and Harbinger's various misrepresentation claims fail because no representation is even alleged, much less pled with particularity, and, as a matter of black letter doctrine, a breach of a promise cannot sound in tort. *Second*, the *Noerr-Pennington* doctrine and the express preemption provisions of the Federal Communications Act ("FCA") doom Plaintiffs' claims because the Complaints' multi-hundred paragraph discussion of a decade's worth of FCC regulatory proceedings demonstrates that the Complaints are squarely based on Defendants' protected petitioning activity—these allegations are not mere "factual background." LAC ¶ 141. *Third*, Harbinger's attenuated federal securities fraud claim fails because, among other reasons, Harbinger lacks standing to assert a 10b-5 claim. *Finally*, many of Plaintiffs' claims are time-barred.

## Statement of Facts[3]

Harbinger and LightSquared seek to hold Defendants responsible for alleged "promises, agreements and representations" (the "Alleged Promises") (LAC ¶ 1; *see* HAC ¶¶ 7, 91) made in connection with 2002 and 2009 FCC applications respectively by Mobile Satellite Ventures LP ("MSV") and, MSV's successor, SkyTerra Inc. (collectively "SkyTerra").  MSV and SkyTerra sought authority to supplement their license for mobile satellite services ("MSS") with, respectively, outdoor and indoor land-based ("terrestrial") transmitters to be used in locations where satellite transmissions would be degraded by geographic features or buildings (the "Satellite Plan").  LAC ¶¶ 2-4, 47; HAC ¶ 70.  Defendant GPS Council filed objections with the FCC to both the 2002 and 2009 applications regarding the Satellite Plan's possible "out-of-band emissions," namely, signals outside MSV's and SkyTerra's assigned frequencies.  LAC ¶ 49; HAC ¶¶ 109, 145.  The 2003 and 2010 FCC orders resolved this specific issue, following the 2002 and 2009 Letter Agreements signed by the GPS Council and, respectively, MSV and SkyTerra.  LAC ¶¶ 54, 59, 79, 82; HAC ¶¶ 111, 113, 154, 156.

By 2010, Harbinger "saw an opportunity to build a new nationwide mobile communications network" (HAC ¶ 67) in which "most transmissions had to be terrestrial" (the "Terrestrial Plan").  *Id.* ¶ 74.  Accordingly, in November 2010—having been acquired by Harbinger and having purchased SkyTerra and its Satellite Plan license—LightSquared presented the FCC with Harbinger's new Terrestrial Plan.  LAC ¶ 118; HAC ¶ 175; Ex. 1.  That plan

---

[3] These facts are drawn from either the Harbinger and LightSquared Complaints or relevant FCC public dockets.  The Court may take judicial notice of documents that are integral to or referenced in the Complaints, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), "the records of . . . administrative procedures," *Evans v. New York Botanical Garden*, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002), and "public filings," *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003).

sought to change SkyTerra's satellite-based license into one that would permit ubiquitous broadband service using terrestrial transmitters and handsets that received only terrestrial, rather than satellite, signals.  These transmissions would be made in the frequency spectrum devoted to relatively weak, and thus sensitive, satellite signals.  Instead of the out-of-band emissions issues implicated by SkyTerra's previous Satellite Plan, the LightSquared Terrestrial Plan gave rise to a different concern:  widespread GPS "receiver overload." [4]  LAC ¶ 98; HAC ¶¶ 91, 170.  This issue, not out-of-band emissions, ultimately caused the FCC not to approve LightSquared's Terrestrial Plan.   LAC ¶¶ 139-140; HAC ¶ 204; Exs. 2 & 3.

Ignoring the fundamental differences between SkyTerra's and LightSquared's plans and the distinct interference problems presented by each, LightSquared and Harbinger allege that Defendants' *receiver overload* objections, which were first raised in fall 2010, breached the 2002 and 2009 Alleged Promises, which had been occasioned by the Satellite Plan's *out-of-band emissions*.  LAC ¶¶ 159, 167; HAC ¶ 253.  This narrative is belied by the Complaints and the FCC record upon which they rely.  Beginning in 2003, the FCC authorized use of satellite-frequencies for land-based "fill-in" transmissions in those discrete areas where satellite signals were degraded by geographical and other features—a limited service known as the Ancillary Terrestrial Component ("ATC").  Ex. 4, ¶ 1.  The FCC conditioned ATC service on, among other things, compliance with an "Integrated Service Rule."  SkyTerra agreed to satisfy the Integrated Service Rule by restricting terrestrial transmissions to "dual-mode" handsets—namely, those that remained capable of communicating with both satellite and terrestrial stations.  HAC ¶ 122; *see* LAC ¶¶ 36, 66, 118; Ex. 3, ¶ 87; Ex. 4, ¶ 8.  Prior to 2010, the FCC's position was:  "we do not

---

[4] The Harbinger Complaint refers to receiver overload as "Out-of-Band Receptions" or "OOBR" interference.  HAC ¶ 51.

intend, nor will we permit, the terrestrial component [ATC] to become a standalone service."
Ex. 4, ¶ 1.

In response to SkyTerra's 2002 and 2009 Satellite Plan applications, Defendant GPS
Council and government GPS users informed the FCC that the contemplated terrestrial "fill-in"
signals could produce out-of-band emissions that would disrupt GPS receivers.  LAC ¶¶ 50-58;
HAC ¶¶ 108-114.  These issues were addressed by the brief 2002 and 2009 Letter Agreements,
each of which was filed on FCC dockets devoted to MSV's or SkyTerra's Satellite Plan.  As the
Court can readily determine, the Letter Agreements simply "urge[d] the Commission to adopt in
the [Satellite Plan] proceedings the [agreed out-of-band emissions] limits," with the GPS Council
agreeing to withdraw its existing objections if the FCC did so.  Adden. Exs. A & B.  Neither
filing suggested, even remotely, that the GPS Council or any other Defendant would change GPS
receiver designs or would remain silent in the event it identified a different threat to the nation's
GPS system, which the new proposal certainly presented.

After Harbinger acquired control of LightSquared, it changed the as-yet unimplemented
Satellite Plan.  As LightSquared informed the FCC on November 18, 2010:  "its plans for
providing service have evolved since . . . 2004 and . . . its current business plan differs from that
of its predecessor, which had demonstrated compliance with the Commission's integrated service
requirements by planning to use dual-mode handsets exclusively."  Ex. 5 ¶ 8.  LightSquared now
sought authorization for a nationwide system that would service "'terrestrial only' handsets that
would not communicate with satellites."  LAC ¶ 118; *accord* HAC ¶ 175.  This proposed

violation of the Integrated Service Rule raised, for the first time, the prospect of widespread GPS receiver overload.[5]

Therefore, within weeks of LightSquared's request for "terrestrial only" authority, the United States Department of Defense ("DoD"), the Federal Aviation Administration ("FAA"), other government agencies and Defendant GPS Council informed the FCC that the Terrestrial Plan would cause dangerous "overload interference" to GPS reception by military services, commercial aircraft, first responders, and millions of private users.  Ex. 5 ¶ 20.

As LightSquared and Harbinger admit, the 2010 receiver overload issue was "another problem" (LAC ¶ 98; HAC ¶ 84) that was "not related to" (LAC ¶ 91) the out-of-band emissions questions resolved by the 2002 and 2009 Letter Agreements.  LightSquared and Harbinger do not allege, nor could they, that the previously resolved out-of-band emissions issue played any role in the FCC's subsequent failure to authorize the new Terrestrial Plan.  Plaintiffs' theory, instead, is that the out-of-band emission issue was fundamentally different from the receiver overload issue, and that receiver overload was not discussed in connection with SkyTerra's Satellite Plan.  LAC ¶¶ 94, 98; HAC ¶¶ 91, 170.

On January 21, 2011, without any suggestion that it had been misled or that any agreements had been breached, LightSquared volunteered that "as a condition on a grant of [the Terrestrial Plan] request," the FCC should "creat[e] . . . a process to address interference concerns regarding GPS . . . that . . . must be completed to the FCC's satisfaction before LightSquared commences . . . commercial service."  Ex. 6 at 1-2; *see* Ex. 5, ¶ 40.

---

[5] Because it required handsets to continue to receive interference-free satellite communications, the Integrated Service Rule, as well as other applicable FCC rules and policies, effectively precluded significant receiver overload.  Ex. 4 at ¶¶ 130-188.

On January 26, 2011, the FCC determined that LightSquared's Terrestrial Plan "fails to satisfy the integrated service rule" because "it contemplates [exclusively terrestrial] subscriptions to consumers" (the "Terrestrial Plan Order").  Ex. 5 ¶ 24.  The FCC waived that rule on the condition that, as LightSquared had proposed, the receiver overload problem was resolved "to the Commission's satisfaction before LightSquared commences offering commercial service."  *Id.* ¶ 40.

In February 2012, after a year of testing and analysis, the National Telecommunications and Information Administration ("NTIA"), on behalf of government agencies, including DoD, informed the FCC that LightSquared's Terrestrial Plan would seriously imperil the nation's GPS system.  For example, the FAA reported that "the LightSquared proposals are not compatible with several GPS-dependent aircraft safety-of-flight systems."  Exs. 7, 8 & 9.  According to NTIA, "LightSquared's proposed mobile broadband network will impact GPS services and . . . there is *no practical way* to mitigate the potential interference at this time."  Ex. 8 at 1.

On February 15, 2012, the FCC proposed to suspend indefinitely LightSquared's right to provide terrestrial wireless services (the "Suspension Notice").  The Suspension Notice allegedly prevented LightSquared from executing on its Terrestrial Plan, ultimately leading it to file for bankruptcy in May 2012.  LAC ¶¶ 11, 139-140; HAC ¶¶ 204, 220.  Thus, as Harbinger has admitted in a case brought by its investors, "LightSquared's bankruptcy . . . as a causational matter, in fact, 'resulted' from an action by the Federal Communications Commission."[6]

---

[6] *In re Harbinger Capital Partners Funds Investor Litig.,* Memo. of Law in Support of Harbinger Defendants' Mot. to Dismiss Fourth Am. Compl., No. 12-cv-01244, ECF No. 102 (S.D.N.Y. Jan. 16, 2013), at 1-2.

## ARGUMENT

## I.     APPLICABLE STANDARDS

A.     Standard of Review

Under Rule 12(b)(6), "only a complaint that states a *plausible* claim for relief survives."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A district court should begin by "identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth"—simple "recitals of the elements of a cause of action" and the like.  *Id.* at 678-79.  After

discounting those, if the remaining allegations do not "plausibly give rise to an entitlement to

relief," then the motion to dismiss should be granted.  *Id.* at 679.

Moreover, because the Complaints implicate Defendants' First Amendment rights to

petition the government, their tort claims are subject to the even more exacting standard of New

York's anti-SLAPP statute, which applies to cases filed in New York.  Civ. Rts L. § 76-a and

N.Y. CPLR § 3211(g).  Under *Liberty Synergistics Inc. v. Microflo Ltd.,* 718 F.3d 138, 152-55,

157  (2d Cir. 2013), this Court is required to apply the New York anti-SLAPP statute regardless

of the substantive law applicable to Harbinger's and LightSquared's respective claims.  N.Y.

CPLR § 3211(g) creates a heightened standard for a plaintiff opposing a motion to dismiss in a

SLAPP suit:  "To avoid dismissal of its SLAPP suit complaint, plaintiff must establish by clear

and convincing evidence a 'substantial basis' in fact and law for its claim."  *Duane Reade, Inc. v.

Clark*, 2004 WL 690191, at *4 (Sup. Ct. N.Y. Co. Mar. 31, 2004).

B.     Choice of Law

A federal court—including a district court exercising "related-to" bankruptcy jurisdiction

and supplemental jurisdiction over state-law claims—applies the choice-of-law rules of the

forum state.  *In re Gaston & Snow*, 243 F.3d 599, 607-08 (2d Cir. 2001).   New York courts

apply the substantive "law of the jurisdiction with the most significant interest in, or relationship

to, the dispute." *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030-31 (2d Cir. 1996)

(contract claims); *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 197 (1985) (tort cases).

As to choice of law, aside from Harbinger's location in New York, the relevant contacts

point to Virginia.  MSV and SkyTerra—the only entities that allegedly dealt with Defendants—

had their principal places of business in Virginia and allegedly acted in that state in reliance on

Defendants' supposed promises and misrepresentations.  And LightSquared's own alleged

performance—to someday effect "technological changes" to its network in the event it were ever

built—was to be undertaken "through [LightSquared's] headquarters in Virginia."  LAC ¶ 158.

