# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>LightSquared Inc., *et al.*,<br>                                        Debtors. | Chapter 11<br>Case No. 12-12080 (SCC)<br>Jointly Administered |
| LightSquared Inc.;<br>LightSquared LP; and<br>LightSquared Subsidiary LLC,<br>                                        Plaintiffs,<br><br>                        v.<br><br>Deere & Company; Garmin International, Inc.;<br>Trimble Navigation Limited;<br>The U.S. GPS Industry Council;<br>The Coalition to Save Our GPS;<br>John Doe No. 1, as a representative of<br>The Coalition to Save Our GPS; and<br>John Doe No. 2, as a representative of<br>The Coalition to Save Our GPS,<br>                                        Defendants. | No.  13-CV-8157 (RMB) |
| Harbinger Capital Partners LLC;<br>Harbinger Capital Partners II LP;<br>Harbinger Capital Partners Master Fund I, LTD.;<br>Harbinger Capital Partners Special Situations Fund, L.P.;<br>Harbinger Capital Partners Special Situations GP, LLC;<br>HGW GP, LTD;<br>HGW Holding Company, L.P.;<br>HGW US GP Corp.;<br>HGW US Holding Company, L.P.;<br>Credit Distressed Blue Line Master Fund, LTD.; and<br>Global Opportunities Breakaway LTD.,<br>                                        Plaintiffs,<br><br>                        v.<br><br>Deere & Company;<br>Garmin International, Inc.;<br>Trimble Navigation Limited; and<br>The U.S. GPS Industry Council,<br>                                        Defendants. | No. 13 cv 5543 (RMB) |

## HARBINGER'S RESPONSE TO MOTION TO DISMISS

1696945

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION:  FUNDAMENTAL REASONS TO DENY MOTION AS TO
    HARBINGER ........................................................................................1

STATEMENT OF FACTS ...............................................................................2

    A.    Handset Waiver:  Defendants' Brief v. Allegations. ...................................2

    B.    Defendants Knew Material Facts Prior To March 2010. ............................2

    C.    Defendants Knew That Only They Had Access To The Material
        Facts. ..............................................................................2

    D.    In March 2009–March 2010, Defendants Knew Plaintiffs Were
        About To Invest More Than A Billion Dollars And That No One
        With Knowledge Of The Concealed Material Facts Would Make
        That Investment. ..................................................................3

    E.    Defendants Caused Plaintiffs To Misapprehend The Material
        Facts, Including By Misleading Half-Truths. ................................3

    F.    Under Industry Practices And Standards, Defendants Knew
        Everyone Relied On Defendants To Disclose "Interference" Issues
        Known To Defendants. ............................................................4

    G.    Other Decisive Allegations Defendants Ignored. ........................4

ARGUMENT ..................................................................................................5

    I.    DEFENDANTS VIOLATE CONTROLLING STANDARDS FOR
        MOTIONS TO DISMISS. .........................................................5

        A.    Allegations Must Be Taken As True. ..........................................5

        B.    Extrinsic Evidence Cannot Be Considered In This PSLRA Case. .............5

    II.    HARBINGER PROPERLY PLED DUTY TO DISCLOSE. ................................6

        A.    Under Rule 10b-5, Defendants Had A Duty To Disclose Though
        Not In Privity With Plaintiffs. ....................................................6

        B.    New York Law Applies To Harbinger's State Law Non-
        Contractual Claims. ................................................................7

C.    Under New York Law, Defendants Had A Duty To Disclose Though Not In Privity With Plaintiffs. ........................................................8

D.    Half-Truths And Misleading Statements Reinforced The Duty To Disclose The Whole Truth. ........................................................11

E.    Constructive Fraud Claims Were Properly Pled. ......................................12

III.   OTHER DEFENSES EVAPORATE ONCE THE DUTY TO DISCLOSE IS RECOGNIZED AND THE ALLEGATIONS OF THE COMPLAINT ARE TAKEN AS TRUE. ........................................................12

A.    Harbinger Bought And Sold Securities Of The Exact Company Concerning Which The Deceit Occurred.  That "Connection" Is All That Is Required By The Securities Laws. ..........................................12

B.    That Defendants Acted Jointly Is Pled With Enough Specificity To Satisfy Rule 9(b), The PSLRA, The *Janus* Case, And Section 20(a). ........................................................13

C.    Harbinger Adequately Pleads (1) Causation, (2) Reliance, (3) Equitable Estoppel, (4) Scienter, (5) Punitive Damages, And (6) A Violation Of Section 349 ........................................................16

IV.   *NOERR-PENNINGTON* AND FEDERAL PREEMPTION HAVE NOTHING TO DO WITH THIS CASE. ........................................................20

A.    The Doctrines Do Not Provide Immunity For Fraud On Private Parties. ........................................................20

B.    In All Events, False Statements To Non-Political Government Officials, In Adjudicative Proceedings Or To Provide Information, Are Not Protected By *Noerr*. ........................................................20

C.    The Federal Communications Act Does Not Preempt The Instant Damages Claims. ........................................................22

V.    NO STATUTE OF LIMITATIONS HAS RUN. ........................................................22

A.    Federal:  The Complaint Was Filed Before "2 Years After The Discovery Of The Facts Constituting The Violation." ..........................22

B.    Federal:  The Complaint Was Filed Before "5 Years After Such Violation." ........................................................23

C.    New York:  Harbinger's State Law Claims Were Timely Filed. ..............24

CONCLUSION ........................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ........................................................................................ 6, 13, 17

*Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*,
  No. 06 Civ. 5383, 2007 WL 2077153 (S.D.N.Y. July 20, 2007) ............................................. 7

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) .................................................................................................... 21

*Amusement Indus., Inc. v. Stern*,
  786 F. Supp. 2d 758 (S.D.N.Y. 2011) ............................................................................ 9

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ........................................................................... 24

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
  939 N.Y.S.2d 274 (2011) ........................................................................................... 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .......................................................................................... 5

*B.S.L. One Owners Corp. v. Key Int'l Mfg., Inc.*,
  640 N.Y.S.2d 135 (App. Div. 1996) .............................................................................. 19

*Bank of Montreal v. Signet Bank*,
  193 F. 3d 818 (4th Cir. 1999) ...................................................................................... 8

*Bastien v. AT&T Wireless Servs., Inc.*,
  205 F.3d 983 (7th Cir. 2000) ....................................................................................... 22

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  344 F.3d 211 (2d Cir. 2003) ........................................................................................ 19

*Boudinot v. Shrader*,
  No. 09 Civ. 10163, 2012 WL 489215 (S.D.N.Y. Feb. 15, 2012) .......................................... 24

*Brascan Ltd. v. Edper Equities Ltd.*,
  477 F. Supp. 773 (S.D.N.Y. 1979) ................................................................................ 11

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1993) ........................................................................................ 8

*Brown v. Lockwood,*
    432 N.Y.S.2d 186 (N.Y.App. 1980) .................................................................. 12

*Burlington N. R.R. Co. v. Woods,*
    480 U.S. 1 (1987)............................................................................................... 5

*Caiola v. Citibank, N.A., N.Y.,*
    295 F.3d 312 (2d Cir. 2002) ............................................................................. 11

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972)........................................................................................... 21

*Ceribelli v. Elghanayan,*
    990 F.2d 62 (2d Cir. 1993) ............................................................................... 8

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,*
    4 N.Y.2d 403 (1958) ......................................................................................... 11

*China Trust Bank of N.Y. v. Standard Chartered Bank, PLC,*
    981 F. Supp. 282 (S.D.N.Y. 1997) .................................................................. 18

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.,*
    875 F. Supp. 2d 359 (S.D.N.Y. 2012) ............................................................. 14

*City of Roseville Emps.' Ret. Sys. v. Energy Solutions, Inc.,*
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) ............................................................. 15

*Clinton v. Brown & Williamson Holdings, Inc.,*
    No. 05 Civ. 9907, 2013 WL 3111122 (S.D.N.Y. June 20, 2013)........................... 20

*Consol. Edison, Inc. v. Ne. Utilities,*
    426 F.3d 524 (2d Cir. 2005) ............................................................................. 24

*Cooperative Commc'ns, Inc. v. AT&T Corp.,*
    867 F. Supp. 1511 (D. Utah 1994).................................................................... 22