While the Letter Agreements were signed in Washington, D.C. and transmitted to the FCC there,

"the place of contracting is a relatively insignificant contact."  Rest. (Second) of Conflict of

Laws, §188 cmt. e (1971).

As to all issues, application of Virginia or even New York law produces the same result

and, therefore, there is no need to decide any choice-of-law issue.  *Allstate Ins. Co. v. Stolarz*, 81

N.Y.2d 219, 223 (N.Y. 1993).  Harbinger and LightSquared thus fail to state a claim under the

laws of *any* theoretically relevant jurisdiction.

## II.    PLAINTIFFS' CONTRACT-RELATED CLAIMS MUST BE DISMISSED.

A.    Plaintiffs Fail to Allege Breach of Contract.

LightSquared and Harbinger both assert that the 2002 and 2009 Alleged Promises

regarding MSV's and SkyTerra's Satellite Plan were breached when Defendants "oppos[ed] the

deployment and [FCC] authorization of LightSquared's [Terrestrial] network" in 2010.  LAC

¶¶ 159, 167; *accord* HAC ¶ 256.  LightSquared, but not Harbinger, contends "first and foremost"

that the alleged 2002 and 2009 promises were breached because Defendants "continu[ed] to

manufacture" overload susceptible receivers.  LAC ¶¶ 159, 167.  Glaringly, both Amended

Complaints fail to attach the underlying 2002 and 2009 Letter Agreements because they foreclose Plaintiffs' claims.

　　　1.　　　The Letter Agreements Do Not Contain the Alleged Promises.

By their terms the Letter Agreements address only the out-of-band emissions issues raised by the specific Satellite Plan applications before the FCC in 2002 and 2009.  Adden. Exs. A & B.  Neither Letter suggests that, beyond the agreement regarding the then-pending FCC application, MSV, SkyTerra, or any successor was receiving *carte blanche* to proceed with a different network in the future, or that Defendants were forever disclaiming their constitutional right to petition the FCC about "another problem," such as receiver overload.  LAC ¶¶ 98-99.[7] Nor did either FCC Letter even mention, much less restrict, the design of GPS devices.  To even suggest otherwise is absurd.

The Letter Agreements were executed agreements that must be applied as written. *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 579-80 (E.D. Va. 2013) ("the writing is the repository of the final agreement of the parties"); *Davison v. FastComm*, 46 Va. Cir. 25, at *5-6 (1998) (exceptional "sanctity of written contracts" under Virginia law).  And, they plainly do not contain the far-reaching promises and forbearances claimed by Plaintiffs.  *See In re BNX Sys. Corp.*, 310 F. App'x 574, 576 (4th Cir. 2009) (refusing to imply by silence an agreement that was "nowhere to be found" in the written agreement).  Courts, moreover, must

---

[7] The 2002 and 2009 Letter Agreements were not signed by Deere, Garmin, or Trimble and, therefore, are not enforceable against these entities.  *Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 897 (4th Cir. 1992).

Without alleging a single supporting fact, the Complaints assert that Deere, Garmin, and Trimble were alter egos of the signatory GPS Council.  LAC ¶ 19; HAC ¶¶ 30-31.  But "[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability under either" Rule 8(a) or Rule 9(b)."  *Ningbo Prods. Imp. & Exp. Co., Ltd. v. Eliau*, 2011 WL 5142756, at *6 (S.D.N.Y. Oct. 31, 2011).

"indulge every reasonable presumption" against waiver of "fundamental constitutional rights," such as the right to petition the Government. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981).[8]

       2.      <u>The Alleged Extra Communications Do Not State a Claim for Breach of Contract</u>.

LightSquared, but not Harbinger, amended its Complaint to allege that the Letter Agreements are merely incomplete "summaries" of previous emails and "negotiations." *Compare* LC ¶¶ 50, 71, 79, 123(b) *with* LAC ¶¶ 50-52, 54, 79-81, 158, 166.[9]  These "negotiations," LightSquared now asserts, constitute the operative, binding agreements. *Id.* ¶ 158 ("[T]he letter was not the 2002 Agreement."); *id.* ¶ 166 ("[T]hat letter was not the 2009 Agreement").

These new contract allegations fail for three reasons.  *First*, although LightSquared mentions a few contemporaneous "emails" and "negotiations," none are alleged to contain either the FCC Waiver or Design Change obligation. *Id.* ¶¶ 51-54, 75-79, 158, 166.  Nor do these identified extra "communications" add anything of substance to what is in the Letter Agreements.  To the contrary, LightSquared describes the 2002 and 2009 Alleged Promises by quoting *solely* from those Letter Agreements—*not* from any "emails, negotiations, and other communications" that it now claims constitute the operative agreements. *Id.* ¶ 54 (the 2002 FCC Letter "appropriately reflect[ed] [the parties'] mutual agreement"); ¶¶ 79, 158, 166.

---

[8] The district courts that have found promises not to petition the government to be enforceable have done so only where, unlike here, the parties *expressly* waived their petition rights. *E.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1078 (W.D. Wisc. 2012).

[9] This Court should not accept these new contradictory allegations as true. *Green v. Niles*, 2012 WL 987473, at *5 (S.D.N.Y. March 23, 2012) (on a motion to dismiss, "the court need not accept as true allegations that conflict with a plaintiff's prior allegations").

These new allegations are insufficient given LightSquared's failure to identify "in detail" the substance of any specific promises purportedly made during the "negotiations," who made them, on whose behalf they were made, and to whom they were made. *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 491-93 (E.D. Va. 2002) (noting "uniform" and "longstanding" Virginia law that "participation in negotiations," "agreements to agree," and even binding preliminary agreements omitting material terms do not create a "binding obligation"). Further, had they actually been made, these indisputably important concessions "would scarcely have been omitted" from the Letter Agreements that the parties and their counsel carefully drafted, negotiated and executed. *Caldwell v. Craig*, 62 Va. 132, 143 (1871); *Breton LLC v. Graphic Arts Mut. Ins. Co.*, 2010 WL 678128, at *5 (E.D. Va. Feb. 24, 2010) (cautioning under Virginia law against "inferring covenants or promises, lest they make the contract speak where it was intended to be silent"); *accord Litman v. Toll Bros., Inc.*, 263 F. App'x 269, 273 (4th Cir. 2008) (court is "not at liberty to search for meaning beyond instrument itself").

*Second*, LightSquared's own allegations foreclose its theory that Defendants breached their alleged promises. With regard to the FCC Waiver, LightSquared asserts only that Defendants promised that "further objections to the FCC would be unwarranted based on LightSquared's operations as authorized *in the 2003 ATC Order*," and "*by the FCC for LightSquared's 2009 ATC Modification application*." LAC ¶¶ 57, 80. LightSquared has thus expressly limited the alleged FCC Waiver to the particular operations *authorized by the FCC's 2003 and 2010 Satellite Plan orders*. Defendants are not alleged to have objected—and did not object—to any operations authorized by these 2003 and 2010 orders. Instead, Defendants

opposed only LightSquared's 2010 application for previously unauthorized operations, *i.e.* the Terrestrial Plan.  LAC ¶¶ 98, 106, 159, 167; Ex. 5, ¶ 24.

Moreover, LightSquared's FCC Waiver theory is irreconcilable with its allegations regarding the 2009 Alleged Promise.  As Plaintiffs admit, in 2009, when SkyTerra "filed for a modification" of the 2003 Order, "Defendants were *invited* to make objections and did so," raising the same out-of-band emissions objections addressed by the alleged 2002 Alleged Promise.  HAC ¶¶ 143-144.  This invitation would be nonsensical if, as Plaintiffs imply, Defendants had previously waived their right to file an FCC objection.  And, of course, if Defendants had actually waived all other objections—current or future, known or unknown—to LightSquared's proposed network in 2002, as Plaintiffs posit, there would have been no basis for further objections and the 2009 FCC Letter.  *Compare* LAC ¶ 57 *with id.* ¶ 80.

Insofar as the alleged Design Change agreement is concerned, LightSquared's claim is implausible on its face and unsupported by *any* allegation of *any* underlying promise to manufacture GPS devices in any particular way, much less when such promise was made, how, and by whom.  *E.g.*, LAC ¶¶ 51-58.  LightSquared concedes that receiver overload was not discussed by the parties before September 2010.  LAC ¶ 81.  Accordingly, "emails" traded during what LightSquared itself describes as the parties' "negotiations" make no reference to Defendant's right to manufacture GPS devices.  LAC ¶¶ 50-51, 74-78, 81, 158, 166; *see RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S., LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012) (conclusory allegations of verbal promises to pay, absent a description of the pertinent obligations, cannot "nudge . . . claim[s] . . . across the line from conceivable to plausible."); *Soley v. Wasserman*, 823 F. Supp. 2d 221, 231 (S.D.N.Y. 2011) (complaint must describe

"*specific* interactions between [the parties] that would establish those *specific terms*" and

"demonstrate the parties' intent to bound by those terms").

 *Third*, even if Plaintiffs had identified an oral FCC Waiver or Design Change promise,

that claim would be barred by the statute of frauds.  In Virginia, as elsewhere, unless a promise

"is in writing and signed by the party to be charged or his agent, no action shall be brought" upon

"any agreement that is not to be performed within a year."  Va. Code § 11-2.  The required

writing must state, "with reasonable certainty," each "party to the contract," the "subject-matter

to which the contract relates," and "the terms and conditions of *all* the promises constituting the

contract."  *Horner v. Holt*, 47 S.E. 2d 365, 369 (Va. 1948); *see also Moorman v. Blackstock,*

*Inc.*, 661 S.E. 2d 404, 409 (Va. 2008).  Neither the 2002 and 2009 Letter Agreements nor any of

the "emails" referenced by LightSquared are alleged to contain either the FCC Waiver or Design

Change promise, let alone their "terms and conditions."  LAC ¶¶ 57, 80.  Defendants' purported

promises to never petition the FCC and design interference-resistant receivers are alleged to be

perpetual and could not have been performed within a year.  Indeed, LightSquared was still

seeking required FCC approvals nearly one decade later.  LAC ¶¶ 82-83.

 3. <u>Harbinger Is Not a Third-Party Beneficiary of the 2009 Letter Agreement</u>.

 Harbinger's Count Seven seeks to recover as a third-party beneficiary for Defendants'

alleged breach of the 2009 Letter.  HAC ¶¶ 248-254.  Under Virginia law, a would-be third-party

beneficiary must clear a "difficult" hurdle showing that "the parties to the contract clearly and

definitely intended it to confer a benefit upon him."  *Food Lion, Inc. v. S.L. Nusbaum Ins.*

*Agency, Inc.*, 202 F.3d 223, 229 (4th Cir. 2000); *Copenhaver v. Rogers*, 384 S.E. 2d 593, 596,

598 (Va. 1989).

 Harbinger's only third-party beneficiary allegations are conclusory assertions of law that

(a) Harbinger was a shareholder of LightSquared, which, in 2009, did not control even SkyTerra,

and (b) Harbinger—like any other LightSquared investor—could conceivably derive an indirect, derivative benefit from the 2009 Letter Agreement.  HAC ¶ 155.  Much as a real estate broker is not a third-party beneficiary of a contract between the buyer and seller of the property, *Prof'l Realty Corp. v. Bender*, 222 S.E.2d 810, 812 (Va. 1976), shareholders of a corporation that might someday control the contracting party are not third-party beneficiaries—and thus "cannot maintain an action thereon."  *Norfolk-Portsmouth Newspapers, Inc. v. Stott*, 156 S.E.2d 610, 612 (Va. 1967); *accord Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 337 (S.D.N.Y. 2005) (requiring benefit to third party be "explicit" and "direct," not incidental).

B.    LightSquared Fails to State A Claim for Promissory Estoppel.

Virginia law does not recognize promissory estoppel.  *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009).  Even if District of Columbia law applied here—which it does not—LightSquared's Count I promissory estoppel claim fails for the reasons stated below.