*Courtenay Commc'ns Corp. v. Hall,*
    334 F.3d 210 (2d Cir. 2003) ............................................................................. 5

*Cruz v. FXDirectDealer, LLC,*
    720 F.3d 115 (2d Cir. 2013) ............................................................................. 19

*Cumisky v. James River Corp.,*
    No. 93 Civ. 1975, 1995 WL 520021 (E.D.N.Y. Aug. 17, 1995)............................. 9

*DIMON Inc. v. Folium, Inc.,*
    48 F. Supp. 2d 359 (S.D.N.Y. 1999) ............................................................... 16

iv

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  847 F. Supp. 2d 624 (S.D.N.Y. 2012) ............................................................ 11, 16

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ...................................................................................... 16

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ...................................................................................... 20, 21

*ECA, Local 134 v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ........................................................................... 18

*Elbit Sys., Ltd. v. Credit Suisse Grp.*,
  917 F. Supp. 2d 217 (S.D.N.Y. 2013) ............................................................ 15, 16

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
  343 F.3d 189 (2d Cir. 2003) ........................................................................... 16

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .......................................................................................... 5

*Golub v. Tanenbaum-Harber Co., Inc.*,
  931 N.Y.S.2d 308 (App. Div. 2011) ................................................................ 8

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) ..................................................................................... 19

*Gould v. Winstar Commc'ns, Inc.*,
  692 F.3d 148 (2d Cir. 2012) ........................................................................... 16

*Grand Union Mount Kisco Emps. Fed. Credit Union v. Kanaryk*,
  848 F. Supp. 446 (S.D.N.Y. 1994) .................................................................. 9

*Halliburton v. Erica P. John Fund*,
  134 S. Ct. 2398 (June 23, 2014) ..................................................................... 6, 12

*Hirschberg v. G.W. Motors, Inc.*,
  34 Va. Cir. 55 (1994) ..................................................................................... 8

*In re Adelphia Commc'ns Corp. Secs. & Derivative Litig.*,
  No. 03 MD 1529, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ........................ 14

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Secs. Litig.*,
  794 F. Supp. 1424 (D. Ariz. 1992) .................................................................. 20

*In Re Beacon Assocs. Litig.*,
  282 F.R.D. 315 (S.D.N.Y. 2012) ..................................................................... 23

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010) .................................................... 11

*In re Brand*,
   173 N.Y.S. 169 (App. Div. 1918), *aff'd*, 125 N.E. 913 (N.Y. 1919) ....................................... 12

*In re Buspirone Patent Litig.*,
   185 F. Supp. 2d 363 (S.D.N.Y. 2002) ................................................... 21

*In re Carter-Wallace, Inc. Sec. Litig.*,
   150 F.3d 153 (2d Cir. 1998) ............................................................. 11

*In re Citigroup Inc. Sec. Litig.*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010) ................................................... 16

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 Civ. 1897, 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006),
   *vacated in part on other grounds*, 531 F.3d 190 (2d Cir. 2008) ............................................ 23

*In re Facebook, Inc., IPO Secs. and Derivative Litig.*,
   ___ F. Supp. 2d ___, 2013 WL 6621024 (S.D.N.Y. 2013) ...................................... 6

*In re J.P. Jeanneret Assocs., Inc.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011) ............................................... 13, 17

*In re Lehman Bros. Secs. & Erisa Litig.*,
   No. 10 Civ. 6637, 2013 WL 3989066 (S.D.N.Y. July 31, 2013) ............................................. 9

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   758 F. Supp. 2d 264 (S.D.N.Y. 2010) ................................................... 23

*In re NYSE Specialists Secs. Litig.*,
   503 F.3d 89 (2d Cir. 2007) ............................................................. 13

*In re Pfizer Inc. Secs. Litig.*,
   No. 04 Civ. 9866, 2013 WL 1285173 (S.D.N.Y. Mar. 28, 2013) ............................................ 15

*In re SLM Corp. Sec. Litig.*,
   740 F. Supp. 2d 542 (S.D.N.Y. 2010) ................................................... 18

*In re Vebeliunas*,
   252 B.R. 878 (Bankr. S.D.N.Y. 2000) .................................................... 9

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*,
   924 F. Supp. 2d 528 (S.D.N.Y. 2013) ................................................... 23

*Janus Capital, Inc. v. First Derivative Traders*,
   131 S. Ct. 2296 (2011) ............................................................. 14, 15

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*,
   933 F. Supp. 347 (S.D.N.Y. 1996) ..................................................... 11

*JP Morgan Chase Bank v. Winnick*,
   350 F. Supp. 2d 393 (S.D.N.Y. 2004) .................................................. 9

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ............................................................ 18

*Katyle v. Penn Nat'l Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) ............................................................ 6

*Kimmell v. Schaefer*,
   675 N.E.2d 450 (N.Y. 1996).................................................... 8, 9, 10

*Krys v. Aaron*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011) ............................................. 14

*Kwan v. Schlein*,
   441 F. Supp. 2d 491 (S.D.N.Y. 2006) ............................................. 24

*Lawrence v. Cohn*,
   325 F.3d 141 (2d Cir. 2003) ............................................................ 12

*LBBW Luxemburg S.A. v. Wells Fargo Secs. LLC*,
   __ F. Supp. 2d __, 2014 WL 1303133 (S.D.N.Y. 2014) ..................... 12

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) ............................................................ 16

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d. Cir. 2006) ..................................................... 8, 13

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138 (2d Cir. 2013) ............................................................ 5

*Licci v. Lebanese Canadian Bank, SAL*,
   672 F.3d 155 (2d Cir. 2012) ............................................................ 7

*Litton Sys., Inc. v. AT&T*,
   700 F.2d 785 (2d Cir. 1983) ............................................................ 21

*Long Island Lighting Co. v. Imo Indus. Inc.*,
   6 F.3d 876 (2d Cir. 1993) .............................................................. 24

*Mar Oil, S.A. v. Morissey*,
   982 F.2d 830 (2d Cir. 1993) ............................................................ 18

*Matter of Allstate Ins. Co. (Stolarz—N.J. Mfrs. Ins. Co.)*,
 81 N.Y.2d 219 (N.Y. 1993) ......................................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
 547 U.S. 71 (2006)..................................................................................... 13

*Michelle Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc.*,
 No. 97 Civ. 6837, 1997 WL 724575 (S.D.N.Y. Nov. 18, 1997) ............... 18

*Newbro v. Freed*,
 409 F. Supp. 2d 386 (S.D.N.Y. 2006) ........................................................ 9

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000) ...................................................................... 17

*Ontario Public Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*,
 369 F.3d 27 (2d Cir. 2004) ........................................................................ 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 647 N.E.2d 741 (N.Y. 1995)...................................................................... 19

*Padula v. Lilarn Props. Corp.*,
 644 N.E.2d 1001 (N.Y. 1994)...................................................................... 7

*Peterson v. City of New York*,
 No. 97 Civ. 4505, 1998 WL 247530 (S.D.N.Y. 1998) ............................. 17

*Radio Station WOW v. Johnson*,
 326 U.S. 120 (1945).................................................................................. 22

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
 280 F.R.D. 147 (S.D.N.Y. 2012) ............................................................... 17

*Romano v. Kazacos*,
 609 F.3d 512 (2d Cir. 2010) ...................................................................... 13

*Sawabeh Info. Servs. Co. v. Brody*,
 832 F. Supp. 2d 280 (S.D.N.Y. 2011) ....................................................... 16

*Scalp & Blade, Inc. v. Advest, Inc.*,
 722 N.Y.S.2d 639 (App. Div. 2001)........................................................... 19

*Schlaifer Nance & Co. v. Estate of Warhol*,
 119 F.3d 91 (2d Cir. 1997) ........................................................................ 16

*Schultz v. Boy Scouts of Am.*,
 65 N.Y.2d 189 (1985).................................................................................. 7

*Sebastian Holdings, Inc. v. Deutsche Bank AG,*
   912 N.Y.S.2d 13 (N.Y. App. 2010) ...................................................... 9

*SEC v. Dorozhko,*
   574 F.3d 42 (2d Cir. 2009) .................................................................. 6

*SEC v. Pentagon Capital Mgmt. PLC,*
   725 F.3d 279 (2d Cir. 2013) .............................................................. 15