1.    No Definite Promise is Alleged.

LightSquared does not allege, even in conclusory terms, any promise to take or refrain from taking any specific future action, as promissory estoppel requires.  *E.g., Smith v. Henderson*, 2013 WL 5592905, at *9 (D.D.C. Oct. 10, 2013) ("mere statement of intent" is not equivalent to a promise to take specific action in the future).  An alleged statement that "LightSquared's network could coexist with GPS operations and . . . would not 'interfere' with . . . GPS receivers" (LAC ¶ 143) is not a promise to refrain from objecting to FCC applications or to change the design of Defendants' GPS devices.  *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 885 F. Supp. 2d 156, 190 (D.D.C. 2012) (promise enforceable only when substance, declarant, date, "definite terms" and material circumstances are pled).  Plaintiffs' reactions are not enough—the LightSquared Amended Complaint is devoid of "details," "concrete particulars," and "descriptions" of what Defendants actually said.  *See, e.g.,* LAC ¶¶

- 15 -

98, 133, 135(b)-(d), 143 (allegations that Defendants "led LightSquared reasonably to believe"

things by unspecified "words and conduct"); *Hartog Rahal Foods, Inc. v. Quality Kitchen Corp.*,

1997 WL 118367, at *4 (S.D.N.Y. Mar. 14, 1997).

      2.    <u>The Contract Allegations Preclude Promissory Estoppel</u>.

An estoppel claim would also be barred because the 2002 and 2009 Letter Agreements

are "binding, enforceable" contracts that "govern the parties' relationship" and address the same

subject matter.  LAC ¶¶ 157, 165; *Carter v. Bank of Am.*, 845 F. Supp. 2d 140, 146 (D.D.C.

2012); *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) (dismissing promissory

estoppel claims that "clearly involve promises contained in an express written contract").

Here, it is undisputed that SkyTerra and the GPS Council reached agreements in 2002

and 2009.  LightSquared's claim of promissory estoppel impermissibly seeks to override those

agreements by adding additional unwritten obligations.  *E.g., Plesha*, 725 F. Supp. 2d at 112

(precluding pleading promissory estoppel in the alternative where existence of valid contract is

undisputed).

      3.    <u>Actual Reliance is Not Alleged</u>.

LightSquared's decision-makers—who were not party to the underlying communications

made as many as seven years earlier to MSV and SkyTerra—are not alleged to have been

informed of the apparently oral FCC Waiver and Design Change "promises".  Accordingly,

LightSquared has failed to plead actual reliance when it subsequently made its investments.

Even if LightSquared had alleged learning of these promises, its reliance on vague, oral

assurances that SkyTerra's then-proposed network "could coexist with GPS operations" (LAC

¶¶ 88, 95, 96, 135(a), 143, 147) would have been plainly unreasonable given its sophistication.

*See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 71 n.5 (D.D.C. 2005) ("reliance on a

promise cannot be reasonable when it is completely at odds with the terms of a written

agreement covering the same transaction"); *Ascom Hasler*, 885 F. Supp. 2d at 190 ("reliance on an indefinite promise is unreasonable").

C.    LightSquared's Breach of the Implied Covenant Must Fail.

LightSquared's assertion of a separate claim for breach of the implied covenant of good faith and fair dealing (Count V) fails for several reasons.  *First*, as Defendants stressed in their pre-motion letter before LightSquared amended its complaint, breach of the covenant is "not a separate cause of action," but rather "only gives rise to a breach of contract claim."  *Jones v. Fulton Bank, N.A.*, 2013 WL 3788428, at *7 (E.D. Va. July 18, 2013); *accord Matanic v. Wells Fargo Bank, N.A.*, 2012 WL 4321634, at *7 (E.D. Va. Sept. 19, 2012).  *Second*, Virginia "does not recognize an implied covenant of good faith and fair dealing outside the U.C.C. context," *Jones*, 2013 WL 3788428, at *7 (citations omitted), and this is not a U.C.C. case.

*Third*, although LightSquared does not allege how Defendants violated the "spirit" (LAC ¶ 174) of the 2002 and 2009 Alleged Promises, even that claim is plainly insufficient.  *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997) (implied covenant "cannot be the vehicle for rewriting an unambiguous contract").

D.    LightSquared's Quantum Meruit and Unjust Enrichment Claims Fail.

LightSquared's Counts II & VI fail to state a claim for *quantum meruit* and unjust enrichment.  LightSquared must adequately allege that (1) LightSquared conferred a benefit on Defendants; (2) Defendants knew of the conferred benefit; and (3) Defendants "accepted or retained the benefit under circumstances that render it inequitable for [Defendants] to retain the benefit without paying for its value."  *Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*, 2009 U.S. Dist. LEXIS 93471, at *35 (E.D. Va. Sept. 29, 2009); *accord Plesha*, 725 F. Supp. 2d at 111.

*First,* the *quantum meruit* claim is based on already disposed of FCC Waiver and Design Change allegations.  LAC ¶ 152.  *Second,* because neither MSV nor SkyTerra ever implemented

the Satellite Plan, Defendants never received a "valuable service" (LAC ¶ 150) or any

enrichment.  *See Grubb & Ellis*, 2009 U.S. Dist. LEXIS 93471, at *36 (*quantum meruit*

dismissed because no valuable services rendered to defendant).

       *Third*, LightSquared cannot seek restitution because MSV and SkyTerra received their

agreed-upon consideration when the GPS Council withdrew its pending objections to the 2002

and 2009 proposals.  LAC ¶¶ 57, 80.  Having fulfilled their end of the bargain, Defendants were

entitled to the reciprocal benefit of the Alleged Promises and owed no restitution to

LightSquared.  *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306-07 (4th Cir. 1994) ("a plaintiff cannot

seek restitution for benefits that the defendant had a legal right to receive").

       *Finally*, the *quantum meruit* and unjust enrichment claims are precluded by

LightSquared's claims alleging enforceable contracts.  *MP Leasing Corp. v. Colonna's Shipyard*,

2009 WL 2581575, at *4 (E.D. Va. May 8, 2009) ("an express contract defining the rights of the

parties necessarily precludes the existence of an implied contract of a different nature containing

the same subject matter") (citation omitted).

### III.   THE PETITION CLAUSE BARS ALL OF LIGHTSQUARED'S AND HARBINGER'S NON-CONTRACT CLAIMS.

       The *Noerr-Pennington* doctrine, which effectuates the First Amendment right "to petition

the Government for a redress of grievances" (U.S. Const., amend. I), bars Plaintiffs' tort claims.

Without question, this litigation arises from the FCC's decision, upon the Defendants' petition,

that LightSquared's Terrestrial Plan posed an unacceptable risk to national security and public

safety—the decision allegedly triggered LightSquared's "descen[t] into bankruptcy."  HAC ¶¶ 6,

204; *see* LAC ¶ 11 (same).  LightSquared and Harbinger now improperly seek to penalize the

Defendants for petitioning the FCC.

The *Noerr-Pennington* doctrine expresses a broadly applicable First Amendment principle, which immunizes a person's exercise of Petition Clause rights irrespective of the theory of liability.  *See Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135, at *3 (2d Cir. 2000) (unpublished; full text available at 2000 U.S. App. LEXIS 25440) (RICO claim); *Brownsville Golden Age Nursing Home v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (tortious interference with business relations); *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1983) (civil rights statutes); *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *5-6 (S.D.N.Y. Aug. 21, 2007) (fraud claims).

As this Court has explained, to determine whether *Noerr-Pennington* immunity applies, a court need only answer two questions:  First, were the Defendants' communications and acts "petitioning activity?"  Decision and Order 8 (Jan. 31, 2014) ("January 31 Order").  Second, if so, are the Plaintiffs' claims "'based upon' such petitioning activity?"  *Id*.  As demonstrated below, the answer to both questions here is an unqualified "yes."

A.    <u>Defendants' Communications and Acts Were Petitioning Activity</u>.

Conduct "aimed at persuading the government of a position or expressing views . . . is generally considered petitioning activity for *Noerr-Pennington* purposes and is immunized."  *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 370 (S.D.N.Y. 2002).  LightSquared and Harbinger each complain about conduct of exactly this type.  In their Amended Complaints, Plaintiffs allege that Defendants negotiated with LightSquared and its predecessors about FCC applications (HAC ¶¶ 109-111, 153-154; LAC ¶¶ 48-54, 74-79); petitioned for reconsideration of an FCC order (HAC ¶ 117; LAC ¶ 57); submitted objections to the FCC (HAC ¶ 148; LAC ¶ 73); and commented to the FCC regarding the overload issue (HAC ¶ 170; LAC ¶ 97).

LightSquared and Harbinger have amended their complaints in a transparent attempt to circumvent the protections of *Noerr-Pennington*.  Plaintiffs now insist that they are trying to

recover not for the Defendants' communications to the FCC, but for logically inseparable

negotiations *about* those FCC proceedings.  LAC ¶¶ 50-51, 74-78, 81, 158, 166; HAC ¶¶ 2, 9,

125. The Petition Clause cannot be trampled by such artful pleading.  A "claim of *Noerr*

immunity cannot be dismissed on the ground that the conduct at issue involved no 'direct'

petitioning of government officials, for *Noerr* itself immunized a form of 'indirect' petitioning."

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 503 (1988).  *Noerr-Pennington*

immunity extends both to "administrative and court proceedings" *and* "steps preliminary to such

proceedings."  *Primetime 24 Joint Venture v. Nat'l Broad. Co.,* 219 F.3d 92, 100 (2d Cir. 2000).

That some protected conduct is not "literally" a "petition[] to the government" does not defeat

the protections of the Petition Clause.  *Id.*

      This principle has been applied to protect a wide variety of conduct.  *Noerr-Pennington*

instructs that a plaintiff may not, for example, recover for "threat letters" sent prior to litigation,

*Primetime 24*, 219 F.3d at 100, or for settlement offers, *Columbia Pictures Industries, Inc. v.*

*Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), or for publicity

related to the petition, *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983).

*See also In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, at *13 (S.D.N.Y.

Sept. 30, 2009) (Berman, J.) ("'Courts have extended *Noerr-Pennington* to encompass concerted

efforts incident to litigation, such as prelitigation 'threat letters''") (quoting *Primetime 24*, 219

F.3d, at 100), *aff'd*, 407 Fed. App'x 520 (2d Cir. 2010).  Accordingly, this authority leads to the

inescapable conclusion that the Defendants' communications and actions qualify as petitioning

activity.

B.    LightSquared's and Harbinger's Claims Are Based Upon
      Defendants' Petitioning Activity.

Plaintiffs' claims are unavoidably based upon Defendants' petitioning activity.  The

complained-of injuries all arose from the FCC's action:  its denial of approval for the Terrestrial

Plan is what caused LightSquared's "descen[t] into bankruptcy in May 2012."  HAC ¶ 6; *accord*

LAC ¶ 11.  Absent that undisputed fact, Plaintiffs would not have suffered any harm.  But if

Plaintiffs' injury "is the result of valid governmental action," the Defendants, having "urg[ed]

the governmental action," enjoy "absolute immunity."  *Allied Tube ,* 486 U.S. at 499.  For

example, in *Pennington*, the Supreme Court explained that under *Noerr*, the plaintiff "could not

collect any damages" for any injury "which it suffered from the action of the Secretary of

Labor," as such claims necessarily arose out of the defendants' successful exercise of their

Petition Clause rights.  *United Mine Workers of America v. Pennington*, 381 U.S. 675, 671

(1965).

The facts alleged here are a far cry from a case where a plaintiff's claim is based on a

failure to perform an independent duty that would exist apart from the governmental

proceedings.  *See Clinton v. Brown & Williamson Holdings, Inc.*, 2013 WL 3111122, at *10

(S.D.N.Y. June 20, 2013).  No such independent duty exists here; the FCC proceedings were the

*sine qua non* of every alleged misrepresentation, failure to disclose, and negotiation upon which

both Complaints are based.  By contrast, *Brown & Williamson* was a garden-variety failure-to-

warn claim, in which it was "simply inconceivable that the jury regarded any [protected]

statements as a basis of liability."  *Id.* at *11.

*Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339 (S.D.N.Y.

2004), is illustrative.  There, much as here, the plaintiff's business proposal was rejected by the

relevant decision-maker (a county legislature).  *Id.* at 341-42.  There, as here, the plaintiffs

alleged that a letter sent to the decision-maker was "false and misleading," and included statements calculated to "interfere with its prospective business advantage." *Id.* at 342.  The district court had no trouble concluding that *Noerr-Pennington* barred the Plaintiff's claim: because the letter was "an attempt to influence the government," it was "not actionable." *Id.* at 343; *accord Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (*Noerr-Pennington* doctrine covered private letters asking "recipient to engage in 'discussions of possible license arrangements'").

## IV.   THE FEDERAL COMMUNICATIONS ACT PREEMPTS LIGHTSQUARED'S AND HARBINGER'S CLAIMS.

LightSquared's and Harbinger's claims are also preempted by the Federal Communications Act ("FCA") because the Amended Complaints ask the Court to interpret and determine the basis for the market entry decisions of the FCC—that is, the agency's determination not to allow LightSquared to operate under its Terrestrial Plan—and seek damages allegedly flowing from those FCC decisions.