*SEC v. Zandford,*
   535 U.S. 813 (2002)........................................................................... 13

*Securiton Magnalock Corp. v. Schnabolk,*
   65 F.3d 256 (2d Cir. 1995) ................................................................ 19

*Semerenko v. Cendant Corp.,*
   223 F.3d 165 (3d Cir. 2000) ......................................................... 13, 18

*Shroyer v. New Cingular Wireless Servs., Inc.,*
   622 F.3d 1035 (9th Cir. 2010) .......................................................... 22

*Simington v. Lease Fin. Group, LLC,*
   No. 10 Civ. 6052, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) ............ 14

*Solutia Inc. v. FMC Corp.,*
   456 F. Supp. 2d 429 (S.D.N.Y. 2006) ............................................... 10

*Stevenson Equip., Inc. v. Chemig Const. Corp.,*
   170 A.D.2d 769 (App. Div. 1991),
   *aff'd,* 594 N.E.2d 928 (N.Y. 1992) ..................................................... 8

*Stull v. Bayard,*
   561 F.2d 429 (2d Cir. 1977) .............................................................. 23

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
   250 F.3d 87 (2d Cir. 2001) ....................................................... 8, 9, 13

*Szulik v. Tagliaferri,*
   966 F. Supp. 2d 339 (S.D.N.Y. 2013) ................................................. 6

*Telesaurus VPC, LLC v. Power,*
   623 F.3d 998 (9th Cir. 2010) ............................................................ 22

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.,*
   158 F. Supp. 2d 335 (S.D.N.Y. 2001) ................................................. 9

*Tolin v. AMBAC Fin. Grp., Inc.,*
   No. 08 Civ. 11241, 2010 WL 431971 (S.D.N.Y. Feb. 5, 2010) ........... 13

*Union Carbide Corp. v. Montell N.V.*,
    944 F. Supp. 1119 (S.D.N.Y. 1996) .................................................... 17

*United States v. Chestman*,
    947 F.2d 551 (2d Cir. 1991) ............................................................ 7

*Von Hoffmann v. Prudential Ins. Co. of Am.*,
    202 F. Supp. 2d 252 (S.D.N.Y. 2002) ................................................ 24

*Ward v. Ernst & Young*,
    435 S.E.2d 628 (Va. 1993) ............................................................. 24

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
    579 F. Supp. 2d 334 (S.D.N.Y. 2008) ................................................ 14

*Wechsler v. Hoffman-La Roche, Inc.*,
    99 N.Y.S.2d 588 (N.Y. Sup. Ct. 1950) ............................................... 11

*Whelan v. Abell*,
    48 F.3d 1247 (D.C. Cir. 1995) ........................................................ 21

*White Plains Coat & Apron Co. v. Cintas Corp.*,
    460 F.3d 281 (2d Cir. 2006) ............................................................ 7

*Wright v. DeArmond*,
    977 F.2d 339 (7th Cir. 1992) ......................................................... 20

*Wyeth v. Levine*,
    555 U.S. 555 (2009) .................................................................... 22

**Other Authorities**

*In re Wireless Consumers Alliance, Inc.*,
    15 F.C.C.R. 17021 (2000) ............................................................. 22

**Statutes and Rules**

15 U.S.C. § 78u–4(b)(3)(B) ................................................................ 5, 14

5 U.S.C. § 551(6)–(9) ...................................................................... 21

Fed. R. Civ. P. 56(d) ....................................................................... 5

Fed. R. Civ. P. 8 ........................................................................... 5

Fed. R. Civ. P. 9 ...................................................................... 5, 13, 14

N.Y. C.P.L.R. § 213(8) ...................................................................... 24

x

N.Y. C.P.L.R. § 3211 ................................................................................................................. 5

N.Y. Gen. Bus. Law § 349 ...................................................................................................... 18

U.S.C. § 332(c)(3)(A) ............................................................................................................. 22

## INTRODUCTION:  FUNDAMENTAL REASONS
## TO DENY MOTION AS TO HARBINGER[1]

Defendants' Brief ("Br.") (1) ignores most of Harbinger's allegations, and (2) is premised on assertions that contradict the allegations.[2]

(1) Harbinger's complaint alleges in 80 detailed pages:  Defendants have private proprietary information about how their products operate; for a decade Defendants worked with Plaintiffs to resolve interference issues related to those products; and Defendants deliberately misled Plaintiffs into thinking that all interference issues had been resolved, concealing knowledge that their products had been underlined deliberately designed in such a fashion that they could not function if Plaintiffs used their spectrum as authorized.  *See* Facts B–F, below.  On at least six specific occasions Defendants should have disclosed and failed to disclose the truth to the Plaintiffs.  HC ¶¶ 149, 184.  Defendants' concealment caused Harbinger to invest $1.9 billion in LightSquared securities.  Many allegations are corroborated by sworn testimony of FCC officials.  HC ¶¶ 3–4, 8, 48, 80–81, 93–95, 103, 122, 184, 212–14.

(2) On the "Handset Waiver," Harbinger alleges that in 2010 Defendants used a fraudulent pretext to block the deployment of the LightSquared network in order to disguise a decade of fraudulent concealment.  *See* Facts A, below.  Defendants premise their brief on the contrary of these allegations.

---

[1]     Emphasis added throughout unless otherwise stated.  "Plaintiffs" herein means Harbinger, LightSquared and their predecessors.  Otherwise, terms defined in Harbinger's Third Amended Complaint ("HC") are used here with the same meanings.  *See* Appendix to HC.

[2]     Defendants also incorrectly assert that Harbinger has primarily a contract suit. Harbinger's complaint devotes only one page (HC 78) to breach of contract, one count of eight. In this brief, only the last footnote discusses contract claims.

## STATEMENT OF FACTS

### A.    Handset Waiver:  Defendants' Brief v. Allegations.

Defendants claim that in 2011 the FCC "<u>changed</u>" Harbinger's license to "<u>permit</u> ubiquitous broadband service using terrestrial transmitters."  Br. 3–4.  Harbinger alleged the opposite, that (a) ubiquitous terrestrial service had been authorized in 2003, 2004, 2005, 2009, and 2010; (b) the 2011 Handset Waiver was of "<u>minor</u> importance"; (c) "Defendants seized on the Handset Waiver as a [pretextual] reason to begin to disclose concerns (long known internally, though not disclosed externally)" related to OOBR interference; (d) such assertions were "<u>knowingly false</u>"; and (e) the Handset Waiver had "nothing to do with" OOBR interference and "<u>allowed no relevant change</u> . . . that could create OOBR interference."  HC ¶¶ 175–83. Defendants' own exhibits, if admissible at all, support these allegations.  Def. Ex. 2, p. 3 (Plaintiffs' "planned terrestrial base operations rather than the mobile handsets," caused the government action in February 2012 that threw LightSquared into bankruptcy).

### B.    Defendants Knew Material Facts Prior To March 2010.

According to Defendants, Plaintiffs' authorized use of spectrum will cause plane crashes, failures of military equipment, and other calamities sufficiently severe to require the government to prevent such spectrum use.  HC ¶¶ 5, 46.  These calamities will result, per Defendants, because Defendants' GPS products would not work if Plaintiffs' spectrum was used as authorized.  *Id*.  If what Defendants now say is correct, they had to know before March 2010 that Plaintiffs' network could not be used as planned.  HC ¶¶ 3–4, 7, 76–97, 218.

### C.    Defendants Knew That Only They Had Access To The Material Facts.

Defendants' receivers were based on proprietary software that was confidential, technical, complex, and constantly changing.  HC ¶¶ 46–47, 76–83, 205–08.  These were incorporated into products that were costly (Deere harvesters), top-secret (tanks, drones, and

planes), or obsolete (so they could no longer be purchased). *Id.* It was therefore not feasible to "reverse engineer" these products to evaluate all potential interference issues. *Id.* Even government experts, as they later testified, could not know such facts without Defendants disclosing them. HC ¶¶ 81–82, 184–86.

> ### D. In March 2009–March 2010, Defendants Knew Plaintiffs Were About To Invest More Than A Billion Dollars And That No One With Knowledge Of The Concealed Material Facts Would Make That Investment.