Section 332(c) of the FCA provides that "no State or local government shall have any authority to *regulate the entry of* or the rates charged by any commercial mobile service or any private mobile service . . . ."  47 U.S.C. § 332(c)(3)(A).  The prohibited "state regulation" includes judicially developed state law.  *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17027 (2000) (state regulation for purposes of preemption encompasses judicial action).  Thus, Section 332(c)(3)(A) preempts state-law claims that "would require a court to engage in an assessment or reexamination of the FCC's regulatory determination regarding a mobile service's entry into the market."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1008 (9th Cir. 2010) (FCA preempted state-law tort claims for losses caused by FCC rulings); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 985, 987, 989 (7th Cir. 2000) (FCA preempted breach of

- 22 -

contract and consumer fraud claims because, "however denominated," those claims "actually challenged" FCC decisions regarding market entry and rates).

Adjudicating LightSquared's and Harbinger's claims will require the "assessment" and "reexamination" of the FCC's regulatory decisions that Section 332(c) prohibits. LightSquared's Amended Complaint expressly seeks to hold Defendants liable for FCC decisions on market entry. LAC ¶ 1 ("Defendants engaged in a calculated effort to block the deployment of a new wireless broadband network"); ¶ 11 ("as a direct and foreseeable result of Defendants' actions, the FCC sought to block the launch of LightSquared's network"). Further, LightSquared's and Harbinger's claims would also require the Court to deconstruct FCC decisions to evaluate, for example, the comparative impact of objections filed by individual federal agencies and the GPS Council on the FCC's ultimate denial of LightSquared' request.

The claims, in essence, impermissibly ask the Court to award damages based on the FCC's Suspension Notice, which Plaintiffs say caused LightSquared's collapse. But because the FCC's licensing authority "has long been recognized as the FCC's core tool in the regulation of market entry," claims for damages arising from licensing decisions are preempted by §332(c). *Telesaurus*, 623 F.3d at 1009. "Such licensing directly involves agency determinations of public interest, safety, efficiency, and adequate competition, all inquiries specially within the expertise of the FCC." *Id.*

LightSquared attempts to avoid preemption by asserting that its claims concern only private conduct and agreements (LAC ¶ 141) but according to the Amended Complaint, the alleged private conduct injured LightSquared only when that conduct "caused" the FCC to issue its Suspension Notice. *Id.* ¶¶ 11, 139-140. The Suspension Notice is a decision by the FCC exercising its authority over market entry. *Id.* ¶ 11. Any inquiry into the "causes" of the FCC's

Suspension Notice would require an impermissible "assessment or reexamination" of the FCC's

market entry decision and is therefore barred by §332(c).  *Telesaurus*, 623 F.3d at 1008.

V.     **PLAINTIFFS' MISREPRESENTATION CLAIMS MUST BE DISMISSED.**

Both LightSquared and Harbinger allege negligent misrepresentation (LAC, Count VII;

HAC, Count IV) and constructive fraud (LAC, Count VIII; HAC, Count V).  Harbinger alone

asserts fraud (HAC, Count III), and equitable estoppel (HAC, Count VI).  As explained below,

these claims must be dismissed.

A.     Negligent Misrepresentation and Equitable Estoppel
       Are Not Recognized Causes of Action.

Virginia law does not recognize a cause of action for negligent misrepresentation.  *Lescs*

*v. William R. Hughes, Inc.*, 1999 WL 12913, at *10 (4th Cir. Jan. 14, 1999); *A.T. Massey Coal*

*Co., Inc. v. Rudimex GmbH*, 2006 WL 44278, at *6 (E.D. Va. Jan. 9, 2006).

Harbinger's equitable estoppel claim also fails because there is no such cause of action in

Virginia or New York.  *Pro-Concepts, LLC v. Resh,* 2014 WL 549294 (E.D. Va. Feb. 11, 2014);

*Peterson v. City of N.Y.*, 1998 WL 247530, at *7 (S.D.N.Y. May 14, 1998) ("[t]he Courts of New

York have consistently held . . . that the doctrine of equitable estoppel cannot be invoked to

create a right where one does not otherwise exist"); *accord Morris v, Runyon*, 870 F. Supp. 362,

373 n.21 (D.D.C. 1994).

B.     Plaintiffs' Misrepresentation Allegations Are Plainly Insufficient.

LightSquared and Harbinger claim that the 2002 and 2009 Alleged Promises caused

MSV and SkyTerra to conclude that their network could "coexist" with the nation's GPS system.

LAC ¶¶ 183-200; HAC ¶¶ 224-250, 258-260.  But, as Defendants have already demonstrated at

Point II.A.2, *supra*, neither Plaintiff actually alleges that the GPS Council's "coexistence" promise applied to operations other than those specifically at issue in 2002 and 2009.[10]

Unable to allege—much less describe with particularity—a single false statement, both LightSquared and Harbinger rely on the notion that the GPS Council had a duty to disclose a breach of their supposed "coexistence" and Design Change promises.  LAC ¶¶ 186, 196; HAC ¶¶ 218, 227.  Plaintiffs, however, do not identify any circumstances in 2002 and 2009 putting the GPS Council on notice of LightSquared's plans, let alone any legal basis for a duty to disclose any resulting interference problems.

Even if Defendants could have anticipated as early as 2002 that LightSquared would acquire SkyTerra and attempt to effectuate the 2010 Terrestrial Plan, Defendants' prescience would not have given rise to any disclosure duty to MSV or SkyTerra, much less to their successor, LightSquared, or to Harbinger shareholders.  None of Plaintiffs' misrepresentation causes of action gives rise to a disclosure duty absent a "special" or "confidential" relationship or "superior knowledge of essential facts," which in each case must be pled with particularity.  In addition, LightSquared's and Harbinger's misrepresentation claims must fail because a breach of a promise cannot sound in tort, and Plaintiffs do not allege actual, much less reasonable, reliance.

---

[10] Plaintiffs assert that on July 15, 2009, more than a year before LightSquared disclosed its Terrestrial Plan, an unidentified Harbinger "consultant" was present when someone, somewhere asked the GPS Council "to address any concerns regarding the potential for GPS receivers to experience [receiver overload]."  HAC ¶ 149; *see* LAC ¶¶ 114-115.  In response, Defendants allegedly did not "raise[] any [receiver overload] issues *related to the proposed [SkyTerra] network.*"  HAC ¶ 149; *see* LAC ¶¶ 114-115.  Setting aside for the moment the issue of whether a supposed failure to answer can be fraudulent, as the Harbinger Complaint makes clear, the GPS Council's supposed non-response was to a question regarding the SkyTerra network *"proposed" in 2009*, not the LightSquared Terrestrial Plan unveiled a year later.

1.      Plaintiffs Have Not Pled With Particularity.

Rule 9(b) applies to all of Plaintiffs' misrepresentation claims.  *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) (common law fraud); *CAC Grp., Inc. v. Maxim Grp., LLC*, 2012 WL 4857518, at *5 (S.D.N.Y. Oct. 10, 2012), *aff'd*, 2013 WL 1831672 (2d Cir. May 2, 2013) (negligent misrepresentation); *Victor v. Riklis*, 1992 WL 122911, at *5 n.6 (S.D.N.Y. May 15, 1992) (constructive fraud); *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 168 (2d Cir. 2005 (securities fraud); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006) (equitable estoppel defenses).  Accordingly, LightSquared and Harbinger were required to "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made,  and (4) explain why the statements (or omissions) were fraudulent." *Nay v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 WL 2109467 at *4 (S.D.N.Y. July 25, 2006) (Berman, J.).

According to Harbinger, Defendants said that "their only interference problems involved [out-of-band-emissions]."  HAC ¶ 109; *accord id.* ¶ 125.  For its part, LightSquared simply repeats the formulaic allegation that Defendants "led LightSquared to believe that all [GPS receiver compatibility concerns] had been resolved" (LAC ¶¶ 4, 135(b), (c), (d), 96, 120, 129, 133, 143, 224(c)) and that MSV's and SkyTerra's network could "coexist with GPS operations." LAC ¶¶ 51-53, 76-77, 143.

These allegations are insufficient because they fail to allege in even the vaguest terms— much less plead with particularity—what *each* Defendant specifically said, to whom each Defendant said it, why it was false, how a Plaintiff relied on it, when and where each Defendant said it, or even that LightSquared or Harbinger ever learned of a particular statement.  *See Krasner v. Rahfco Funds LP*, 2012 WL 4069362, at *4-5 (S.D.N.Y. Aug. 9, 2012); *Hunt v. Enzo Biochem, Inc.,* 530 F. Supp. 2d 580, 601 (S.D.N.Y. 2008); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32,

38 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *Apace Commc'ns, Ltd. v. Burke*, 522 F.

Supp. 2d 509, 517 (W.D.N.Y. 2007).

  2. <u>The Representations Are Not Alleged To Be False</u>.

  Neither LightSquared nor Harbinger even alleges, let alone pleads with particularity, that

Defendants' statements to MSV and SkyTerra were false.  As demonstrated at Point II.A.2,

*supra*, LightSquared limits the alleged FCC Waiver and Design Change promises to MSV's and

SkyTerra's operations "*as authorized in the 2003 Order*" (LAC ¶ 57), and "*as authorized in the*

*2009 ATC Order.*"  LAC ¶ 80.  Defendant GPS Council's 2010 objections are not alleged to

be—and were not—objections to operations authorized by the earlier FCC orders.  Ex. 5 ¶ 24.

  3. <u>Actual Reliance Has Not Been Pled</u>.

  Reasonable reliance is an element of Plaintiffs' fraud, negligent misrepresentation, and

constructive fraud claims.  And yet, as noted at Point II.B.3, LightSquared and Harbinger fail to

plead actual, much less reasonable, reliance.  *First*, even though the alleged misrepresentations

were admittedly made to MSV and SkyTerra (LAC ¶ 1 n.1; HAC ¶ 60 (LightSquared not formed

until March 2010), there is no allegation that before Harbinger and LightSquared made their

investments, MSV, SkyTerra, or anyone else informed Plaintiffs' decision-makers of these oral

assurances.  *RBA Capital, LP v. Anonick*, 2009 U.S. Dist. LEXIS 29266, at *10-12, (E.D. Va.

Apr. 8, 2009) (Plaintiffs must all assert that they heard the misrepresentations and personally

relied on them); *Fentress Families Trust v. Va. Elec. & Power Co.*, 81 Va. Cir. 67 (2010)

(constructive fraud).

  *Second*, even if they had been informed, Plaintiffs, who were guided by sophisticated

professional investors and legal counsel, would not plausibly have invested billions of dollars on

such vague, unwritten third-party assurances.  *Lopez v. Aeropostale, Inc.*, 2012 U.S. Dist. LEXIS

19956, at *17-18 (S.D.N.Y. Feb. 10, 2012) (Berman, J.) (misrepresentation claim dismissed

because conclusory allegation of reliance on extra-contractual representations was "not

plausible"); *Lawler v. Schumacher Filters Am., Inc.*, 832 F. Supp. 1044, 1052 (E.D. Va. 1993)

(sophisticated plaintiff's claimed reliance on alleged oral side agreement "does not strike the

Court as reasonable"); *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 934 (D.C. 1992)

("plaintiff could not have reasonably relied on oral assurances which were not included in the

final written contract"); *Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp.*

*"Rosvoorouzheinie*," 172 F. Supp. 2d 79, 86 (D.D.C. 2001) ("sophisticated party'[s]" reliance on

"oral promises or assurance" unreasonable).

     *Third*, LightSquared admits it was capable of testing for receiver overload, but chose to

do so only after the fact, in 2011, rather than before committing to its plan.  LAC ¶¶ 124-126; *see*

*Int'l Motor Sports Grp., Inc. v. Gordon*, 1999 WL 619633, at *7 (S.D.N.Y. Aug. 16, 1999)

("[w]here sophisticated businessmen engaged in major transactions enjoy access to critical

information but fail to take advantage of that access," courts are "particularly disinclined to

entertain claims of justifiable reliance").

     *Finally*, Plaintiffs' conduct belies their claimed reliance on Defendants' initial alleged

misstatements and omissions.  LightSquared alleges that it went ahead with its Terrestrial Plan,

subsequently entering into nearly two dozen separate wholesale services and network

agreements—all *after* Defendants' September 2010 filing disclosing "concerns of potential

overload."  LAC ¶¶ 93, 111.