Defendants knew: Harbinger began to invest in a terrestrial network in late 2005; in March–April 2009 Harbinger proposed to commit, and on March 26, 2010 irrevocably did commit, to invest more than a billion dollars to build out that network. HC ¶¶ 6–7, 68, 79–80, 131–40. Defendants then knew (if what they now say is true) that no such network could be used because Defendants had to be protected from OOBR interference. They therefore knew that no outside party with Defendants' information would make Harbinger's huge investment. HC ¶¶ 3–4, 7, 76–97, 184–87, 205, 218.

> ### E. Defendants Caused Plaintiffs To Misapprehend The Material Facts, Including By Misleading Half-Truths.

Physical laws necessarily create for adjacent (or nearby) spectra, such as those of Plaintiffs and Defendants, two types of "interference": OOBE interference and OOBR interference. HC ¶¶ 86–90. Prior to 2011, Defendants told Plaintiffs only about OOBE issues, never mentioning OOBR concerns. HC ¶¶ 91–93, 97–100, 103–26, 144–57. Plaintiffs spent large sums to resolve Defendants' disclosed issues, including pursuant to the 2002 and 2009 Agreements. *Id.*; HC ¶¶ 2, 110. Incurring those remediation costs only made sense if doing so removed all obstacles to the operation of Plaintiffs' network. HC ¶¶ 103–104, 154–58, 163–65.

Defendants led Plaintiffs to believe that Defendants had no further objections by repeatedly stating that "interference" problems had been solved, GPS receivers were "protected,"

and Plaintiffs and Defendants were "good spectrum neighbors," among other statements.  HC ¶¶ 2, 91, 111, 118, 125, 131, 145–46; *see also* Def. Exs. A, 2002 Agreement ("<u>This increase in protection is to account for . . . the need to protect GPS receivers from the aggregation of interference</u> from multiple sources.") and B, 2009 Agreement ("<u>These limits are intended to reduce the potential for harmful interference to GPS receivers</u> operating indoors, thereby addressing the concerns expressed by" Defendants.)  During International Telecommunications Union (ITU) negotiations on July 15, 2009, Plaintiffs' joint ITU representative pointedly asked Defendants if they had any OOBR interference issues.  Defendants disclosed none.  HC ¶ 149.  On six occasions identified by the FCC, Defendants took actions implying to all in the industry, including Plaintiffs, that they did not plan to raise any such issues.  HC ¶ 184.

> **F.     Under Industry Practices And Standards, Defendants Knew Everyone Relied On Defendants To Disclose "Interference" Issues Known To Defendants.**

High-level FCC experts with decades of experience on relevant industry practices and standards uniformly testified that everyone in the industry expected prompt disclosure by Defendants of the material facts on OOBR interference.  HC ¶¶ 48, 80–82, 103, 184–86.  The FCC regulators had never heard of anyone acting as Defendants acted in this dispute.  Regulatory rules discouraged (or forbade) what Defendants did.  *Id.*; HC ¶¶ 212–14.

Three dozen sophisticated companies contracted or invested with Plaintiffs between October 2010 and January 2012, with Nokia committing to $8 billion, and Sprint entering a huge contract on July 28, 2011.  HC ¶¶ 199–200.  In so doing they showed that they shared the same understanding as Plaintiffs and the FCC regarding industry practice.  HC ¶¶ 167–69, 186–88.

> **G.     Other Decisive Allegations Defendants Ignored.**

Harbinger bought and sold LightSquared securities.  HC ¶¶ 229–31, 132–36.  Harbinger did not and could not have known facts needed to sue until 2012, HC ¶¶ 99–100, 170–75, 189–

204, 220; Br. 7, 21, within 18 months of filing this suit on August 9, 2013.  Defendants harmed

consumers and the public interest.  HC ¶¶ 1, 57–67, 221, 259.  Defendants acted knowingly,

intentionally, fraudulently, recklessly, and negligently.  HC ¶¶ 76–83, 97, 119, 140, 152, 155,

202, 215, 218.  Harbinger relied reasonably.  HC ¶¶ 46–48, 80–82, 103, 126, 184–86.

## ARGUMENT

### I.   DEFENDANTS VIOLATE CONTROLLING STANDARDS FOR MOTIONS TO DISMISS.

#### A.   Allegations Must Be Taken As True.

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and

draw "all reasonable inferences in the plaintiff's favor."  *ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Defendants violate those rules by ignoring almost all

complaint allegations and relying on "facts" that contradict the allegations.

N.Y. C.P.L.R. § 3211 does not apply because it purports to control the same issue as Fed.

R. Civ. P. 8 and 9—whether claims are sufficiently pled.  *Burlington N. R.R. Co. v. Woods*, 480

U.S. 1, 5 (1987).  (Defendants' case, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 155

(2d Cir. 2013), declined to address whether state law was displaced.)

#### B.   Extrinsic Evidence Cannot Be Considered In This PSLRA Case.

Documents outside the pleadings can be considered only if the Court can convert the

motion to one for summary judgment, *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213

(2d Cir. 2003), which then gives Harbinger the right to take discovery and supplement the

record.  Fed. R. Civ. P. 56(d).  But here Defendants invoked the Private Securities Litigation

Reform Act, 15 U.S.C. § 78u–4(b)(3)(B) (the "PSLRA"), to stay any discovery until this motion

is decided, precluding any resort to extrinsic documents.

## II.     HARBINGER PROPERLY PLED DUTY TO DISCLOSE.

### A.     Under Rule 10b-5, Defendants Had A Duty To Disclose Though Not In Privity With Plaintiffs.

For federal securities claims, notably Rule 10b-5, *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), established the rules for non-privity nondisclosure cases. There defendants prevailed in lower courts for transactions not involving (i) privity and (ii) affirmative misrepresentation.  The Supreme Court reversed because it did "not read Rule 10b-5 so restrictively."  *Id*. at 152.  Circumstances there created an "affirmative duty under the Rule to disclose" so that "defendants may not stand mute while they facilitate" securities transactions with third parties.  "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material . . . . This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact."  *Id*. at 153–54 (adopting Second Circuit case).

*Affiliated Ute* has been followed most recently in this District by *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 368 (S.D.N.Y. 2013) (since "[c]onduct by itself can be deceptive," motion to dismiss denied though it involved "pure omission"), and *In re Facebook, Inc., IPO Secs. and Derivative Litig.*, ___ F. Supp. 2d ___, 2013 WL 6621024, at *47 (S.D.N.Y. 2013) (same).  *See also Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 479–80 (4th Cir. 2011) (Wynn, concurring) ("[H]alf-truths can serve as the basis for 10b-5 liability.  But so can omissions – that is, the failure to disclose material facts that the plaintiffs 'ha[ve] the right to know'"); *SEC v. Dorozhko*, 574 F.3d 42, 49–50 (2d Cir. 2009) (omissions by one not in privity can be the gist of a valid Rule 10b-5 claim); *cf. Halliburton v. Erica P. John Fund*, 134 S. Ct. 2398, 2408 (June 23, 2014) (allowed claims by those not in privity and who did not see alleged misrepresentations

6

because "the typical 'investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price'—the belief that it reflects all public, material information.")

As to the exact scope of the duty to disclose, the Second Circuit looks to state common law. *United States v. Chestman*, 947 F.2d 551, 561, 568 (2d Cir. 1991) ("We take our cues from . . . the common law") (collecting authorities); *see also Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.*, No. 06 Civ. 5383, 2007 WL 2077153, at *4–6 (S.D.N.Y. July 20, 2007) (common law used to determine duty to disclose).

### B.  New York Law Applies To Harbinger's State Law Non-Contractual Claims.

Because Defendants do not claim the law of another state differs from New York law and should be applied, New York law governs Harbinger's state law non-contractual claims. *Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012).  New York law would apply in all events to all non-contractual Harbinger claims since New York is where Harbinger's injury occurred, the test for such claims. *See id.* at 158, *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994); *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006); *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195 (1985).  HC ¶¶ 12–22 (New York is Harbinger's place of business).

Harbinger's complaint (the sole record for the present motion) never mentions Virginia. It alleges as to Defendants that they do substantial business in New York and are headquartered in Illinois, Kansas, and California.  HC ¶¶ 26–28.  Harbinger does not plead (because Harbinger does not know without discovery) where Defendants' internal wrongful decisions were made, but the most reasonable inference from Harbinger's allegations is that at least many relevant decisions and communications occurred in or between (*e.g.*, by email or phone) the alleged four

7

states.  As to D.C. law, Defendants concede it has little relevance, especially to non-contractual claims.  Br. 9.