     4.    The "Coexistence" Promises Are Not Actionable in Tort.

     Plaintiffs alleged that Defendants were 'breaking their prior promises, reneging on their

prior agreements, and disavowing their prior representations" (LAC ¶ 1) by secretly continuing

to manufacture "defective" (HAC ¶ 247; LAC ¶¶ 128, 131) products that improperly "listened

in" to LightSquared frequencies and by then filing their 2010 FCC objections to LightSquared's

Terrestrial Plan.  *See e.g.* LAC ¶¶ 7, 136; HAC ¶¶ 3, 5, 93, 206, 210.  It is well-established, however, that the breach of a promise is not susceptible to a misrepresentation or other tort claim.  To put it simply, a misrepresentation allegation cannot transform a contract claim into a misrepresentation tort.  *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) ("plaintiffs did not assert a valid claim of constructive fraud . . . because whatever duties [defendant] may have assumed arose solely from the parties' alleged oral contract."); *Wolf v. Fed. Nat'l Mortg. Ass'n,* 830 F. Supp. 2d 153, 167 (W.D. Va. 2011) ("When, as here, a plaintiff alleges economic losses, she cannot recover in tort 'simply by recasting a contract claim as a tort claim'."); *Cnty. of Grayson v. RA-Tech Servs.,* 2013 U.S. Dist. LEXIS 161323, at *8-11 (W.D. Va. Nov. 12, 2013) (fraud claim may not be "predicated on unfulfilled promises or statements as to future events"); *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008) ("[u]nder no circumstances . . . will a promise of future action support a claim of constructive fraud").

> 5.    Defendants' Statements to MSV and SkyTerra
>        Are Not Actionable by Plaintiffs.

Plaintiffs do not allege that any Defendant had "direct" and substantial communications with Plaintiffs, as the law requires.  *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 696 (S.D.N.Y. 2012).  Rather, Plaintiffs plead "private communications directly with [*MSV and SkyTerra*]," and "*private* negotiations," "*private* discussions," and "*private* contractual agreements" "between [*MSV/SkyTerra*] and Defendants." LAC ¶¶ 3-4, 46, 50, 54, 58, 69, 75, 79, 86, 135, 141 (emphasis added).  Plaintiffs are not alleged to have participated in any of these "private" communications in the relevant period, 2002-2009. Neither these "private discussions" nor Defendants' FCC filings constitute the requisite "direct" communications between Defendants and Plaintiffs.  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (negligent misrepresentation dismissed because "[t]he complaint does

not allege whether [defendant] had any contact with [plaintiff], [or] whether [plaintiff] solicited the appraisal directly from [defendant]"); *Westpac Banking Corp. v. Deschamps*, 66 N.Y.2d 16, 19 (1985) (negligent misrepresentation dismissed because "there is simply no allegation of any word or action on the part of [defendant] directed to [plaintiff]"); *Ernest Lawrence Grp. v. Mktg. Americas, Inc.*, 2005 WL 2811781, at *10 (S.D.N.Y. Oct. 27, 2005) (negligent misrepresentation dismissed because defendant "never imparted any words" to plaintiff).

       6.     <u>There Was No Duty to Disclose</u>.

       Unable to allege a single false statement, Plaintiffs are reduced to claiming that the GPS Council should have disclosed to MSV and SkyTerra that interference might occur if they, or a successor, were to change their network.  LAC ¶¶ 186, 196; HAC ¶¶ 218, 227.  Even if Defendants could plausibly be charged with anticipating Plaintiffs' undisclosed plans,[11] there still would be no duty to disclose absent a "special" or "confidential" fiduciary relationship, *W. Capital Partners, LLC v. Allegiance Title & Escrow, Inc.*, 520 F. Supp. 2d 777, 782 (E.D. Va. 2007) (constructive fraud); *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 610 (Sup. Ct. N.Y. Cnty. 2010) (negligent misrepresentation), or "superior knowledge of essential facts" that would render a transaction without disclosure "inherently unfair," *Newbro v. Freed*, 409 F. Supp. 2d 386, 400-01 (S.D.N.Y. 2006) (common law fraud).

       LightSquared and Harbinger seek to conjure up the necessary "special" or "confidential" relationship from the parties' "negotiations" about the Letter Agreements (*see* LAC ¶¶ 184, 51-

---

[11] In the 2002 Letter Agreement, MSV stated that it "currently plans that all MSV terminals will . . . process GPS signals."  Adden. Ex. A at 1.  Thus, MSV affirmatively disclaimed any intention to operate exclusively terrestrial handsets, which is precisely the change that triggered the GPS Council's 2010 objections to LightSquared's Terrestrial Plan.

53, 75-81; HAC ¶ 247), and Defendants' purported "proprietary knowledge of GPS receivers' defective manufacture" and Harbinger.  LAC ¶ 184; HAC ¶ 247.  These efforts must be rejected.

 *First*, it is "well-settled" that a "special" or "confidential" relationship did not arise from Defendants' arm's-length "negotiations" with MSV and SkyTerra, both large and sophisticated companies.  *Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp. 2d 852, 872-73 (E.D. Va. 2009) ("Certainly the law cannot impose a burden to disclose information in an arm's length transaction, in the event that the information might, at some point in time, be relevant to the other party who is represented by counsel and not at any disadvantage in bargaining power"); *Horner v. Ahern*, 153 S.E.2d 216, 219 (Va. 1967) (the law will leave an arm's length counterparty "where he has been placed by his own imprudent confidence"); *see also Waite v. Schoenbach*, 2010 WL 4456955 at *5 (S.D.N.Y. Oct. 29, 2010) (Berman, J.) (requiring legal duty "apart from the parties' contractual relationship" to sustain negligent misrepresentation claim); *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, 2006 WL 3370696, at *8-9 (W.D.N.Y. Oct. 30, 2006) (dismissing constructive fraud claim absent "high degree of dominance").

 *Second*, there is no allegation that the parties even communicated, much less engaged in commercial dealings, during the relevant period, 2002-2009.  HAC ¶¶ 246-248.  This is fatal to LightSquared's and Harbinger's constructive fraud claims.  *In re Vebeliunas*, 252 B.R. 878, 888 (Bankr. S.D.N.Y. 2000) (duties stemming from superior knowledge doctrine does not "extend[] . . . to one who is not a party to the transaction"); *see, e.g., Cumisky v. James River Corp.*, 1995 WL 520021, at *7-8 (E.D.N.Y. Aug. 17, 1995) (refusing to extend alleged fiduciary duties between manufacturer and its merchant to third-party salesman employed by the merchant as a "stretch beyond reason").  An "attenuated and indirect relationship" bars constructive fraud and

negligent misrepresentation claims.  *E.g. Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F.

Supp. 2d 335, 344 (S.D.N.Y. 2001) (dismissing "novel legal theory" that a "fiduciary

relationship between Sandgrain and Keystone could somehow extend to" a third party); *Newbro*,

409 F. Supp. 2d at 401 (no duty where "plaintiff and defendants had no relationship with each

other at all").

　　　*Third,* Defendants' supposed exclusive knowledge of the "particulars of [their] business,"

including their GPS receivers' supposed sensitivity to overload,[12] is not enough to meet the

"superior knowledge" element required to sustain Plaintiffs' misrepresentation claims.

*Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 779 (S.D.N.Y. 2011); *JP Morgan Chase

Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004) (defendant's superior knowledge of

technical attributes of its fiber optic network insufficient, as a matter of law, to create special

relationship); *Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk*, 848 F. Supp.

446, 457 (S.D.N.Y. 1994) (constructive fraud claim premised on "superior knowledge" are

"rarely sustained in New York"); *see also In re Lehman Bros. Sec. & Erisa Litig.*, 2013 WL

3989066, at *5 (S.D.N.Y. July 31, 2013) (dismissing negligent misrepresentation claim because

"seller's superior knowledge of its own business [does not] create special relationship with

sophisticated purchaser."); *Sebastian Holdings, Inc. v. Deutsche Bank AG*, 912 N.Y.S.2d 13 (1st

Dep't 2010) (rejecting fiduciary relationship based on defendant's superior knowledge in

---

　　[12] Defendants did not have exclusive knowledge of GPS receivers' supposed sensitivity to
overload caused by LightSquared's as-yet undisclosed Terrestrial Plan.  Rather, it was
LightSquared that had exclusive knowledge of its evolving business plans, including the
technical implications of its Terrestrial Plan.  And given that knowledge, Plaintiffs could have
invested a modest amount of money to acquire GPS devices for testing.  This may be the reason
LightSquared admitted to the FCC that it was "cognizant of this issue [receiver overload]" before
Defendants purportedly first disclosed it in September 2010.  *See* Ex. 6 at 1.

connection with its foreign exchange trading account because "the parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities").

*Fourth*, even if a duty of disclosure existed, Defendants' alleged omissions are not actionable under Virginia law, because Plaintiffs solely allege that Defendants "*negligent*ly fail[ed] to disclose material information."  LAC ¶ 195; HAC ¶ 245.  "[U]nlike fraud for affirmative misrepresentations," however, constructive fraud premised on "concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable."  *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (requiring "deliberate" concealment).

C.      Harbinger's Request for Punitive Damages Should Be Stricken.

The Court should strike Harbinger's request for punitive damages—a remedy reserved for exceptional acts involving "a high degree of moral turpitude" akin to "criminal indifference." *Cross v. Zyburo*, 587 N.Y.S.2d 670, 672 (2d Dep't 1992).  "Ordinary fraud" for commercial benefit and without evil motive or "egregious conduct," as alleged here, does not warrant punitive damages.  LAC ¶ 153 (alleging desire to minimize costs of receiver redesign); HAC ¶ 218 (alleging desire to limit liability); *In re Marketxt Holdings Corp.*, 361 B.R. 369, 407 (Bankr. S.D.N.Y. 2007); *Fisher Bros. Sales, Inc. v. United Trading Co. Desarrollo y Comercio, S.A.*, 595 N.Y.S.2d 175, 177 (1993) (requiring a "very high degree of moral culpability").

## VI.      HARBINGER'S SECURITIES CLAIMS MUST BE DISMISSED.

A.      Harbinger's Rule 10b-5 Claim Should Be Dismissed.

1.      Harbinger Lacks Standing To Assert A Rule 10b-5 Claim.

The gravamen of Harbinger's Rule 10b-5 claim is that Defendants' alleged omissions affected not Defendants' own securities, but those of a *different* company—LightSquared's predecessor, SkyTerra.  But *Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 29, 33 (2d Cir. 2004), which affirmed this Court's dismissal

of Rule 10b-5 claims, *In re Nortel*, 238 F. Supp. 2d 613, 622 (S.D.N.Y. 2003) (Berman, J.),

confirms that Harbinger has no cognizable securities fraud claim based on this attenuated theory.

In *Nortel*, plaintiffs claimed that inflated forecasts by Nortel affected the stock price of a

supplier, JDS Uniphase Corporation ("JDS"), which was allegedly dependent on Nortel's

business.  The Second Circuit squarely rejected the notion that this gave rise to a claim against

Nortel by purchasers of JDS stock.  *Id*. at 34.  The court cited the Supreme Court's "restrictive

view" of standing under section 10(b), *id*. at 31 (citing *Blue Chip Stamps v. Manor Drug Stores*,

421 U.S. 723, 729-30 (1975)), and the "congressional intent" behind the statute—"to prevent

companies from using high pressure sales tactics to intimidate people into buying *their*

*securities*," *id*.  (emphasis added)—and emphasized the "widespread recognition" that Rule 10b-

5 litigation presents a unique "danger of vexatiousness," and the risk that allowing standing

would encourage "potentially abusive litigation."  *Id.* at 31-33.

Harbinger's standing is even less tenable than that of the plaintiffs in *Nortel*.  *First*,

unlike in *Nortel*, Defendants had no business relationship with SkyTerra, but rather only

sporadic, arms-length interactions that were confined to negotiations about interference issues.

*Second*, permitting Harbinger to sue for securities fraud under these facts presents an even

greater risk of "abusive litigation."  Harbinger's proposed universal standing rule would expose

defendants potentially to limitless liability to investors in thousands of unrelated companies that

could conceivably be affected by a defendant's statements, or, as here, failures to speak, on

wide-ranging topics, including micro- and macro-economic conditions, the competitive

landscape, industry trends, the regulatory environment, and tax policy, to name a few.[13]

---

[13] Additionally, several Harbinger plaintiffs that are not alleged to have purchased any
securities—a "bright-line" requirement to state a claim under Rule 10b-5—lack standing to sue.