In all events, Defendants do not show how D.C. law differs from New York law on duty to disclose, a showing prerequisite to requiring a choice-of-law analysis.  *Matter of Allstate Ins. Co. (Stolarz--N.J. Mfrs. Ins. Co.)*, 81 N.Y.2d 219, 223 (N.Y. 1993).  That is also largely true for Virginia law, which is anyway similar to New York law on actual and constructive fraud claims.  *Hirschberg v. G.W. Motors, Inc.*, 34 Va. Cir. 55, 57 (1994) (quoting and adopting black-letter rules); *Bank of Montreal v. Signet Bank*, 193 F. 3d 818, 829 (4th Cir. 1999).

### C.    Under New York Law, Defendants Had A Duty To Disclose Though Not In Privity With Plaintiffs.

New York law on duties of parties not in privity was authoritatively settled in *Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996), followed by the Second Circuit in, *e.g.*, *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001), both cases involving negligent misrepresentations.  Similar standards apply to cases of intentional deceit, *see, e.g., Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d. Cir. 2006), including cases of intentional concealment.  *See Golub v. Tanenbaum-Harber Co., Inc.*, 931 N.Y.S.2d 308, 309 (App. Div. 2011) (citing principle though ruling for defendants).  Pre-*Kimmel* cases were similar.  *See Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Stevenson Equip., Inc. v. Chemig Const. Corp.*, 170 A.D.2d 769, 771 (App. Div. 1991), *aff'd*, 594 N.E.2d 928 (N.Y. 1992).

*Kimmell* sets forth three black letter rules.  First, absent privity, those "who possess unique or specialized expertise or who are in a special position of confidence and trust with the injured party such that reliance . . . is justified" have a duty to disclose.  *Kimmell*, 675 N.E.2d at 454; *Suez,* 250 F.3d at 103 (citing *Kimmell*).  Second, whether such a duty exists "raises an issue

8

of fact" best left to a jury.  *Kimmell*, 675 N.E.2d at 454; *accord Suez*, 250 F.3d at 104 ("Given

that a determination of whether a special relationship exists is essentially a factual inquiry, these

allegations are sufficient to overcome a motion to dismiss.")

Third, in deciding whether there is a duty, the fact-finder should consider three factors:

"[a] whether the person making the representation held or appeared to hold unique or special

expertise; [b] whether a special relationship of trust or confidence existed between the parties;

and [c] whether the speaker was aware of the use to which the information would be put and

supplied it for that purpose."  *Kimmell*, 675 N.E.2d at 454 (bracketed letters added).  Not all

three factors need be pled or proven.  *Suez*, 250 F.3d at 103 (even if confidential relationship

"sparsely pled," if other two factors are pled that is sufficient to state a claim).[3]

---

[3]       Defendants' New York cases do not question these standards; the cases merely find failures to meet the standards.  Br. 30–33.  Necessary facts were held not proven in *Grand Union Mount Kisco Emps. Fed. Credit Union v. Kanaryk*, 848 F. Supp. 446, 456–57 (S.D.N.Y. 1994) (finding after trial that defendant did not have superior knowledge); *Newbro v. Freed*, 409 F. Supp. 2d 386, 401 (S.D.N.Y. 2006) (evidence established parties did not know of each other when wrongful act occurred); *Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335, 344 (S.D.N.Y. 2001) (evidence did not establish fiduciary duty where parties did no business with each other); *In re Vebeliunas*, 252 B.R. 878, 888 (Bankr. S.D.N.Y. 2000) (defendant established at trial no knowledge of facts); and *Cumisky v. James River Corp.*, No. 93 Civ. 1975, 1995 WL 520021, at *7–8 (E.D.N.Y. Aug. 17, 1995) (evidence established no fiduciary duty between manufacturer and salesman).

Necessary facts were held not alleged in *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011) ("There are no allegations suggesting a 'special relationship' . . . Nor is it alleged that the Defendants had special 'expertise' that they were holding forth to induce plaintiffs to trust them"); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 404 (S.D.N.Y. 2004) (alleged only "relationship . . . between a plain vanilla borrower and lender," and defendant's knowledge of only "particulars of the company's business"); *In re Lehman Bros. Secs. & Erisa Litig.*, No. 10 Civ. 6637, 2013 WL 3989066, at *6 (S.D.N.Y. July 31, 2013) ("fails to allege anything beyond an arm's length relationship"); *Sebastian Holdings, Inc. v. Deutsche Bank AG*, 912 N.Y.S.2d 13, 14–15 (N.Y. App. 2010) ("conclusory allegations" of superior knowledge).

Defendants cite only one appellate case applying New York or federal law on the issue, *Sebastian Holdings*, and it is irrelevant, as described above.

Regarding [a], Harbinger alleges in detail Defendants' "unique" and "special" expertise. *See* Facts C. Proprietary technology is quintessential "special knowledge" giving rise to a duty to disclose. *See, e.g.*, *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 448 (S.D.N.Y. 2006).

Regarding [b], Harbinger alleges government and industry expectations that Defendants would fully disclose known OOBR interference issues, and that three dozen companies invested on such expectations. HC ¶¶ 48, 80–82, 103, 184, 199–200. For a decade, Plaintiffs and Defendants worked together and exchanged information, Plaintiffs solved Defendants' disclosed OOBE interference problems, and Defendants praised Plaintiffs for being "good spectrum neighbors." HC ¶¶ 2, 9, 103–25, 144–58.

In March and April 2009, Harbinger publicly announced that it was planning to invest more than a billion dollars to build out the LightSquared network. HC ¶¶ 142, 152, 158. Within the next twelve months, in two different forums, the parties had detailed face-to-face discussions over "interference" issues. HC ¶¶ 146–57. On July 15, 2009, Defendants were asked point-blank about OOBR interference and said nothing. HC ¶ 149. In August, the 2009 Agreement on interference was reached. HC ¶ 157. In all their dealings, Defendants led Plaintiffs to believe that the only "interference" issues concerned OOBE and had been resolved. HC ¶¶ 103, 126, 158, 163, 188.

Regarding [c], that Defendants were "aware of the use to which" their representations would be put, *Kimmell*, 675 N.E.2d at 454, Defendants knew Harbinger was irrevocably committing more than a billion dollars to investments that no sensible person would make knowing of the OOBR interference issues Defendants today claim exist. HC ¶¶ 68, 83, 142, 152, 158.

These facts alone create a triable issue on the duty to disclose, but there is more:

### D.     Half-Truths And Misleading Statements Reinforced The Duty To Disclose The Whole Truth.

Defendants misled Plaintiffs not just by concealing critical facts, but by misleading statements and half-truths, HC ¶¶ 7, 76, 109, 111, 116–18, 121, 125, 132, 146–52, 163, 188; Def. Exs. A–B, which further support a duty to disclose.  *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 331 (2d Cir. 2002) ("the lack of an independent duty is not, under such circumstances, a defense to Rule 10b-5 liability because upon choosing to speak, one must speak truthfully about material issues"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 637 (S.D.N.Y. 2012) ("[O]nce a party chooses to speak, it has a duty to be both accurate and complete."); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 410 (S.D.N.Y. 2010) (collecting cases holding a "continuing duty to update or correct past statements when they became known to be misleading").

The duty requires disclosure of any material change of Defendants' intentions.  *Brascan Ltd. v. Edper Equities Ltd.*, 477 F. Supp. 773, 787 (S.D.N.Y. 1979) (duty to correct previously announced intentions upon changing of those intentions); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407 (1958) ("a statement of present intention is . . . a statement of a material existing fact, sufficient to support a fraud action"); *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 354 (S.D.N.Y. 1996) (same).

The duty extends to statements that, though not directed to Plaintiffs, could predictably be learned by them.  *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998) (false advertisements in technical journal support 10b-5 claim because "technical information is of enormous importance to financial analysts"); *Wechsler v. Hoffman-La Roche, Inc.*, 99 N.Y.S.2d 588, 590 (N.Y. Sup. Ct. 1950) ("Reliance upon fraudulent representations by persons

who are not the direct addresses thereof, but who may be intended or expected to learn of and act upon such representations, will found an action in fraud and deceit.")