2.    Harbinger's Complaint Does Not Comply With Rule 9(b) and the PSLRA.

For all the reasons discussed above, *see supra* Point V.B, Harbinger's securities claims—which are based on the same alleged misrepresentations as its state-law claims—also run afoul of the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z–1, 78u–4, the latter of which requires that the plaintiff "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010) (internal citations omitted), and state with particularity facts giving rise to a "strong inference" that that each Defendant sought to "*defraud the plaintiffs rather than some other group.*"  *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (emphasis added); *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 339 (S.D.N.Y. 2012) (same).

Here, Harbinger pleads the opposite:  that Defendants intended to defraud "some other group"—namely, their GPS customers—allegedly to avoid "potential liability" by "cover[ing] up the inadequate design and manufacture[] of GPS receivers."  *ECA*, 553 F.3d at 198; HAC ¶¶ 218, 227.  Thus, *scienter* is absent, and the Rule 10b-5 claim should be dismissed.  *See Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) (dismissing claim because "any intent to defraud Comcast cannot be conflated with an intent to defraud the [plaintiff] shareholders"); *Sinay v. CNOOC Ltd.*, 2013 WL 1890291, at *7 n.12 (S.D.N.Y. May 6, 2013) (dismissing fraud claim

---

(continued…)

*Scottrade, Inc. v. BroCo Investments, Inc.*, 774 F. Supp. 2d 573, 577 (S.D.N.Y. 2011)).  These entities are:  Harbinger Capital Partners LLC, Harbinger Capital Partners Special Situations GP, LLC, HGW GP, LTD, HGW Holding Company, L.P., HGW US GP Corp., HGW US Holding Company, L.P., Credit Distressed Blue Line Master Fund, LTD., and Global Opportunities Breakaway LTD.  HAC ¶¶ 12, 16-18, 21-22; *id.* ¶¶ 132-133.

absent allegations "concerning CNOOC's motive to perpetuate a fraud on its ADS investors [the putative plaintiffs]").

     3.     <u>Harbinger Has Failed to Satisfy The "In Connection With" Requirement</u>.

For many of the same reasons that it lacks standing (*supra*, Point VI.A.1), Harbinger also fails to plead that Defendants' alleged fraud was "in connection with" Harbinger's purchase of SkyTerra securities, as Rule 10b-5 mandates.[14] *Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 241 (S.D.N.Y. 2006), *aff'd*, 216 F. App'x 14 (2d Cir. 2007).  In that regard, Harbinger must—but cannot—show what courts in this District require:  that its acquisition of LightSquared securities was "integral" to some fraudulent scheme of Defendants, and that Defendants perpetrated this alleged fraud for the specific purpose of "induc[ing]" Harbinger to purchase LightSquared securities.  *Blythe v. Deutsche Bank AG*, 399 F. Supp. 2d 274, 281 (S.D.N.Y. 2005).

Here, the essence of the "fraudulent scheme" Harbinger posits was to "cover up the inadequate design and manufacture of GPS receivers" to evade "potential liability" to consumers.  HAC ¶¶ 218, 227.  There are no particularized allegations that Harbinger's investment in LightSquared was remotely relevant—much less "integral"—to this supposed "cover up."  *See Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986) (dismissing securities fraud claim based on "incidental involvement of securities").   Nor are there particularized allegations that any Defendant specifically intended to "induc[e]" Harbinger to buy LightSquared securities, as the law requires.  *See Blythe*, 399 F. Supp. 2d at 282 (fraud must be "undertaken to induce" plaintiffs' consummation of securities transactions); *Natowitz on Behalf of Lexington/56th Assocs. v. Mehlman*, 567 F. Supp. 942, 946-47 (S.D.N.Y. 1983).

---

[14] The Second Circuit has clarified that standing and "in connection with" constitute distinct statutory requirements.  *Nortel*, 369 F.3d at 34.

Courts have repeatedly rejected much less attenuated theories than this one.  *See, e.g.,*

*Natowitz*, 567 F. Supp. at 946-47 (alleged forced sale was "a direct consequence" of the fraud,

but not "an integral or even helpful part of the fraud"); *Coppola v. Applied Elec. Corp.*, 1998 WL

667934, at *3 (E.D.N.Y. Aug. 3, 1998) (irrelevant that "but for" the alleged fraud, plaintiff

"would not have invested" in the securities).  Courts have similarly rejected Harbinger's

alternative theory—that Defendants' statements and omissions directly harmed LightSquared's

business and stock price—because Rule 10b–5 is "not so extensive as to grasp all actors whose

behavior has a negative impact on the market price of an issuer's securities." *Gershon v. Wal-*

*Mart Stores, Inc.,* 901 F. Supp. 128, 132 (S.D.N.Y. 1995) ); *see Leykin*, 423 F. Supp. 2d at 241

("Not all conduct that negatively affects a company's stock price is actionable as a federal

securities fraud"); *Rand v. Anaconda-Ericsson, Inc*., 794 F.2d 843, 847 (2d Cir. 1986)

(defendant's alleged misstatement that third-party Teltronics had defaulted under security

agreement, allegedly causing its stock price to drop, was not "in connection with" plaintiffs'

purchase of Teltronics stock).

    4.    <u>Harbinger Has Failed to Plead Any Actionable Omission</u>.

Harbinger's fraud-by-omission claims fail because it cannot establish the threshold

element under either Rule 10b-5 or the common law:  a duty to disclose.  "When an allegation of

fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v.*

*United States*, 445 U.S. 222, 235 (1980).  As set forth above in Point V.B.6, no such duty existed

here.

According to its pre-motion letter, Harbinger claims Defendants' allegedly superior

knowledge gave rise to a duty to disclose.  Dkt. 33 at 2.  But the notion that "one party

possessing superior knowledge" creates a duty to disclose is "a doctrine of New York law—not

federal securities law" and is inapplicable to federal securities claims.  *Steginsky v. Xcelera, Inc.*,

741 F.3d 365, 371 (2d Cir. 2014) (federal common law, not law of place of incorporation, determined disclosure duties under Rule 10b-5); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 372 n.12 (S.D.N.Y. 2011).

      5.      <u>Harbinger's Claims Against the Corporate Defendants Are Barred By *Janus*</u>.

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2304 (2011), independently precludes any liability on the part of Defendants Deere, Garmin, and Trimble (collectively, the "Corporate Defendants") based on statements allegedly made by the GPS Council—which comprises all of the statements at issue.[15]

Under *Janus*, liability is limited to the "maker" of the alleged misrepresentation, *i.e.*, "only the person who communicates the misrepresentation." *Fezzani v. Bear, Stearns & Co. Inc.*, 716 F.3d 18, 25 (2d Cir. 2013). The GPS Council, not Defendants themselves, "communicated"—and thus "made" under *Janus*—the alleged misstatements in FCC filings. *See In re Optimal U.S. Litig.*, 2011 WL 4908745, at *5 (S.D.N.Y. Oct. 14, 2011) (under *Janus* "a statement is 'made' not by the entity that drafted it . . . but rather by the entity that delivers it").

Although Harbinger alleges in conclusory terms that the Corporate Defendants controlled the GPS Council (HAC ¶¶ 30-31), that cannot satisfy *Janus's* two requirements to plead a claim against someone other than the statement's "maker." *First*, Harbinger has failed to plead that the Corporate Defendants exercised "ultimate authority *over the statement*, including its content and whether and how to communicate it," rather than general control over the GPS Council. *See Janus*, 131 S. Ct. at 2302 (emphasis added). *Second*, Harbinger fails to plead "ultimate authority" through particularized allegations satisfying Rule 9(b), rather than "blanket references to acts or omissions by all of the defendants." *See In re UBS AG Sec. Litig.*, 2012 WL 4471265,

---

[15] *See, e.g.,* HAC ¶¶ 98, 108-109, 111-114, 117, 118, 121, 145-149, 153-157, 184.

at *9 (S.D.N.Y. Sept. 28, 2012); *Krasner v. Rahfco Funds LP*, 2012 WL 4069300, at *7-8

(S.D.N.Y. Aug. 9, 2012) (dismissing claim absent "well-pleaded allegation" that defendant

"drafted, published, wrote, 'spoke,' or made a statement in the letter").[16]

6.   <u>Harbinger Has Not Pled Loss Causation</u>.

Loss causation is an indispensable element of a 10b-5 claim and requires a plaintiff to

plead its loss (i) was foreseeable and (ii) was caused by the "materialization of the concealed

risk."  *Lentell*, 396 F.3d at 172; *see also Delshah Group LLC v. Javeri*, 2013 WL 2322488, at

*20 (S.D.N.Y. May 28, 2013).

*First*, Harbinger's 10b-5 claim fails to meet the requirements of *Dura Pharmaceuticals*

*Inc. v. Broudo*, 544 U.S. 336 (2005), which specifically held that a plaintiff cannot plead loss

causation by alleging "that 'the price' of the security 'on the date of purchase was inflated

because of the misrepresentation.'"  *Id*. at 338.  Instead, the plaintiff must show that its loss was

*caused* by the defendant's false statements rather than market factors or other events.  *Id*. at 343.

Making the same mistake as the plaintiffs in *Dura*, Harbinger alleges only that it "never would

have made this investment" (HAC ¶ 7) or "would either not have purchased securities or have

paid far less for them" (*id*. ¶ 231), had GPS Defendants made earlier disclosures.  These

allegations do not suffice.  *See Lentell*, 396 F.3d at 175 (dismissing case where plaintiffs alleged

only that defendant's false statements "artificially inflated the value" of the stocks, and failed to

show that the "falsity of those recommendations [] is the cause of the decline in stock value that

plaintiffs claim as their loss" (emphasis in original).

---

[16] Harbinger's allegations of control are based almost entirely on "information and belief"
(HAC ¶ 30) and, therefore, are insufficient.  *See Arctic Ocean Int'l, Ltd. v. High Seas Shipping
Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009) (deeming "legal conclusions couched as factual
allegations," including that, upon "information and belief," that corporate entity acts as "agent"
and "dominates and controls"  another entity, are "not facts and cannot substitute for facts.").

*Second*, Harbinger has not pled that it suffered any loss as a result of the "materialization of the concealed risk." *Lentell*, 396 F. 3d at 172.  Harbinger alleges that Defendants first revealed their overload interference objections in September 2010.  HAC ¶¶ 98, 170, 173-74.  Yet Harbinger suffered no loss upon this announcement. LightSquared continued to boast high consumer demand and reported a landmark 15-year agreement with Sprint, among other deals, nearly one year after Defendants revealed their overload interference concerns.  HAC ¶¶ 199-200.  *See GE Investors, Ret. Plan v. Gen. Elec. Co.*, 447 F. App'x 229, 231-32 (2d Cir. 2011) (loss causation absent where, on the day GE revealed purportedly concealed information, its stock price actually increased and did not begin to drop until a day later;  because "no loss occurred upon the revelation of information . . . plaintiffs failed adequately to plead loss causation, a *sine qua non* of a claim for securities fraud").

B.    Harbinger's Control Person Claim Should Be Dismissed.

Harbinger's Count II fails to state a control person claim under Section 20(a) of the Exchange Act.  Harbinger is required to plead, with particularity:  (1) a primary securities violation by the GPS Council; (2) control of the GPS Council by Deere, Garmin, and Trimble;  and (3) that Deere, Garmin, and Trimble were culpable participants in the violation.  *See*, *e.g.*, *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

*First*, as discussed (*supra*, Point VI.A), Harbinger has failed to plead a primary violation of Rule 10b-5.  *See Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 559 (S.D.N.Y. 2010) (Berman, J.) (dismissing Section 20(a) claim where plaintiff failed to plead primary violation).

*Second*, Harbinger's conclusory allegations do not plausibly show that Deere, Garmin, and Trimble had actual control over the GPS Council.  *See In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *13 (S.D.N.Y. Aug. 8, 2005) (dismissing Section 20(a) claim where complaint failed to demonstrate how defendants exercised control).  Harbinger's allegations of

control are based almost entirely on "information and belief."  HAC ¶ 30.  Also, in the Second

Circuit, "[a]llegations that a person was one of multiple directors of the primary violator does not

raise an inference of control over that entity."  *In re Global Crossing*, 2005 WL 1907005, at *13.

> *Third*, Harbinger fails to plead with particularity facts giving rise to a strong inference
that each Defendant was a "culpable participant" in the alleged violations, and "knew or should
have known" that the GPS Council was purportedly engaged in fraudulent conduct.  *Id.* at *12.

## VII.    PLAINTIFFS' REMAINING CLAIMS MUST BE DISMISSED.

A.    Harbinger's Consumer Protection Claim Fails.

> Harbinger's invocation of Section 349 of the New York General Business Law, a
consumer protection statute, as a vehicle to recover for its alleged investment injury fails for
three independently dispositive reasons.