### E. Constructive Fraud Claims Were Properly Pled.

Constructive fraud allows a remedy where not all elements of a traditional deceit case can be proven, but the remedy should in justice be allowed.  *LBBW Luxemburg S.A. v. Wells Fargo Secs. LLC*, __ F. Supp. 2d __, 2014 WL 1303133, at *15 (S.D.N.Y. 2014) (sophisticated plaintiff plausibly alleged that defendant had "superior knowledge and experience as well as special access to relevant data and models," therefore stating claims for fraud and constructive fraud), *citing Brown v. Lockwood*, 432 N.Y.S.2d 186, 193–94 (N.Y.App. 1980).  Even where "all parties are sophisticated entities engaging in an arms-length transaction," whether their relationship warrants a constructive fraud remedy is "ultimately a 'question of fact, dependent upon the circumstances in each case.'"  *Id*. (*quoting In re Brand*, 173 N.Y.S. 169, 172–73 (App. Div. 1918), *aff'd*, 125 N.E. 913 (N.Y. 1919)).  For similar Virginia cases, see end of II.B., above.

### III. OTHER DEFENSES EVAPORATE ONCE THE DUTY TO DISCLOSE IS RECOGNIZED AND THE ALLEGATIONS OF THE COMPLAINT ARE TAKEN AS TRUE.

#### A. Harbinger Bought And Sold Securities Of The Exact Company Concerning Which The Deceit Occurred.  That "Connection" Is All That Is Required By The Securities Laws.

To state a 10b-5 claim, a "plaintiff must establish that 'the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff.'"  *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003).  The required "connection" is thus the one "between the misrepresentation or omission and the purchase or sale of a security."  *Halliburton*, 134 S. Ct. at 2407.

12

No case requires the security to be issued by defendants.  Such a ruling would conflict with the non-privity rule discussed above.  *See, e.g.*, *Affiliated Ute*, 406 U.S. at 152–53 (defendants not issuers); *Suez*, 250 F.3d at 96 (defendant issued misleading report about other company); *Lerner*, 459 F.3d at 291 (misrepresentations concerned investment in other entity).

For their argument to the contrary, Defendants rely on quotations of two sentences in *Ontario Public Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004) ("*Nortel*").  But *Nortel* merely held that the deceit had to involve the securities plaintiff bought.  *Id.* at 32.  Two attempts to read *Nortel* to require that defendant be the issuer (each time by quoting out of context the language Defendants quote) have been rejected.  *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007) (reversing district court), followed by *Tolin v. AMBAC Fin. Grp., Inc.*, No. 08 Civ. 11241, 2010 WL 431971, at *2 (S.D.N.Y. Feb. 5, 2010) (*NYSE Specialists* prevents reading *Nortel* to bar claims against non-issuers); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 176 (3d Cir. 2000) (adopting Second Circuit rule, collecting cases) ("[I]t is irrelevant that the misrepresentations were not made for the purpose of influencing the investment decisions of market participants.")

Ultimately, "in connection with" requires only that the fraud and the securities trade are not "independent events," *SEC v. Zandford*, 535 U.S. 813, 819-20, 825 (2002); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006); *Romano v. Kazacos*, 609 F.3d 512, 524 (2d Cir. 2010); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 361–63 (S.D.N.Y. 2011) (collecting cases).

     **B.**    **That Defendants Acted Jointly Is Pled With Enough Specificity To Satisfy Rule 9(b), The PSLRA, The *Janus* Case, And Section 20(a).**

Deere, Garmin, and Trimble acted jointly through, and by controlling, USGPSIC, HC ¶¶ 30–32, 76, 108–19, 121–25, 144–49, 237, and <u>had to work together</u> because <u>all of them knew</u>

(and only they knew) the facts they concealed.  HC ¶ 119.  Such pleadings suffice under Rule 9(b) and the PSLRA.  *Watts v. Jackson Hewitt Tax Serv. Inc*., 579 F. Supp. 2d 334, 353 (S.D.N.Y. 2008) (denying motion to dismiss because of allegation that "defendants acted jointly to perpetrate the alleged fraud"); *Krys v. Aaron*, 826 F. Supp. 2d 478, 529–30 (S.D.N.Y. 2011) ("nonsensical and impossible" to require attribution of statements to particular participants in alleged joint fraud).

In addition, courts do not require pleading of details "peculiarly within" Defendants' knowledge.  *Simington v. Lease Fin. Group, LLC*, No. 10 Civ. 6052, 2012 WL 651130, at *10 (S.D.N.Y. Feb. 28, 2012) ("To strictly construe Rule 9(b)'s pleading requirements especially where, as here, concrete facts are peculiarly within the knowledge of the party charged with the fraud, would work a potentially unnecessary injustice"); *In re Adelphia Commc'ns Corp. Secs. & Derivative Litig.*, No. 03 MD 1529, 2007 WL 2615928, at *2 (S.D.N.Y. Sept. 10, 2007) ("The Plaintiffs cannot be expected, prior to discovery, to allege the specific decisions, or interactions within groups, that led to the misstatements.").  Therefore, allegations that "defendants assisted in the preparation of a collective statement are sufficient to satisfy the attribution requirement of Rule 9(b) without the need to indicate which particular statements are attributable to which particular defendant."  *Krys*, 826 F. Supp. at 529–30 (emphasis in original).  Similarly, where Defendants conceal the truth, as here, Plaintiffs need not plead specific dates Defendants should have revealed the truth since Defendants should have done so each and every day over a decade.

*Janus Capital, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), did not hold that only one party can be the "maker" of a fraudulent statement.  *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012) (under *Janus*, a misstatement may have more than one maker); *City of Roseville Emps.' Ret. Sys. v. Energy*

*Solutions, Inc*., 814 F. Supp. 2d 395, 417, n.9 (S.D.N.Y. 2011).  The identity of "makers" is normally for the jury.  *See, e.g.*, *In re Pfizer Inc. Secs. Litig*., No. 04 Civ. 9866, 2013 WL 1285173, at *11–12 (S.D.N.Y. Mar. 28, 2013).

*City of Roseville*, 814 F. Supp. 2d at 418, refused to dismiss a Rule 10b-5(b) claim because the shareholder (ENV) could be found the maker of a statement in a filing by the issuer (ES):

> Although the Registration Statements did speak in the voice of ES
> . . . these explicit attributions do not preclude attribution to ENV as
> well.  Indeed, *Janus* recognized that attribution could be "implicit
> from surrounding circumstances." *Janus*, 131 S.Ct. at 2302.  Here,
> where the Registration Statements contain so many indicia of
> control, the lack of an explicit statement that ENV was speaking
> through the Registration Statements does not control the answer to
> the question of whether it made those statements. A reasonable
> jury could find that, on the facts alleged here, ENV's role went
> well beyond that of "a speechwriter draft[ing] a speech," *id*.,
> because, with regard to ES's sales of shares owned by ENV, ENV
> had control over the content of the message, the underlying subject
> matter of the message, and the ultimate decision of whether to
> communicate the message.

Likewise, Deere, Garmin, and Trimble "exercised complete control" over USGPSIC, HC ¶¶ 30–32, and controlled the information it disclosed or concealed, which had to come from Defendants because only they had the information.  HC ¶ 119.

Moreover, allegations showing USGPSIC acted on behalf of Defendants, HC ¶¶ 31, 109, 119, 121, 125, 145, 148, defeat a motion to dismiss.  *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 227–28 (S.D.N.Y. 2013) ("If [an entity] made the misleading statements through its agent . . . *Janus* does not absolve [the entity] of liability"); *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 286 (2d Cir. 2013) (*Janus* does not require defendants to have directly communicated fraudulent statements).

The same allegations and reasoning establish "control person" liability.  *Elbit Sys.*, 917 F. Supp. 2d at 229 (culpable participation of control persons sufficiently pled by pleading control over culpable agents); *In re Citigroup Inc. Sec. Litig*., 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010) (collecting cases:  "Allegations sufficient to plead scienter for the purposes of primary liability pursuant to Section 10b necessarily satisfy the culpable participation pleading requirement for Section 20(a) claims.")