> *First*, Harbinger must—but does not—allege that the deceptive acts complained of "took
place within the State of New York," a requirement that applies "regardless of the plaintiff's
location or where the plaintiff is deceived."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123
(2d Cir. 2013); *see Goshen*, 98 N.Y.2d at 325 (section 349 "unambiguously" addresses
"commercial misconduct occurring within New York"); *Kaufman v. Sirius XM Radio, Inc.*, 751
F. Supp. 2d 681, 686-88 (S.D.N.Y. 2010) (dismissing section 349 claim because plaintiffs failed
to plead that defendant's deceptive acts occurred in New York), *aff'd*, 474 Fed. App'x 5, 7 (2d
Cir. 2012).

> *Second*, section 349 does not apply to securities transactions.  *Prickett v. N.Y. Life Ins.
Co.*, 896 F. Supp. 2d 236, 252 (S.D.N.Y. 2012); *see Glick v. Berk & Michaels, P.C.*, 1991 WL
152614, at *14-15 (S.D.N.Y. July 26, 1991) (dismissing § 349 claim seeking "relief under the
securities laws").

*Third*, Harbinger, a hedge fund, lacks standing to assert a section 349 claim because a non-consumer plaintiff may invoke the statute only when the "gravamen" of the complaint is "consumer injury or harm to the public interest," *MyPlayCity, Inc. v. Conduit Ltd.*, 2012 WL 1107648, at *15 (S.D.N.Y. Mar. 30, 2012), and the clear focus of Harbinger's complaint is "harm to [Harbinger's] business interests"—not harm to New York residents.  *See Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007) (dismissing section 349 claim because "the Complaint focuses almost entirely on the losses suffered by Plaintiff and his business, rather than to consumers or Plaintiff's patients"). Harbinger's speculation that LightSquared's network, if successful, would "encourage competition" in wireless communications (HAC ¶ 226) does not create the required consumer "harm," such as a "potential danger to the public health or safety."  *MyPlayCity, Inc.*, 2012 WL 1107648, at *15.  Nor has Harbinger alleged that Defendants made an "actual misrepresentation or omission to a consumer," as is required.  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2004).

*Fourth*, for the reasons discussed at Point V.B.2, Harbinger does not plead a cognizable misstatement or deceptive act, or injury resulting therefrom, as the law requires.  *Josephson v. United Healthcare Corp.*, 2012 WL 4511365, at *8 (E.D.N.Y. Sept. 28, 2012).

B.   <u>LightSquared Has Failed to State Claims for Tortious Interference.</u>

In Counts VII and VIII, LightSquared alleges that Defendants tortiously interfered with various contracts and prospective business relationships LightSquared developed between 2010 and 2012.  LAC ¶ 204.  This claim is incoherent.

A claim of tortious interference with contract requires "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or

termination of the relationship or expectancy; and (4) resultant damage." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).  In addition, "for a tortious interference with economic advantage claim, the claimant must also allege that the adverse party employed "improper methods." *Id*.  Advancing conclusory allegations regarding these elements will result in dismissal of the claim.  *Alliance Tech. Grp., LLC v. Achieve 1, LLC,* 2013 WL 143500, at * 7 (E.D. Va. Jan. 11, 2013).

Here, LightSquared complains about conduct—the continued manufacture of traditional GPS devices and the alleged 2002 and 2009 misstatements and omissions—that occurred *before* LightSquared entered into the 2010-2012 business deals that Defendants supposedly disrupted.  Additionally, LightSquared fails to plead facts demonstrating that each Defendant had actual "knowledge of [that] relationship," as the law requires.  *Beals*, 279 F. Supp. 2d at 709.  LightSquared's apparent inference that Defendants necessarily knew about each of LightSquared's dozens of retail and wholesale contracts, simply because "those relationships were publicly disclosed" (LAC ¶ 203), is implausible on its face:  There is no basis to conclude that each Defendant would have actual knowledge of every fact LightSquared or any other third party might theoretically disclose in a public filing.

The claim for tortious interference with prospective business relationships (Count VIII) fails for three additional reasons.  *First*, it requires "that the adverse party employed 'improper methods,'" *Beals*, 279 F. Supp. 2d at 709 (internal citations omitted), and the Complaint contains no such allegations.  *Second*, there are no allegations of "direct or indirect" contact between Defendants and the sources of LightSquared's business expectancy, which "is a de facto prima facie element of a claim for tortious interference with a business expectancy." *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, 2012 WL 2673242, at *10 (E.D. Va. July 5, 2012) (internal citations

omitted).  *Third*, there are no allegations of a competitive relationship between LightSquared and

Defendants—another essential element of the claim.  *Id.*

C.      LightSquared's Civil Conspiracy Claim Must Be Dismissed.

Count IX's conspiracy allegations are entirely conclusory, with no details regarding who,

where, or when.  LAC ¶¶ 218-20.  Such "[c]onclusory or general allegations of conspiracy . . .

are insufficient to withstand a motion to dismiss."  *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703

(E.D. Va. 2007); *accord Beasley v. FV-I, Inc.*, 2013 WL 1192018 (E.D. Va. Mar. 21, 2013).  The

claim also fails because LightSquared does not plausibly allege a legally cognizable underlying

tort.  *Beasley*, 2013 WL 1192018 at *4.

## VIII.    MOST OF PLAINTIFFS' CLAIMS ARE TIME-BARRED.

A.      Many of LightSquared's Claims Are Time-Barred.

Five of LightSquared's claims—some of which are premised on conduct that occurred

over ten years ago—are time-barred in whole or in part.  Even allowing LightSquared the benefit

of the bankruptcy tolling provision (11 U.S.C. § 108), which grants another two years to bring a

claim if the limitations period has not expired as of the filing date of the bankruptcy petition

(here May 14, 2012), these claims are still barred.

Under the borrowing statute (N.Y. CPLR § 202), where the plaintiff is not a New York

resident and the cause of action arises outside of New York, the limitations period is the shorter

of that of New York or the state in which the plaintiff corporation was incorporated (here,

Delaware) or has its principal place of business (here, Virginia).  *See Muto v. CBS Corp.*, 668

F.3d 53, 59 (2d Cir. 2012).

The *quantum meruit* (Count II), breach of contract (2002 Agreement) (Count III), breach of implied covenant (Count V), and unjust enrichment (Count VI) claims each has a three-year limitations period.[17]  Each accrued no later than the time of the alleged breach or wrongful act.[18]

LightSquared alleges that Defendants breached the 2002 Letter Agreement, or alleged oral promises made in negotiations for that Letter, by "continuing to manufacture receivers that are deliberately designed to work only if they can receive signals outside of Defendants' assigned spectrum," and "by opposing the deployment and authorization of LightSquared's network."  LAC ¶ 159.  This claim accrued "at the moment of the breach."[19]  LightSquared alleges that Defendants continued to manufacture and sell GPS receivers "at least since 2003."  LAC ¶ 7.  Therefore, the three-year limitations period for Defendants' alleged breach in manufacturing GPS devices expired at least as early as 2006, barring this claim.

The accrual of the three-year limitations period for both unjust enrichment[20] and *quantum meruit*[21] commenced when defendants continued to manufacture allegedly non-compliant

---

[17]  The limitations period for *quantum meruit* and unjust enrichment is three years in Delaware and Virginia.  *Compare* Del. Code Ann. tit. 10, § 8106 and Va. Code Ann. § 8.01–246(4) *with* N.Y. CPLR § 213(1) (unjust enrichment) and § 213(2) (*quantum meruit*) (six years).  Breach of contract has a three year limitations period under Delaware law.  *Compare* Del. Code Ann. tit. 10, § 8106 *with* Va. Code Ann. § 8.01-246(2) (five years) and N.Y. CPLR § 213(2) (six years).

[18]  Under the borrowing statute, each potential jurisdiction's "rules governing accrual of causes of action" are applied.  *Saylor v. Lindsley*, 302 F. Supp. 1174, 1180 (S.D.N.Y. 1969).

[19]  *Ins. Co. of N. Am. v. NVF Co.*, 2000 WL 305338, at *3 (Del. Super. Ct. Jan. 20, 2000).

[20]  Unjust enrichment claims accrue on the date of the wrongful act that makes defendant's enrichment "unjust."  *Lismont v. Alexander Binzel Corp.*, 2013 WL 6095461, at *13 (E.D. Va. Nov. 18, 2013); *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *4 (Del. Ch. Dec. 23, 2008)).  Here, when Defendants allegedly unjustly benefitted from LightSquared's commitment "to restrict" its network operations by "choosing not to improve" receivers, "at least" as early as 2003.  LAC ¶¶ 7, 178-180.

[21]  The *quantum meruit* claim began to accrue "at the time of the alleged injury" (*see Hercules, Inc. v. Tomaszewski*, 2011 WL 6951839, at *3 (Del. Com. Pl. Dec. 29, 2011)), when Defendants

receivers from 2003 onwards.  LAC ¶¶ 7, 154, 178-180.  Thus, both limitations periods expired

no later than 2006 and accordingly are time-barred.  Finally, the statute of limitations for the civil

conspiracy claim, which has at most a three-year statute of limitations,[22] accrues at "the time of

the overt act."  *Glassberg v. Boyd,* 116 A.2d 711, 717 (Del. Ch. 1955).  Since the civil

conspiracy claim is based on the allegations of the other underlying claims, it is barred to the

same extent as those claims.

B.      <u>Harbinger's Claims Are Largely Time-Barred.</u>

As demonstrated below, six of the eight claims in Harbinger's complaint must be

dismissed in whole or in part because they are time-barred.

The securities fraud claims (Counts I and II)[23] are barred if they are brought "'later than

the earlier of'—'(1) 2 years after the discovery of the facts constituting the violation'; or '(2) 5

years after such violation.'"  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 638 (2010) (*quoting*

28 U.S.C. § 1658(b)). Section 1658(b)(1) thus bars Harbinger's securities fraud claims because

Plaintiffs discovered the facts no later than September 15, 2010, when Defendants filed

comments advising the FCC of the receiver overload issues.  HAC ¶¶ 4, 170.  These claims are

also barred by the five-year statute of repose in 28 U.S.C. § 1658(b)(2), which runs from "when

the alleged misstatements [and] omissions" were made.  *Boudinot v. Shrader*, 2012 WL 489215,

---

(continued…)

purportedly did not compensate LightSquared for its services and instead allegedly sold
"hundreds of millions more GPS receivers from 2003 on." LAC ¶ 154.

[22]  *Compare Glassberg,* 116 A.2d at 717 (citing three year statute in Del. Code Ann. tit. 10, §
8106) *with Blackwelder v. Millman*, 522 F.2d 766, 776 (4th Cir. 1975) (incorporating the statutes
of limitations of the underlying claims) *and Meridien Int'l Bank Ltd. v. Gov't of the Rep. of
Liberia*, 23 F. Supp. 2d 439, 450 (S.D.N.Y. 1998) (same).

[23]  The statute of limitations for a Section 20(a) claim is "identical" to the Section 10(b) claim.
*Glonti v. Stevenson*, 2009 WL 311293, at *6 (S.D.N.Y. Feb. 6, 2009).

at *4 (S.D.N.Y. Feb. 15, 2012).  As set forth below, the alleged misstatements and omission

occurred prior to August 9, 2008, five years before this suit was filed.

　　　Under New York law,[24] the applicable limitations periods are six years for fraud (Count

III),[25] negligent misrepresentation (Count IV),[26] constructive fraud (Count V),[27] and equitable

estoppel (Count VI), to the extent the Court treats it as an affirmative claim (which it should

not).[28]  These claims are predicated on Defendants' alleged failure to disclose that critical GPS

devices would malfunction if LightSquared deployed its network.  HAC ¶¶ 3, 5-6.  The fraud,

negligent misrepresentation, and constructive fraud claims accrue on the date of the alleged

misrepresentation or omission. [29]  Here, the alleged misrepresentations and the omission occurred

over six years before Harbinger sued on August 9, 2013.[30]  Thus, these claims are time-barred.

---

[24]  New York law governs the statute of limitations for a plaintiff corporation that is a citizen of New York, even if "the underlying claim ultimately will be governed by the substantive law of another jurisdiction," because the limitations period is "part of the forum's procedure." *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 431 (S.D.N.Y. 1996).

[25]  *See* N.Y. CPLR § 213(8) (fraud statute of limitations is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it"). Harbinger's claim is also barred by the two-year provision because Harbinger was on express notice no later than September 15, 2010, when USGIC filed comments with the FCC.