   **C.**  **Harbinger Adequately Pleads (1) Causation, (2) Reliance, (3) Equitable Estoppel, (4) Scienter, (5) Punitive Damages, And (6) A Violation Of Section 349.**

(1) <u>Causation</u>, a "fact-based inquiry," normally "is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005).  Harbinger alleges that its investment failed because of the risks that Defendants concealed, HC ¶¶ 8, 94–97, the precise allegations required by *Lentell*.  *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003); *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157 (2d Cir. 2012); and cases cited in the next paragraph.  Plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

(2) <u>Reasonable reliance</u> is a "fact-intensive" type of causation rarely susceptible to resolution by motion to dismiss.  *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297, 304–05 (S.D.N.Y. 2011) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).  *Compare Dodona I*, 847 F. Supp. 2d at 649 (plaintiff's sophistication <u>and access to information</u> present questions of fact incapable of resolution on motion to dismiss) and *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 372 (S.D.N.Y. 1999) (same), *with* HC ¶¶ 46–48, 76–77, 80–82, 103, 126, 131–33, 184–86, 205, 230 (Harbinger <u>lacked access to information</u>).

In a case "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute*, 406 U.S. at 153–54. "All that is necessary is that the facts withheld be material," *id.*, an issue not in dispute. *In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d at 358 ("Reliance can be presumed from the materiality of the omission under *Affiliated Ute* . . ."); *see id*. at 364 (same rule for causation).

(3) <u>Equitable estoppel</u> "can form the basis of a claim, <u>or</u> it can serve as a defense." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 163 (S.D.N.Y. 2012); *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1146 (S.D.N.Y. 1996) (equitable estoppel "may be pled as an affirmative cause of action," collecting cases). Defendants cite only *Peterson v. City of New York*, No. 97 Civ. 4505, 1998 WL 247530, at *7 (S.D.N.Y. 1998), which involved Section 1983 claims, <u>not</u> a claim for equitable estoppel.

(4) <u>Scienter, knowing misconduct, and recklessness</u> are sufficiently pled by allegations that Defendants knowingly:  (a) benefitted in a concrete and personal way from the purported fraud; <u>or</u> (b) engaged in illegal behavior; <u>or</u> (c) had access to information suggesting that their public statements were not accurate; <u>or</u> (d) failed to check information defendants had a duty to monitor.  *Novak v. Kasaks*, 216 F.3d 300, 307–11 (2d Cir. 2000) (after extensive analysis, conclusions summarized at p. 311).  Harbinger alleges at HC ¶¶ 76–83, 97, 103, 119, 126, 140, 152, 155, 158, 163, 188, 202, and 212–18 that:  Defendants knew that they were benefitting by secretly using Plaintiffs' spectrum in contravention of FCC and DOD rules; knew that revealing the truth could jeopardize continuation of those benefits; and knew that telling the truth would expose Defendants to claims for tortious sale of hundreds of millions of defective products. Knowing this, Defendants intentionally decided, on many occasions over many years, to conceal the truth.  They did so in part by making misleading assurances to Plaintiffs, the FCC, and the

public, with Harbinger primary among those from whom Defendants needed to, wanted to, and did conceal the truth.

Defendants claim that if they defrauded anyone it was Defendants' customers and the FCC. They are factually correct. As is often the case, to conceal the truth from anyone they had to conceal it from everyone. But intent to deceive A and B does not negate intent to deceive C. *Semerenko*, 223 F.3d at 176 (*supra* p. 13); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 557–58 (S.D.N.Y. 2010) (defendant liable where motive was to mislead everyone to maintain share price). Defendants' cases, *ECA, Local 134 v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) and *Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001), merely hold that a motive to deceive a third party does not by itself prove a motive to deceive one's <u>own shareholders</u> where the deception was intended to work <u>in the shareholders' favor</u>. 553 F.3d at 200, 203; 264 F.3d at 141. Here Defendants' deception could not favor Plaintiffs; it necessarily and obviously would harm them greatly, as it did.

(5) <u>Punitive damages</u>. "[T]he imposition of punitive damages is left to the sound discretion of the finder of fact." *Mar Oil, S.A. v. Morissey*, 982 F.2d 830, 844 (2d Cir. 1993); *Michelle Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc.*, No. 97 Civ. 6837, 1997 WL 724575, at *5 (S.D.N.Y. Nov. 18, 1997) ("Whether [Plaintiff] is entitled to punitive damages under these circumstances is a fact issue that cannot be determined on a motion to dismiss."); *China Trust Bank of N.Y. v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 290 (S.D.N.Y. 1997) (punitive damages "a matter to be decided after all evidence has been admitted at trial.")

(6) <u>Section 349</u>, N.Y. Gen. Bus. Law, provides (bracketed letters added): "[a] Deceptive acts or practices in the conduct of any business . . . [b] in this state are hereby declared

unlawful."  Provision [a], "deceptive acts or practices," including more than misrepresentations and omissions, literally covers the conduct alleged here.  A judicial gloss limits its scope to deceptive acts and practices that affect "the public interest" or which damage consumers "broadly," but the party deceived (plaintiff) need not itself be a consumer.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003). Here, as the FCC found, there was great damage to the public interest and consumers through Defendants' deceptive acts.  HC ¶¶ 1, 57–67, 221, 259.  *See Securiton Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264–65 (2d Cir. 1995) (Section 349 claim exists where part of deceit is to provide false information to a regulatory agency, "surely . . . contrary to the public interest").

As to provision [b], "in this state" is satisfied by Harbinger actually being deceived in New York.  *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002) (location of victim in New York sufficient nexus regardless of location of wrongdoer); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013) (even absent in-state victim, sufficient nexus when "some part of the underlying transaction . . . occurred in New York State"; website deceptions by New York resident held sufficient).  FCC filings are available online, including, *e.g.*, Def. Exs. A–B.

There is a split in authority over whether Section 349 covers securities transactions.  Two state appellate departments hold yes.  *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639, 640–41 (App. Div. 2001) (Section 349 applies to "virtually all economic activity," including securities transactions); *B.S.L. One Owners Corp. v. Key Int'l Mfg., Inc.*, 640 N.Y.S.2d 135, 137 (App. Div. 1996) (similar).  A similar split of authorities was recently resolved in *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 939 N.Y.S.2d 274, 276 (N.Y. 2011), by permitting

19

common-law claims involving securities, holding them not preempted by another statute.  Before

final judgment in this case, the current split could be similarly resolved in favor of allowing

claims.  For now, the prudent course on this issue is to deny the motion to dismiss subject to

reconsideration at the time of trial.

IV.     ***NOERR-PENNINGTON* AND FEDERAL PREEMPTION HAVE
        NOTHING TO DO WITH THIS CASE.**

A.      **The Doctrines Do Not Provide Immunity For Fraud On Private
        Parties.**

Harbinger is not trying here to appeal an FCC decision or to penalize Defendants for

deceiving the FCC.  Harbinger is suing for damages because Defendants <u>deceived Harbinger</u>.

That Defendants <u>also deceived the FCC</u> does not immunize Defendants for their fraud on

Harbinger.  *In re Am. Cont'l Corp./Lincoln Sav. & Loan Secs. Litig.*, 794 F. Supp. 1424, 1448

(D. Ariz. 1992) (*Noerr*[4] did not bar securities fraud claims based on statements that defendant

"submitted to [federal] regulators"); *Clinton v. Brown & Williamson Holdings, Inc.*, No. 05 Civ.

9907, 2013 WL 3111122, at *10–11 (S.D.N.Y. June 20, 2013) (*Noerr* did not bar claims for

failure to disclose facts to plaintiffs even though defendants made similar misrepresentations to

Congress); *see also Wright v. DeArmond*, 977 F.2d 339, 347 (7th Cir. 1992) (*Noerr* did not bar

liability related to administrative proceedings "employed for a purpose . . . other than and in

addition to the goal sought openly in the proceeding itself").

B.      **In All Events, False Statements To Non-Political Government
        Officials, In Adjudicative Proceedings Or To Provide Information, Are
        Not Protected By *Noerr*.**

Statements to the government are not protected "petitioning" where they merely provide

information, which happened when the FCC was told by the parties about the 2002 and 2009

---

[4]      *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

agreements.  *Litton Sys., Inc. v. AT&T*, 700 F.2d 785, 807 (2d Cir. 1983) (tariff filed with FCC not petition); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 369, 371 (S.D.N.Y. 2002) (listing in FDA's "Orange Book" not petition).