[26]  A negligent misrepresentation claim "based on the same facts as a claim for fraud is governed by the six-year statute of limitation for fraud under C.P.L.R. § 213(8)." *Von Hoffmann v. Prudential Ins. Co. of Am.*, 202 F. Supp. 2d 252, 263 (S.D.N.Y. 2002) (citation omitted).  This claim is barred under the shorter two-year provision for the same reasons as the fraud claim.

[27]  *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 468-69 (S.D.N.Y. 1999) (citing N.Y. CPLR § 213(1)) (six-year limitation for constructive fraud).

[28]  Equitable estoppel is "an affirmative defense, not an offensive claim." *Sabilia v. Richmond*, 2011 WL 7091353, at *29 (S.D.N.Y. Oct. 26, 2011).  If deemed an offensive claim, it is "incidental" to the fraud claim and thus has the same "six-year statute of limitations" as for fraud. *N. Am. Van Lines, Inc. v. Am. Int'l Cos.*, 2006 WL 908653, at *9 (Sup. Ct. N.Y. Cnty. 2006), *aff'd* 832 N.Y.S.2d 530 (1st Dep't 2007).

[29]  *See Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 887 (2d Cir. 1993) (claim accrued as of the "date of commission" of the misrepresentations); *Kwan v. Schlein,* 441 F. Supp. 2d 491, 504 (S.D.N.Y. 2006) (same); *Von Hoffmann,* 202 F. Supp. 2d at 263 (accrual period for

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaints should be dismissed in their entirety and with prejudice.

---

(continued…)

negligent misrepresentation begins "on the date of the alleged misrepresentation which is relied upon by the plaintiff"); *Old Republic Ins. Co.*, 51 F. Supp. 2d at 468-69 (constructive fraud claim accrues on the date of the alleged misrepresentation or omission).

[30]   The Complaint alleges the same omission throughout, i.e., the failure to disclose the overload problem.  This claim accrued when the omission first allegedly occurred in 2002.  Similarly, the alleged "misrepresentations" are alleged to have occurred between 2001 and 2005.  *See* HAC ¶¶ 76, 109, 121.  The only misrepresentation allegation after this period (in 2011, "Defendants represented [that] they were working in good faith towards a 'solution'" (HAC ¶ 191)) is non-actionable as a matter of law.  *See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (representations that "amount to little more than intentionally-false statements by [the defendant] indicating his intent to perform" a promise are "not sufficient to support a claim of fraud under New York law"); *Frutico S.A. de C.V. v. Bankers Trust Co.*, 833 F. Supp. 288, 300 (S.D.N.Y. 1993) ("there is no duty to negotiate in good faith that can be enforced against a party to the negotiations").

Dated:  New York, New York                      Respectfully submitted,
        May 28, 2014


By: _/s/ William A. Isaacson_____               By: _/s/ Kenneth I. Schacter_____

William A. Isaacson                             Kenneth I. Schacter
BOIES, SCHILLER & FLEXNER LLP                   BINGHAM McCUTCHEN LLP
5301 Wisconsin Avenue, N.W.                     399 Park Avenue
Washington, DC  20015                           New York, NY 10022
(202) 237-9607                                  (212) 705-7000
*Counsel for Trimble Navigation Ltd.*           *Counsel for Deere & Company*


By: _/s/ Steven R. Schindler_____             By: _/s/ Philip Le B. Douglas_____

Steven R. Schindler                             Philip Le B. Douglas
SCHINDLER COHEN & HOCHMAN LLP                   JONES DAY
100 Wall Street                                 222 East 41st Street
15th Floor                                      New York, NY  10017
New York, NY  10005                             (212) 326-3939
(212) 277-6310                                  *Counsel for Garmin International, Inc.*
*Counsel for The U.S. GPS Industry Council*
(Joining in all arguments except Section
VI(A)(5))                                       By: _/s/ Michael D. Hays_____

                                                Michael D. Hays
                                                COOLEY LLP
                                                1299 Pennsylvania Avenue, N.W.
                                                Suite 700
                                                Washington, DC  20004
                                                (202) 776-2711
                                                *Counsel for Garmin International, Inc.*

**EXHIBIT A to Addendum to Defendants' Memorandum of Law in Support of Motion to Dismiss**

**July 17, 2002 Letter to FCC signed by Mobile Satellite Ventures LP and GPS Council**

EX PARTE OR LATE FILED                    ORIGINAL

RECEIVED

July 17, 2002          JUL 17 2002

FEDERAL COMMUNICATIONS COMMISSION
OFFICE OF THE SECRETARY

**Via Hand Delivery**

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

> Re:   **Ex Parte Notice**
> **IB Docket No. 01-185**
> **File No. SAT-ASG-20010302-00017 et al.**

Dear Ms. Dortch:

    We are pleased to inform you that the U.S. GPS Industry Council ("Council") and Mobile Satellite Ventures L.P. ("MSV") have agreed on specific out-of-band emission ("OOBE") limits into the entire GPS band for the ancillary terrestrial component ("ATC") base stations and terminals that MSV will deploy in connection with its proposed next-generation Mobile Satellite Service system as described in the attached document. These OOBE limits are intended to protect GPS receivers.

    These limits are -100 dBW/MHz for ATC base stations and initially -90 dBW/MHz for terminals operating in an ATC mode. For new terminals, the limit will be tightened to -95 dBW/MHz within five years from the date MSV service commences. This increase in protection is to account for a greater density of users and the need to protect GPS receivers from the aggregation of interference from multiple sources. MSV currently plans that all MSV terminals will include GPS chipsets and process GPS signals.

    These OOBE limits are appropriate considering that MSS services, technical characteristics, operational interference scenarios, and expected density are published and understood. MSV's proposed terrestrial augmentations are also well known. Consequently, these OOBE limits developed for the MSV service are unlike the OOBE limits required to address emerging novel communication techniques with 1) poorly documented technical and operational characteristics; 2) ubiquitous deployment in a broad range of electronic devices; and 3) deployment in large-scale, overlapping networks.

No. of Copies rec'd   O/5
List ABCDE

Ms. Marlene H. Dortch
July 17, 2002
Page 2 of 2

MSV and the Council therefore urge the Commission to adopt in the referenced proceedings the OOBE limits set out in the attached document and as described above.

Please direct any questions regarding this matter to the undersigned.

Respectfully submitted,

MOBILE SATELLITE VENTURES L.P.

By: _____
Bruce D. Jacobs

Shaw Pittman L.L.P.
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 454-7077

Its Attorneys

THE U.S. GPS INDUSTRY COUNCIL

By: _____
Raul R. Rodriguez

Leventhal, Senter & Lerman P.L.L.C.
2000 K Street, N.W., Suite 600
Washington, D.C. 20006
(202) 429-8970

Its Attorneys

cc (w/ attach.; by hand):    Thomas Tycz
                             James Ball
                             Breck Blalock
                             Ron Repasi
                             Trey Hanbury

# Agreement
## on the Out-of-Band Emissions Limits

Mobile Satellite Ventures L.P.

The U.S. GPS Industry Council

17 July 2002

# A More Restrictive Emission Limit in GPS Band Is Appropriate for ATC Operations

- Current MSS emission limit (-70 dBW/MHz) was derived to protect aviation GPS from satellite-based services

  - 100 feet separation, -10 dB GPS antenna gain towards emitter, resulting in 76.1 dB emission attenuation

- There is likely to be a greater density of users operating in the ATC mode than in the satellite mode

- Users operating in the ATC mode are more likely to be in close proximity to terrestrial GPS users

  - Indoor users include FCC mandated E-911 terminals

  - At 2 meters, attenuation is only 42.4 dB

    - -70 dBW/MHz results in interference that is 29 dB above the thermal noise floor

# MSV Emission Limits

- For Base Stations
  - Use filtering to achieve -100 dBW/MHz, or lower
  - Achievable with larger envelope filters
- For Terminals
  - Use filtering to achieve -90 dBW/MHz, or lower, in short-term
  - Migrate to -95 dBW/MHz, or lower, for new terminals in 5 years (from the date MSV service is operational)
  - Either limit is still above thermal noise at 2 meters
- All limits are applicable from 1559 MHz to 1605 MHz to protect modern GPS receiver multipath mitigation technology

**EXHIBIT B to Addendum to Defendants' Memorandum of Law in Support of Motion to Dismiss**

**August 17, 2009 Letter to FCC signed by SkyTerra and GPS Council**

August 13, 2009

Via Electronic Filing (IBFS)

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
445 12th Street, S.W.
Washington, DC 20554

   Re:  Ex Parte Letter
      SkyTerra Subsidiary LLC
      File Nos. SAT-MOD-20090429-00046, SAT-MOD-20090429-00047, SES-
      MOD-20090429-00536

Dear Ms. Dortch:

  We are pleased to inform you that, in connection with the above-referenced applications of SkyTerra Subsidiary LLC ("SkyTerra") to modify its Ancillary Terrestrial Component authorization (the "ATC Modification Application"), the U.S. GPS Industry Council ("Council") and SkyTerra have agreed on out-of-band emissions ("OOBE") limits for the operation of low-power base stations with a maximum EIRP of -4 dBW/MHz that are intended to be deployed indoors ("femtocells") and personal computer ("PC") data cards communicating with such base stations.[1]  Specifically, SkyTerra will limit OOBE for femtocells and data cards communicating with such femtocells to less than -114.7 dBW/MHz and -111.7 dBW/MHz in the 1559-1605 MHz band, respectively.  These limits are intended to reduce the potential for harmful interference to GPS receivers operating indoors, thereby addressing the concerns expressed by the Council in its Comments regarding the ATC Modification Application.[2]

  SkyTerra and the Council therefore urge the Commission to adopt the OOBE limits set forth in this letter as a license condition to the grant of the ATC Modification Application.

---

[1] The reference to "PC data cards" is intended to mean RF devices that work in conjunction with a PC or laptop computer, including external PC devices, such as USB modems, Type II PC cards, and ExpressCards, and internal PC devices that provide the same data communications functionality as such external devices.  The reference is not intended to include handsets that are capable of voice and data transmissions independent of a PC, even if such device could function as an external PC modem.

[2] *See* Comments of the U.S. GPS Industry Council (July 10, 2009).  The Council is separately filing a letter withdrawing its Comments, as a result of this agreement.

Please direct any questions regarding this matter to the undersigned.

Respectfully submitted,

SkyTerra Subsidiary LLC

By: _____/s/_____
       Bruce D. Jacobs

Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, NW
Washington, DC 20037
*Counsel for SkyTerra Subsidiary LLC*

The U.S. GPS Industry Council

By: _____/s/_____
       Raul R. Rodriguez

Leventhal Senter PLLC
2000 K Street, NW
Washington, DC 20006-1809
*Counsel for the U.S. GPS Industry Council*

cc (via email):

William Bell
Howard Griboff
Kathyrn Medley
Robert Nelson

2

401365679v3

## CERTIFICATE OF SERVICE

I, Renee Williams, a secretary with the law firm of Pillsbury Winthrop Shaw Pittman

LLP, hereby certify that on this 13th day of August 2009, I served a true copy of the foregoing

by first-class United States mail, postage prepaid, upon the following:


Tom Houtman
Director, Product Development
SkyWave Mobile Communications, Inc.
SkyWave Mobile Communications, Corp.
1145 Innovation Drive, Suite 288
Ottawa, Ontario
Canada K2K 3G8

Diane J. Cornell
Inmarsat, Inc.
1101 Connecticut Avenue, N.W.
Suite 1200
Washington, DC 20036

Jennifer D. Hindin
Carl R. Frank
Colleen King
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
*Counsel for Amtech Systems LLC*

John P. Janka
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
*Counsel for Inmarsat, Inc.*


_____
/s/
Renee Williams

## DECLARATION OF SERVICE

Paul Bartholomew Green, an attorney admitted to practice before the bar of this Court, declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that a true and correct copy of the accompanying Defendants' Memorandum of Law in Support of Motions to Dismiss will be served via the Court's ECF electronic filing system simultaneously with the filing of this declaration, and that an additional copy will be sent to the parties listed below via UPS overnight mail.

Eugene F. Assaf, P.C.
K. Winn Allen
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Gary M. Elden
Todd C. Jacobs
Jacob W. Harrell
Daniel M. Hinkle
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606

Matthew S. Dontzin
Tibor L. Nagy
David A. Fleissig
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, NY 10075

Dated:  New York, New York
        May 28, 2014                        _____/s/ Paul Bartholomew Green_____
                                                Paul Bartholomew Green