In addition, no immunity exists for deceits in adjudicatory proceedings.  *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512–14 (1972) ("Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process."); *Whelan v. Abell*, 48 F.3d 1247, 1253–54 (D.C. Cir. 1995) (falsehoods to state securities officials unprotected by *Noerr*); *Litton*, 700 F.2d at 811 (*Noerr* gives no immunity to defendant that "affirmatively misled the FCC" and whose conduct "was not undertaken in the hope of influencing government action, but in the hope of delaying it").  Here Defendants misled the FCC in a licensing proceeding, HC ¶ 157, which is adjudicative.  *See* 5 U.S.C. § 551(6)–(9); *Trucking Unlimited*, 404 U.S. at 513.

Defendants contend their conduct was "political" because the complained-of injuries arose from the FCC's ultimate decision to ground LightSquared's network.  Br. 21.  But the case Defendants cite holds that Defendants cannot "reason backward from the legislative impact of [private conduct] to the conclusion that the conduct at issue . . . is 'political.'"  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 507 (1988).  Defendants must take as true allegations that injuries were caused by Defendants' concealment which caused Harbinger to invest in a doomed project.  That the fraud was inevitably revealed, albeit belatedly, to an agency which took administrative action does not immunize Defendants' prior decade of deception toward Harbinger.  That prior deception caused Harbinger to invest and to ultimately suffer damage.

### C.  The Federal Communications Act Does Not Preempt The Instant Damages Claims.

U.S.C. § 332(c)(3)(A) of the Federal Communications Act ("FCA") ("no State or local government shall . . . regulate the entry of . . . any private mobile service") does not relate to federal claims.  As to state claims, the FCC has concluded "that Section 332 <u>does not generally preempt the award of monetary damages by state courts based on state consumer protection, tort, or contract claims</u>."  *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17022 (2000). Enforcing those sorts of claims permits "providers . . . to conduct business in a competitive marketplace," a key goal of Section 332(c)(3)(A).  *Id.* at 17034.

Since courts defer to such agency views on preemption, *Wyeth v. Levine*, 555 U.S. 555, 577 (2009), federal cases have followed the FCC decision.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (fraud and unfair competition claims not preempted ); *Cooperative Commc'ns, Inc. v. AT&T Corp.*, 867 F. Supp. 1511, 1516 (D. Utah 1994) (non-statutory claims not preempted); *see generally Radio Station WOW v. Johnson*, 326 U.S. 120, 131–32 (1945) (grant of FCC authority "can hardly imply that the interest of States in enforcing their laws against fraud have been nullified").

Defendants' cases merely (a) disallowed a competitor's attempt to stop the use of frequencies the FCC had authorized, *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1010 (9th Cir. 2010); and (b) prevented a "direct attack . . . [on a] right to enter the Chicago market," *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 989 (7th Cir. 2000).

## V.  NO STATUTE OF LIMITATIONS HAS RUN.

### A.  Federal:  The Complaint Was Filed Before "2 Years After The Discovery Of The Facts Constituting The Violation."

Harbinger sued on August 9, 2013.  Harbinger alleges a loss that occurred no sooner than 2012, HC ¶¶ 99–100, 189–204, 220, Def. Exs. 2, 3, 7–9, as Defendants seem to agree in Br. 7,

last paragraph, and Br. 21, first paragraph.  Given these admitted facts, Harbinger could not have pled a cognizable loss in 2011.  *In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d 264, 275 (S.D.N.Y. 2010) ("Plaintiffs suffered <u>no economic loss</u> prior to . . . [date] according to the allegations . . . .  The Plaintiffs' securities fraud <u>claims therefore could not have accrued</u> before that time . . . it would be fundamentally unfair to run the statute of limitations from a time prior to when a complete and present cause of action can accrue"); *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir. 1977) (same).

Defendants reference a September 15, 2010 FCC filing, unrelated to Harbinger. Harbinger nowhere alleges that it knew of this filing in 2011.  All Harbinger alleges on this filing is that its obscurity and opaqueness would have provided no notice even to someone who had known of it.  HC ¶¶ 170–74.

Finally, running of limitations periods is tolled when Defendants' misstatements, omissions, and failures to correct are, as here, (1) continuous over a period of time (*see* HC ¶¶ 84, 103, 109, 111, 116–17, 121, 125, 149–57, 170, 184) and (2) covert (*see* HC ¶¶ 46–47, 76, 80, 205, 207).  *In Re Beacon Assocs. Litig.*, 282 F.R.D. 315, 324–25 & n.4 (S.D.N.Y. 2012).

### B.     Federal:  The Complaint Was Filed Before "5 Years After Such Violation."

The continuing violations doctrine (just discussed) applies also to the five-year period. *Id*.  Also, for a series of related deceits, the five years begins to run with the "last" deceit.  *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*, 924 F. Supp. 2d 528, 536 (S.D.N.Y. 2013); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2006 WL 314524, at *1, 5 (S.D.N.Y. Feb. 10, 2006), *vacated in part on other grounds*, 531 F.3d 190 (2d Cir. 2008). Defendants cite only one case on this issue and it involves only representations more than five

years prior to suit.  Br. at 46–47, citing *Boudinot v. Shrader*, No. 09 Civ. 10163, 2012 WL

489215, at *4 (S.D.N.Y. Feb. 15, 2012).

### C.      New York:  Harbinger's State Law Claims Were Timely Filed.

N.Y. C.P.L.R. § 213(8) allows filing within either two years after discovery or six years

after accrual.  Here:  (1) Defendants continued actionable conduct after August 9, 2007; and,

(2) before August 9, 2011, no loss was known; and Defendants' concealment prevented

discovery.[5]  *See* HC citations in V.A. and V.B., above.

### CONCLUSION[6]

For these reasons, Defendants' motion to dismiss Harbinger's complaint should be

denied.

---

[5]      Only one of the three common law cases that Defendants cite addresses losses first
revealed after a series of misrepresentations continuing through less than two years before the
complaint was filed.  *See* Br. at 47 n. 29.  That case, *Von Hoffmann v. Prudential Ins. Co. of Am.*,
202 F. Supp. 2d 252, 262–64 (S.D.N.Y. 2002), held fraud and negligent misrepresentation claims
not time-barred because defendant's concealment prevented discovery.  Defendants' other two
cases involve known injury more than six years before suit.  *Long Island Lighting Co. v. Imo
Indus. Inc.*, 6 F.3d 876, 887 (2d Cir. 1993) (losses "apparent" more than 6 years before
complaint); *Kwan v. Schlein*, 441 F. Supp. 2d 491, 504 (S.D.N.Y. 2006) (all misstatements and
knowledge of injury occurred more than 6 years before complaint; though statute of limitations is
tolled for continuing "fraud, concealment, or deception," on facts rule did not apply).

[6]      LightSquared's brief covers all contract issues other than third-party beneficiary status, as
to which see *Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 528 (2d Cir. 2005); *Anwar v.
Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 418 (S.D.N.Y. 2010); and *Ward v. Ernst &
Young*, 435 S.E.2d 628, 635 (Va. 1993).

Dated:  July 29, 2014                    Respectfully submitted,

                                         GRIPPO & ELDEN LLC

                                         /s/  Gary M. Elden
                                         Gary M. Elden (admitted *pro hac vice*)
                                         Todd C. Jacobs (admitted *pro hac vice*)
                                         Daniel M. Hinkle (admitted *pro hac vice*)
                                         111 S. Wacker Drive
                                         Chicago, IL  60606
                                         T:  (312) 704-7700
                                         F:  (312) 558-1195

                                         DONTZIN NAGY & FLEISSIG LLP
                                         Matthew S. Dontzin
                                         Tibor L. Nagy
                                         David A. Fleissig
                                         980 Madison Avenue
                                         New York, NY  10075
                                         T:  (212) 717-2900
                                         F:  (212) 717-8088

                                         *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a copy of the foregoing

**HARBINGER'S RESPONSE TO MOTION TO DISMISS** was served upon all counsel of

record in this action via the U.S. District Court CM/ECF e-filing system on July 29, 2014.


/s/   Gary M. Elden
_____