# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
| | |
|---|---|
| In re: ) | Chapter 11 |
| LightSquared Inc., *et al.*, ) | Case No. 12-12080 (SCC) |
| Debtors. ) | Jointly Administered |

------------------------------------------------------------------x

| | |
|---|---|
| LightSquared Inc.; ) | No. 13-CV-8157 (RMB) |
| LightSquared LP; and ) | |
| LightSquared Subsidiary LLC, ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| Deere & Company; Garmin International, Inc.; ) | |
| Trimble Navigation Limited; The U.S. GPS Industry ) | |
| Council; The Coalition to Save Our GPS; John Doe No. ) | |
| 1, as a representative of The Coalition to Save Our GPS; ) | |
| and John Doe No. 2, as a representative of The Coalition ) | |
| to Save Our GPS., ) | |
| ) | |
| Defendants. ) | |

------------------------------------------------------------------x

| | |
|---|---|
| Harbinger Capital Partners LLC; Harbinger Capital ) | No. 13-CV-5543 (RMB) |
| Partners II LP; Harbinger Capital Partners Master Fund I, ) | |
| LTD.; Harbinger Capital Partners Special Situations ) | |
| Fund, L.P.; Harbinger Capital Partners Special Situations ) | |
| GP, LLC; HGW GP, LTD; HGW Holding Company, ) | |
| L.P.; HGW US GP Corp.; HGW US Holding Company, ) | |
| L.P.; Credit Distressed Blue Line Master Fund, LTD.; ) | |
| and Global Opportunities Breakaway Ltd., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Deere & Company; Garmin International, Inc.; Trimble ) | |
| Navigation Limited; and The U.S. GPS Industry Council, ) | |
| ) | |
| Defendants. ) | |

------------------------------------------------------------------x

# REPLY MEMORANDUM IN
# <u>SUPPORT OF MOTIONS TO DISMISS</u>

## TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     LIGHTSQUARED'S CONTRACT CLAIMS SHOULD BE DISMISSED ........ 3

     A.     No Promises Are Identified ................................................................. 4

     B.     The Promissory Estoppel and Implied Covenant Claims Are Meritless ............................................................................................ 4

     C.     The *Quantum Meruit* and Unjust Enrichment Claims Fail ................ 5

     D.     The Statute of Frauds Applies ............................................................ 5

II.     *NOERR-PENNINGTON* BARS PLAINTIFFS' NON-CONTRACT CLAIMS ...................................................................................................... 6

III.     ALL STATE-LAW CLAIMS ARE PREEMPTED BY THE FCA .................... 7

IV.     ALL MISREPRESENTATION CLAIMS MUST BE DISMISSED ................. 8

     A.     Rule 9(b) Requires Dismissal ............................................................ 8

     B.     The Economic Loss Doctrine Bars All Misrepresentation Claims ........... 9

     C.     No Actionable Misrepresentation Is Pleaded ................................... 10

     D.     There Was No Duty to Disclose ...................................................... 11

     E.     Plaintiffs Have Not Pled Reliance or Loss Causation ..................... 13

     F.     Harbinger's Equitable Estoppel and  Consumer Protection Claims Must Be Dismissed ....................................................................... 14

V.     HARBINGER'S SECURITIES CLAIMS MUST BE DISMISSED ................ 14

     A.     Harbinger's Rule 10b-5 Claim Fails ............................................... 14

         1.     *Nortel* Forecloses Harbinger's Standing ..................................... 14

         2.     Harbinger's Stated "In Connection With" Rule Is Untenable ........................................................................... 15

         3.     *Janus* Also Forecloses Harbinger's Section 10(b) Claim ........... 16

         4.     Defendants Owed No Disclosure Duties to Harbinger Under Federal Law ...................................................... 16

     B.     Harbinger's Control Person Claim Should Be Dismissed ...................... 18

VI.     LIGHTSQUARED'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED ................................................................... 18

VII.     HARBINGER'S COUNTS I-VI AND LIGHTSQUARED'S COUNTS II, III, V AND VI ARE TIME-BARRED ................................................ 19

CONCLUSION ................................................................................................... 20

**TABLE OF AUTHORITIES**

Page

CASES

*17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*,
  373 F. Supp. 2d 584 (E.D. Va. 2005) ...................................................................19

*Abercrombie v. Andrew Coll.*,
  438 F. Supp. 2d 243 (S.D.N.Y. 2006)...................................................................9

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
  2013 WL 837536 (S.D.N.Y. Mar. 6, 2013) .........................................................12

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)...................................................................................9

*Affiliated Ute Citizens of Utah v. U. S.*,
  406 U.S. 128 (1972).............................................................................................15

*Allen Realty Corp. v. Holbert*,
  318 S.E.2d 592 (Va. 1984)...................................................................................18

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)...............................................................................................6

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
  690 F.3d 98 (2d Cir. 2012)...................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................3

*Badgett v. N.Y.C. Health & Hosps. Corp.*,
  227 A.D.2d 127 (1st Dep't 1996) .........................................................................14

*Bank of Montreal v. Signet Bank*,
  193 F.3d 818 (4th Cir. 1999) ...............................................................11, 12, 13

*Bastien v. AT&T Wireless Servs., Inc.*,
  205 F.3d 983 (7th Cir. 2000) ..............................................................................7, 8

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*,
  129 F. Supp. 2d 578 (W.D.N.Y. 2000) ..................................................................6

*Beitzell & Co., Inc. v. Brown-Forman Corp.*,
  1988 WL 66194 (D.D.C. June 17, 1988) ...............................................................5

## TABLE OF AUTHORITIES
### (continued)

Page

*Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp.*,
   305 F. Supp. 2d 85 (D.D.C. 2004) ........................................................................4

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. 1998).................................................................................18

*Camofi Master LDC v. Riptide Worldwide, Inc.*,
   2011 WL 1197659 (S.D.N.Y. Mar. 25, 2011) ........................................................9

*CBS Broad, Inc. v. Jones*,
   460 F. Supp.2d 500 (S.D.N.Y. 2006).....................................................................5

*Chandler v. AT&T Wireless Servs., Inc.*,
   2004 WL 6241877 (S.D. Ill. July 21, 2004) ..........................................................7

*Ciliv v. UXB Int'l, Inc.*,
   2012 U.S. Dist. LEXIS 151514 (W.D. Va. Oct. 22, 2012).....................................5

*Converse, Inc. v. Norwood Venture Corp.*,
   1997 WL 742534 (S.D.N.Y. Dec. 1, 1997) ..........................................................18

*DeAngelis v. Corzine*,
   2014 WL 1695186 (S.D.N.Y. Apr. 16, 2014)........................................................14

*Duane Reade, Inc. v. Clark*,
   784 N.Y.S.2d 920 (Sup. Ct. N.Y. Co. 2004) ..........................................................7

*Dunn Constr. Co. v. Cloney*,
   682 S.E. 2d 943 (Va. 2009)..................................................................................10

*East River Steamship Corp. v. TransAmerica Delaval, Inc.*,
   476 U.S. 858 (1986)..............................................................................................9

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961)...............................................................................................7

*Estate of Sabarese v. First Nat. Inv. Corp.*,
   1994 WL 573320 (S.D.N.Y. Oct. 18, 1994)..........................................................12

*Fezzani v. Bear, Stearns & Co.*,
   716 F.3d 18 (2d Cir. 2013)...................................................................................16

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Foley v. Transocean Ltd.*,
861 F. Supp. 2d 197 (S.D.N.Y. 2012) ........................................................................... 17

*Global Reinsurance Corp. of Am. v. Century Indem. Co.*,
2014 WL 4054260 (S.D.N.Y. Aug. 15, 2014) ................................................................ 4

*Grishman v. City of New York*,
183 A.D.2d 464 (1st Dep't 1992) ................................................................................. 14

*Ho v. Duoyuan Global Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012) ........................................................................... 16

*Horner v. Ahern*,
153 S.E.2d 216 (Va. 1967) ........................................................................................... 11

*Howard v. Galesi*,
1987 WL 18460 (S.D.N.Y. Oct. 6, 1987) ...................................................................... 9

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009) ............................................................... 7

*In re Harbinger Capital Partners Funds Investor Litig.*,
No. 12-CV-01244 (S.D.N.Y. Jan. 16, 2013) ................................................................ 13

*In re J.P. Jeanneret Assocs., Inc.*,
769 F. Supp. 2d 340 (S.D.N.Y. 2011) ........................................................................... 17

*In re Lululemon Sec. Litig.*,
2014 WL 1569500 (S.D.N.Y. Apr. 18, 2014) ............................................................... 16

*In re Marketxt Holdings Corp.*,
361 B.R. 369 (Bankr. S.D.N.Y. 2007) .......................................................................... 13

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ......................................................................................... 17

*In re MRU Holdings Sec. Litig.*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011) ....................................................................... 9, 17

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007) ........................................................................................... 15

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Optimal U.S. Litig.*,
  837 F. Supp. 2d 244 (S.D.N.Y. 2011).......................................................................16

*In re RSL COM PRIMECALL, Inc.*,
  2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003).................................................8

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
  915 F. Supp. 2d 450 (S.D.N.Y. 2013).......................................................................18

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012).......................................................................18

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................................................16

*In re Wireless Consumers Alliance, Inc.*,
  15 F.C.C.R. 17021 (2000)............................................................................................8

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011)...............................................................................................16

*Jones v. Fulton Bank, N.A.*,
  2013 WL 3788428 (E.D. Va. July 18, 2013)...............................................................5

*Kahn v. iBiquity Digital Corp.*,
  2006 WL 3592366 (S.D.N.Y. Dec. 7, 2006) ..............................................................2

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350 (1991)...................................................................................................19

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005).......................................................................................13

*Lewis-Gale Med. Ctr., LLC v. Alldredge*,
  710 S.E.2d 716 (Va. 2011).........................................................................................19

*M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*,
  852 F. Supp. 2d 324 (W.D.N.Y. 2012).......................................................................14

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011).................................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Marini v. Adamo*,
  995 F. Supp. 2d 155 (E.D.N.Y. 2014) ......................................................................19

*Matsumura v. Benihana Nat. Corp.*,
  542 F. Supp. 2d 245 (S.D.N.Y. 2008)........................................................................8

*MBIA Ins. Co. v. GMAC Mortgage LLC*,
  914 N.Y.S.2d 604 (N.Y. Sup. Ct. 2010) ..................................................................12

*Mid-Atl. Bus. Commc'ns, Inc. v. Va. DMV*,
  606 S.E.2d 835 (Va. 2005).........................................................................................20

*Mizell v. Sara Lee Corp.*,
  2005 WL 1668056 (E.D. Va. June 9, 2005) ..............................................................6

*Mongold v. Woods*,
  677 S.E.2d 288 (Va. 2009).........................................................................................4

*Mortarino v. Consultant Eng'g Servs., Inc.*,
  467 S.E.2d 778 (Va. 1996).......................................................................................10

*MP Leasing Corp. v. Colonna's Shipyard*,
  2009 WL 2581575 .....................................................................................................5

*Munno v. Town of Orangetown*,
  391 F. Supp. 2d 263 (S.D.N.Y. 2005).......................................................................2

*Naughright v. Weiss*,
  826 F. Supp. 2d 676 (S.D.N.Y. 2011).......................................................................9

*Neumann v. Nassau Cnty. Med. Ctr.*,
  619 N.Y.S.2d 721 (2d Dep't 1994)..........................................................................20

*Ontario Public Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*,
  369 F.3d 27 (2d Cir. 2004)...............................................................................14, 15

*Onyeoziri v. Spivok*,
  44 A.3d 279 (D.C. 2012) .........................................................................................18

*P. Stolz Family P'ship, L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004).......................................................................................19

**TABLE OF AUTHORITIES**
(continued)

Page

*Pair v. Rook*,
   195 77 S.E.2d 395 (Va. 1953) .................................................................5

*Pew v. Cardarelli*,
   2009 WL 3165759 (N.D.N.Y. Sept. 29, 2009) ........................................14

*Quintana v. Wiener*,
   717 F. Supp. 77 (S.D.N.Y. 1989) ............................................................20

*Rambus, Inc. v Infineon Techs. AG*,
   164 F. Supp. 2d 743 (E.D. Va. 2001) ......................................................12

*Remeikis v. Boss & Phelps, Inc.*,
   419 A.2d 986 (D.C. 1980) ................................................................. 12-13

*Rich v. Maidstone Fin., Inc.*,
   2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ......................................18

*Richmond v. McDevitt Street Bovis, Inc.*,
   507 S.E. 2d 344 (Va. 1988) ......................................................................9

*Riis v. Mfrs. Hanover Trust Co.*,
   632 F. Supp. 1098 (S.D.N.Y. 1986) .......................................................20

*Romano v. Kazacos*,
   609 F.3d 512 (2d Cir. 2010) ...................................................................15

*Scalp & Blade, Inc. v. Advest, Inc.*,
   722 N.Y.S.2d 639 (4th Dep't 2001) ........................................................14

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) ...................................................................16

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ..................................................................8

*Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*,
   44 Va. Cir. 54 (Va. Cir. Ct. 1997) ..........................................................18

*Spirit Partners, L.P. v. Audiohighway.com*,
   2000 WL 685022 (S.D.N.Y. May 25, 2000) ...........................................14

## TABLE OF AUTHORITIES
### (continued)

Page

*Steginsky v. Xcelera, Inc.*,
  741 F.3d 365 (2d Cir. 2014)........................................................................................17

*Stoll v. Ardizzone*,
  2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007) ............................................................19

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001)........................................................................................15

*Szulik v. Tagliaferri*,
  966 F. Supp. 2d 339 (S.D.N.Y. 2013)........................................................................17

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010) ..................................................................................7, 8

*Terra Sec. Asa Konkursbo v. Citigroup, Inc.*,
  740 F. Supp. 2d 441 (S.D.N.Y. 2010)......................................................................13

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
  2007 WL 4820968 (S.D.N.Y. Sept. 18, 2007)...........................................................4

*Wolf v. Fed. Nat'l Mortg. Ass'n*,
  512 F.App'x 336 (4th Cir. 2013) ...............................................................................4

**STATUTES**

28 U.S.C. § 1658(b) ...........................................................................................................19

Federal Rule of Civil Procedure 9(b)...............................................................................8, 9

N.Y. CPLR § 213(8) ...........................................................................................................20

S.E.C. Rule 10b-5 ...................................................................................................14, 15, 16

**OTHER AUTHORITIES**

2003 FCC Order.................................................................................................................2, 3

2010 FCC Order....................................................................................................................3

*In re Nortel Networks Corp., Sec. Litig.*,
  2002 WL 34429376, No. 01-CV-01855 (S.D.N.Y. Jan. 4, 2002) ...........................15

Defendants submit this Reply Memorandum and the September 15, 2014 Declaration of Philip Le B. Douglas ("Douglas Dec.") in further support of their Motions to Dismiss ("Motion" or Mot.").[1]

## Introduction

Plaintiffs attempt to avoid dismissal by conjuring up non-existent "factual" disputes. What *is* at issue on this Motion are Plaintiffs' pleading concessions and omissions, most importantly their failure to identify a single writing or oral statement even hinting at a waiver by Defendants of their right to petition the FCC ("FCC Waiver"), a promise to re-design GPS devices ("Design Change"), or a guarantee of "no interference" with GPS devices. LightSquared's principal "disputed fact"—"[t]he timing and extent to which LightSquared disclosed its plans to launch a broadband terrestrial network" (L. Br. 1)—is another case in point. As the FCC's public docket reflects, and Plaintiffs acknowledge, the allegedly critical elements of what ultimately became LightSquared's Terrestrial Plan were not disclosed until *after* the 2002 "promises, agreements and representations" (LAC ¶ 1) upon which their claims are based.  L. Br. 2-3 (Defendants did not know of Terrestrial Plan prior to 2003).  This is fatal because in 2002, the GPS Council is alleged to have represented only that "all *relevant* issues had been resolved" (L. Br. 3; *see* LAC ¶ 57) and "waived *only* those objections that could have been made at the time."  L. Br. 16.[2]

---

[1] In light of LightSquared's failure to defend its civil conspiracy claim (Count XI), the Court should dismiss the claim without further analysis.  *See* Mot. 44.  Capitalized terms have the definitions given them in Defendants' Motion.  LightSquared's and Harbinger's opposition to the Motion are denominated, respectively, "L. Br." And "H. Br."  Exhibits in support of the Motion are denominated "D. Ex." and those to LightSquared's Opposition will be cited as "L. Ex."  The docket number for matters filed in this Court's *Harbinger* and *LightSquared* cases will be cited respectively as "H. Dkt. ___" and "L. Dkt.___".  All emphasis herein is our own.

[2] Defendants' supposed 2009 promises are concededly irrelevant to LightSquared's new Terrestrial Plan.  L. Br. 17 (2009 Letter Agreement did not refer to any of the Alleged Promises

The LightSquared Complaint, moreover, specifically limits the GPS Council's FCC Waiver to operations authorized "in the *2003* ATC Order". LAC ¶¶ 57; Mot 12. But, according to LightSquared, the authorization upon which its claim is based did not occur until *2005*. L. Br. 2-3. As for Harbinger, its July 11, 2014 complaint against the FCC itself (the "FCC Complaint") admits that it was not *until 2010* that the FCC agreed to "permit Harbinger . . . to build, deploy and operate a nationwide mobile broadband network." Douglas Dec., D. Ex. D at 4.

Even if Plaintiffs had not made these admissions, the same point is firmly established by the FCC record, which speaks for itself and cannot give rise to a disputed fact issue any more than a court decision.[3] The Commission's public dockets confirm that: (i) prior to 2010, LightSquared's predecessors never proposed and were never authorized to operate a standalone terrestrial network, but only sought approval for a mere *supplement* to satellite service that "would be *ancillary in nature* with MSS [mobile satellite service] remaining their primary service offering" (2003 FCC Order ¶ 14); (ii) prior to 2010, the FCC's Integrated Service Rule[4] and other requirements ensured "that the added terrestrial component *remains ancillary* to the principal MSS offering" and "that *MSS remains first and foremost a satellite service*" (2003 FCC

---

because none were "relevant to the FCC at the time"). Indeed, the 2009 Alleged Promises were, in Harbinger's words, "quite limited" to "tiny indoor based stations that send *indoor signals to indoor users*." HAC ¶ 145. As the 2009 Letter Agreement states, "[t]hese limits are intended to reduce the potential for harmful interference to GPS receivers *operating indoors*." D. Ex. 1.

[3] *Kahn v. iBiquity Digital Corp.*, 2006 WL 3592366, at *1 n.1, (S.D.N.Y. Dec. 7, 2006) *aff'd*, 309 F. App'x 429 (2d Cir. 2009) (motion to dismiss order based on "references to FCC submissions and regulatory pronouncements"); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("the Court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings").

[4] LightSquared asserts that the ISR "did not require [that handsets be capable of] 'interference-free' satellite communications." L. Br. 3 & n.2; *see* H. Br. 2. But the very 2003 Order cited by LightSquared shows the opposite. *See* Ex. L-2 ¶ 104 (if a satellite "operator does receive harmful interference from [ancillary terrestrial] operations . . . the ATC operator must resolve such interference.").

Order ¶¶ 1, 3); and (iii) in 2010, LightSquared for the first time disclosed plans for a terrestrial network with population coverage of 260 million people (2010 FCC Order re Harbinger Acquisition ¶ 72 & attached Harbinger Business Plan Letter), and candidly acknowledged that its "plans for providing service have evolved . . . since 2004 . . . and its current plans differ from that of its predecessor."  Mot. 5.

In short, Plaintiffs' own admissions and the FCC record independently establish that their Terrestrial Plan was neither disclosed nor authorized until long *after* the purported representations and agreements upon which their claims are predicated.  Given Plaintiffs' inability to specify a single written or oral statement even referencing the purported representations and agreements, their inconsistent and implausible theories should not be permitted to "unlock the doors of discovery" for *in terrorem* settlement effect.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.  LIGHTSQUARED'S CONTRACT CLAIMS SHOULD BE DISMISSED.

Nothing remains of Plaintiffs' contract-based claims.  Harbinger's "third-party beneficiary" claim (Count VII) has been voluntarily dismissed.  H. Dkt. 87.  And LightSquared now concedes that Defendants' alleged promises in 2002 "not to raise any objections to the [MSV or SkyTerra] network . . . and to conduct future operations in a way that would not interfere with [MSV's and SkyTerra's] network" (L. Br. 15) were not relevant at the time, (*id*. 2), and thus could not have concerned, any later-disclosed Terrestrial Plan.  *Id*. 15.[5]

---

[5] Virginia law applies to Plaintiffs' claims.  Virginia is concededly where LightSquared's predecessors were located, the negotiations occurred and the Terrestrial Plan was to be performed.  LAC ¶¶ 69, 77, 135(a) &(c), 136(a) &(g), 158, 166.  Plaintiffs concede the GPS Council's residence, and the parties' alleged "negotiations" "in Virginia and Washington," are legally irrelevant.  L. Br. 5.  Plaintiffs allege no other conduct tying this suit to D.C. and even disclaim reliance on Defendants' FCC submissions.  L. Br. 7.  Accordingly, jurisdictional

A.      **No Promises Are Identified.**

LightSquared's contract claims are entirely dependent on unspecified emails and "negotiations" preceding the 2002 and 2009 Letter Agreements.  L. Br. 15.  But none is alleged to contain anything of substance, much less the critical FCC Waiver, GPS Design and "no interference" promises.  *Compare* Mot. 11-12 *with* L. Br. 17.  To the contrary, LightSquared describes these "email" and verbal "communications" merely as "negotiations" about drafts of the Letter Agreements—which it admits do not contain the Alleged Promises either.  L. Br. 16; LAC ¶¶ 51-54, 75-79, 158, 166.  LightSquared's contract-related claims must therefore be dismissed.

B.      **The Promissory Estoppel and Implied Covenant Claims Are Meritless.**

LightSquared's own authority confirms that its promissory estoppel claim (Count I) "is not a cognizable cause of action" under Virginia law.  *Mongold v. Woods*, 677 S.E.2d 288, 298 (Va. 2009).  LightSquared mistakenly argues that D.C. law applies, but D.C. law would not save its promissory estoppel claim.  Because enforceable contracts allegedly govern the same subject matter (Mot. 16), quasi-contract may not be pleaded in the alternative, even if, as LightSquared argues (L. Br. 20), the "parties dispute the terms."  *E.g.*, *Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 96 (D.D.C. 2004).

LightSquared concedes that its implied covenant claim is not a separate claim at all.  L. Br. 19.  In any event, the doctrine does not apply outside the U.C.C.[6]  Finally, the implied

_____

discovery sought is "unnecessary"—"[e]ven if the precise place of contracting is somewhat unclear."  *Global Reinsurance Corp. of Am. v. Century Indem. Co.*, 2014 WL 4054260, at *4 (S.D.N.Y. Aug. 15, 2014) (citations omitted); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 2007 WL 4820968, at *4 (S.D.N.Y. Sept. 18, 2007) (denying discovery because "state of plaintiff's domicile" is presumptively "where the greatest injury occurred").

[6] LightSquared's sole authority (*Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F.App'x 336, 345 (4th Cir. 2013)) is a *per curiam* decision that does not overturn the line of recent Virginia cases

covenant cannot create the Alleged Promises—"an entirely new condition to the contract."

*Beitzell & Co., Inc. v. Brown-Forman Corp.*, 1988 WL 66194, at *4 (D.D.C. June 17, 1988).

**C.    The *Quantum Meruit* and Unjust Enrichment Claims Fail.**

For the same reason, the existence of an enforceable agreement precludes LightSquared's

quasi-contract claims (Counts II and VI)—*regardless* of whether the "parties dispute the terms."

*Compare* L. Br. 20 *with CBS Broad, Inc. v. Jones*, 460 F. Supp.2d 500, 506 (S.D.N.Y. 2006).

This principle is particularly applicable here because the "benefits" allegedly conferred on

Defendants—MSV and SkyTerra's "foregoing the use of 4 MHz of spectrum, making technical

changes to its equipment, and restricting its power levels"—was expressly required by the 2002

and 2009 Letter Agreements.  *Compare* L. Br. 21 *with* D. Exs. A&B.  When a written agreement

addresses the claimed benefit, *quantum meruit* or unjust enrichment may not be used to create

extracontractual obligations.  *MP Leasing Corp. v. Colonna's Shipyard*, 2009 WL 2581575, at

*4; *Ciliv v. UXB Int'l, Inc.*, 2012 U.S. Dist. LEXIS 151514, at *6-7 (W.D. Va. Oct. 22, 2012).

**D.    The Statute of Frauds Applies.**

LightSquared seeks to avoid the statute of frauds by arguing that the parties' performance

of the 2002 and 2009 Letter Agreements also constituted "partial performance" of the agreed oral

contract.  L. Br. 18-19.  But, that doctrine applies *only* when partial performance is "consistent

with no theory other than the existence of the alleged oral contract."  *Pair v. Rook*, 195 77 S.E.2d

395, 401 (Va. 1953).  Here, the alleged partial performance—Defendants' "withdraw[ing] their

FCC objections" and MSV and SkyTerra "restrict[ing] its out-of-band emissions" (L. Br. 18;

LAC ¶¶ 54, 79)—was mandated, and thus entirely explained, by the Letter Agreements.  And,

---

explicitly recognizing an exception for non-U.C.C. contracts.  *See Jones v. Fulton Bank, N.A.,*
2013 WL 3788428, at *7 (E.D. Va. July 18, 2013) (collecting cases and stating that "[u]nder
Virginia law, every contract contains an implied covenant of good faith" except non-U.C.C.
contracts).

LightSquared has yet to identify a single "email" or other writing—much less one with the requisite "signature affixed to it"— "memorializing" the Alleged Promises, as required.  L. Br. 18-19; *Mizell v. Sara Lee Corp.*, 2005 WL 1668056, at *6 (E.D. Va. June 9, 2005), *aff'd*, 158 F. App'x 424 (4th Cir. 2005).

## II.     *NOERR-PENNINGTON* BARS PLAINTIFFS' NON-CONTRACT CLAIMS.

Plaintiffs do not dispute the dispositive *Noerr-Pennington* principle (*see* Mot. 21) that where an injury "is the result of valid governmental action," those "urging the governmental action enjoy *absolute immunity*" from plaintiffs' claims.  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988).  Plaintiffs assert that their injuries resulted from the FCC "suspending [LightSquared's] authority for terrestrial operations"—"a direct and foreseeable result of Defendants'" petitioning activity.  LAC ¶ 11; *see* HAC ¶¶ 6, 220.  Plaintiffs cannot avoid their own allegations simply by claiming that the FCC's actions were merely an "intervening," rather than the sole, cause of their injuries.  L. Br. 8.  The parties agree that, absent the suspension, there would be no injuries, and no lawsuit.  *Id.*; HAC ¶¶ 6, 220.

Plaintiffs' other attempts to avoid *Noerr-Pennington* fail.  *First*, Harbinger's own pleadings betray its claims (H. Br. 7, 20-21) that the parties' activities were unrelated to FCC spectrum proceedings, and that the relevant FCC decisions were tantamount to routine tariff filings.  *E.g.*, LAC ¶¶ 47-51, 135-36; HAC ¶¶ 76, 125.  *Second*, Harbinger's argument that the doctrine does not apply to "deceits in adjudicatory proceedings" is based upon inapposite "sham litigation" authority.  H. Br. 21.  In any event, *Noerr-Pennington* bars claims, like Plaintiffs', that defendants made "materially false representations" in adjudicative proceedings.[7]  *Third*, conduct

---

[7] *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F. Supp. 2d 578, 591-97 (W.D.N.Y. 2000), *aff'd*, 229 F.3d 1135 (2d Cir. 2000) (*Noerr-Pennington* applicable to "fraud").  Plaintiffs' cases either did not involve petitioning or the sham litigation exception applied.

"incident to" petitioning—including "[c]irculars, speeches, newspaper articles, editorials . . . [and] memoranda"—is protected.[8]  None of LightSquared's cases involved any such conduct.  L. Br. 6.  *Fourth*, although Plaintiffs assert that they "do not seek to hold defendants liable for 'the FCC's denial of approval for the Terrestrial Plan,'" (L. Br. 8; *see* H. Br. 21), they do allege that FCC actions caused Plaintiffs' injuries, including "cancelled" contracts.  *E.g.* HAC ¶ 220.[9]

### III.   ALL STATE-LAW CLAIMS ARE PREEMPTED BY THE FCA.

Whatever their form, the *substance* of Plaintiffs' claims requires precisely the reexamination of FCC decisions (including the FCC order alleged to have caused Plaintiffs' losses) that the FCA prohibits.  LAC ¶¶ 1, 11, 139-40; HAC ¶¶ 6, 204, 220; *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1008 (9th Cir. 2010) (FCA "preempts claims that require a court to substitute its judgment for the agency's with respect to a market entry decision").  Preemption does not turn on whether Plaintiffs *explicitly* challenge FCC decisions.  L. Br. 9-10; H. Br. 22. State tort and contract claims for FCC-caused losses are barred even absent an overt challenge to the underlying ruling.  *Telesaurus*, 623 F.3d at 1001, 1006 (preemption of tort claims for damages suffered *after* FCC returned spectrum to plaintiff); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 989-90 (7th Cir. 2000) (contract and tort); *Chandler v. AT&T Wireless Servs., Inc.*, 2004 WL 6241877, at *2 (S.D. Ill. July 21, 2004) (contract).

Although LightSquared disclaims any challenge to the validity of the FCC decisions (L.

---

[8] *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 142 (1961); *In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, at *12 (S.D.N.Y. Sept. 30, 2009) (Berman, J.) *aff'd*, 407 F. App'x 520 (2d Cir. 2010).

[9] LightSquared's argument that the New York anti-SLAPP statute does not apply because its claims do not involve "public petition and participation" (L. Br. 8 n.5) is meritless.  Defendants' FCC objections—and the Letter Agreements themselves—are at the heart of its claims, which "materially relate[] to . . . efforts to report on, comment on, rule, challenge or oppose" LightSquared's FCC applications.  *Duane Reade, Inc. v. Clark*, 784 N.Y.S.2d 920, at *4 (Sup. Ct. N.Y. Co. 2004).

Br. 9 ), the Complaints' premise is that Defendants violated regulatory requirements and FCC

Orders (*e.g.*, by supposedly "driving outside the lane," "trespassing" on LightSquared frequency,

and not disclosing proprietary operating sensitivities), and obstructed an FCC technical working

group.  LAC ¶¶ 10, 100-103, 119-120, 127-132; HAC ¶¶ 3-4, 80-82, 93-96, 190-191, 201-202,

212-215; *see Telesaurus* at 1010 (preemption of allegations that defendant "'wrongfully' or

'unlawfully' operated under its FCC license" and that its use of frequencies was "improper").

LightSquared also alleges that the Defendants tricked the FCC into concluding that the receiver

overload problem precluded deployment of the Terrestrial Plan.  L. Br. 19 (Defendants'

"manipulate[d] [FCC] compatibility tests"); *see also* LAC ¶¶ 127-32; HAC ¶¶ 202-04.[10]

## IV.   ALL MISREPRESENTATION CLAIMS MUST BE DISMISSED.

### A.   Rule 9(b) Requires Dismissal.

LightSquared alone contests the applicability of Rule 9(b), relying on two fraudulent

conveyance cases to assert that particularity is unnecessary for its negligent misrepresentation

and constructive fraud claims (Counts VII and VIII) "because neither requires an *intent* to

deceive."  L. Br. 10.  These cases are inapposite because the "fraud or mistake" that triggers Rule

9(b) is not an element of a fraudulent conveyance claim.  *In re RSL COM PRIMECALL, Inc.*,

2003 WL 22989669, at *6 (Bankr. S.D.N.Y. Dec. 11, 2003).  By contrast, negligent

misrepresentation and constructive fraud each "bears a close legal relationship to fraud or

mistake."  *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008);

---

[10] Plaintiffs' quotation of an FCC statement that state claims are "not *generally* preempted" (H. Br. 22; L. Br. 9) omits the following sentence:  whether a claim "is prohibited by Section 332 will depend on the specific details of the award and the facts and circumstances of a particular case."  *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17022 (2000).  And contrary to LightSquared's argument, the FCC disagreed with *Bastien*'s ruling only with respect to complete preemption.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1040-41 (9th Cir. 2010) ("The FCC has interpreted *Bastien* to hold that it is the substance of the claim, not its form, that determines preemption").

*Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (Rule 9(b) applies to

"all averments of fraud or mistake").  Courts in this jurisdiction uniformly apply Rule 9(b) to

such claims.  *E.g.*, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 583 (2d Cir.

2005) (negligent misrepresentation "must be pled in accordance with" Rule 9(b)); *Naughright v.*

*Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011).

        Plaintiffs fail to identify any specific statement by the Defendants constituting, or even

referencing, the purported FCC Waiver, GPS Design or "non-interference" representations.  L.

Br. 10-11; H. Br. 2-4, 10.  LightSquared's allegations of unidentified statements by unidentified

Defendants to unidentified persons on unspecified dates violate Rule 9(b).  LAC ¶¶ 135(a)-(d);

H. Br. at 11; HAC ¶¶ 109, 121, 131, 163, 188; *Howard v. Galesi*, 1987 WL 18460, at *3

(S.D.N.Y. Oct. 6, 1987); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 513 (S.D.N.Y.

2011) (Berman, J.) ("where multiple defendants are involved in the alleged fraud, it is especially

important that the fraud be particularized as to each of them").[11]

**B.      The Economic Loss Doctrine Bars All Misrepresentation Claims.**

        Virginia's well settled economic loss rule—which applies where, as here, a plaintiff seeks

to "drown [contract law] in a sea of tort" (*East River Steamship Corp. v. TransAmerica Delaval,*

*Inc.*, 476 U.S. 858, 866 (1986))—bars all of Plaintiffs' tort claims.  Mot. 28-29.[12]  Plaintiffs

ignore the Motion's point that the doctrine applies because the allegedly breached FCC Waiver,

---

        [11] Harbinger's reliance on the group pleading doctrine (H. Br. 10) is misplaced.  That
"extremely limited" exception "does not apply to oral statements" during face-to-face
negotiations, and, even then, is available only when a declarant's identity is "peculiarly within
the knowledge of [Defendants]."  *Camofi Master LDC v. Riptide Worldwide, Inc.*, 2011 WL
1197659, at *6 (S.D.N.Y. Mar. 25, 2011).

        [12] Harbinger's voluntary dismissal of its third-party beneficiary claim (H. Dkt. 87) does not bar
application of the economic loss rule because its tort claims are derived from the alleged
agreements with MSV and SkyTerra.  *See Richmond v. McDevitt Street Bovis, Inc.*, 507 S.E. 2d
344, 346 (Va. 1988).

GPS Design Change and "no interference" duties exist—if at all—"solely by virtue of [a] contract," be it the Letter Agreements or the oral contracts that supposedly preceded them. *Dunn Constr. Co. v. Cloney*, 682 S.E. 2d 943, 946 (Va. 2009).  Further, the Complaint itself characterizes the GPS Council's assurances that LightSquared's hypothetical network could "coexist," and "would not interfere," with GPS devices as *promises* allegedly made "[i]n exchange for LightSquared's agreement" to restrict out-of-band emissions set forth in the 2002 and 2009 Letter Agreements.  LAC ¶ 80; *id.* ¶ 57; *see Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 781 (Va. 1996) (rejecting "unfulfilled promises or statements as to future events" as the basis for misrepresentation claims).

**C.**   **No Actionable Misrepresentation Is Pleaded.**

Plaintiffs' opposition papers do not identify a single alleged misrepresentation. Harbinger essentially abandons any misrepresentation theory, focusing instead on "omissions" and "half-truths."  H. Br. 1, 3-4, 6-12.  For its part, LightSquared identifies only two affirmative statements by the GPS Council, neither of which is alleged to be false.  *First*, in 2001-2002, unspecified Defendants supposedly made unspecified representations to unidentified persons that some unidentified predecessor's network "could exist" with GPS.  L. Br. 10-11.  But LightSquared concedes that no aspect of the Terrestrial Plan was disclosed until *after* these representations were made.  L. Br. 2-3; LAC ¶ 135(a).  *Second*, in 2009, unspecified "Defendants" allegedly made unidentified "representations" that "led LightSquared to believe" that "all concerns had been resolved" regarding tiny, low-power indoor "femtocell" transmitters, and that there were "no further objections" to their proposed use.  LAC ¶¶ 79, 98-99, 135(c), (d); L. Br. 2, 3, 10-11; HAC ¶¶ 144-45.  There is nothing false or misleading about these alleged statements:  the GPS Council undisputedly withdrew, and never resurfaced, its "quite limited" and "very narrow" objections to femtocell transmission.  HAC ¶¶ 70, 145, 153-54.

**D.**    **There Was No Duty to Disclose.**

Plaintiffs' fallback position is that Defendants should have disclosed "relevant information about the topic of the negotiations." L. Br. 13; *see* H. Br. 10. But this is not the law. A "duty to disclose does not normally arise when parties are engaged in an arm's length transaction." *Bank of Montreal v. Signet Bank,* 193 F.3d 818, 829 (4th Cir. 1999). The law will generally leave an arms'-length counterparty "where he has been placed by his own imprudent confidence." *Horner v. Ahern*, 153 S.E.2d 216, 219 (Va. 1967). And, in any event, Plaintiffs fail their own test. As the record reflects, objections to a Terrestrial Plan were concededly not "relevant" at the time the parties negotiated the Alleged Agreements (L. Br. 17), and LightSquared has been unable to identify a single substantive written or oral statement, much less a relevant one.

Only Harbinger claims that the GPS Council had a "special relationship" of trust with MSV and SkyTerra giving rise to a duty to disclose. H. Br. 9. LightSquared—which at least was in privity with MSV and SkyTerra—apparently does not believe that its predecessors-in-interest enjoyed such a relationship with any Defendant. In any case, Harbinger's "special relationship" argument is predicated on nothing more than allegations that MSV or SkyTerra and the GPS Council "worked together" in 2009, their representatives once exchanged unspecified information, and called each other "good neighbors." H. Br. 10; HAC ¶¶ 147, 149. That is far from enough, especially given Harbinger's admission that it never even had a contractual relationship with any Defendant—much less one of special trust.[13] Even a long series of separate transactions do not constitute exceptional circumstances sufficient to create a special relationship. Mot. 30-32; *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir.

_____

[13] *See* L. Dkt. 63 ( "there are no contractual relationships between Harbinger and the GPS Defendants").

2012) (requiring "actual privity of contract" or "a relationship so close as to approach that of privity"); *MBIA Ins. Co. v. GMAC Mortgage LLC*, 914 N.Y.S.2d 604, 610 (N.Y. Sup. Ct. 2010).

Further, it is undisputed that the GPS Council made the challenged statements to the FCC, and not "directly" to Harbinger as the law requires. *Estate of Sabarese v. First Nat. Inv. Corp.*, 92-8139, 1994 WL 573320, at *4 (S.D.N.Y. Oct. 18, 1994); HAC ¶¶ 103-25. Nor could any Defendant "intend or expect[]," as required, that Harbinger would discover and rely on such comments when years later it made its LightSquared investment. H. Br. 3, 12.

Finally, Harbinger cannot avail itself of the superior knowledge doctrine because (i) "expertise alone cannot create a special relationship," *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181 (2011); and (ii) Harbinger does not plead facts showing that Defendants were "aware of the use to which the information would be put" by MSV and SkyTerra successors and "supplied it" to entice Harbinger to make that investment; *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 2013 WL 837536, at *3 (S.D.N.Y. Mar. 6, 2013).

For its part, LightSquared argues that the GPS Council's "superior knowledge" required it to disclose the susceptibility of GPS receivers to overload interference. L. Br. 13. The Court need not address this issue: LightSquared's express disavowal of any "intent to defraud" (L. Br. 10) is fatal. *First*, "reckless nondisclosure is not actionable." *Bank of Montreal*, 193 F.3d at 827; *Rambus, Inc. v Infineon Techs. AG*, 164 F. Supp. 2d 743, 750 (E.D. Va. 2001), *aff'd in part, vac'd in part, rev'd in part on other grounds*, 318 F.3d 1081 (Fed. Cir. 2003) ("[C]onstructive fraud cannot, as a matter of Virginia law, be premised on a fraudulent omission."). *Second*, concealment or fraud by omission—a distinct claim not pled here—requires "*intent* to conceal a material fact." *Bank of Montreal*, 193 F.3d at 827. Thus, in *Remeikis v. Boss & Phelps, Inc.*, cited by LightSquared (L. Br. 13-14), liability was premised on a realtor's *deliberate*

concealment of termite infestation.  419 A.2d 986, 990 (D.C. 1980).

Plaintiffs do not challenge the central holdings of Defendants' cases (L. Br. 14):  superior knowledge of one's own business—here, Defendants' alleged proprietary knowledge about their GPS receivers—does not create a duty to disclose.  Mot. 32.  And, because LightSquared admits that it first disclosed its Terrestrial Plan *after* the 2002 representations (L. Br. 2-3), and admits that the 2009 femtocell negotiations did not concern high-power transmissions (HAC ¶¶ 145, 153-54), there could not possibly have been a duty to disclose:  "the one concealing [must] . . . *know*[] the other is acting upon the assumption that the fact does not exist."  *Bank of Montreal*, 193 F.3d at 829.

## E.    Plaintiffs Have Not Pled Reliance or Loss Causation.

For similar reasons, Plaintiffs have not pled reliance and loss causation.  LightSquared's contention that it had to rely on Defendants' assurances because potential overload was a "trade secret" (L. Br. 11) is betrayed by Plaintiffs' own statements that they were "cognizant" of receiver overload (Mot. 32 n.12) and able to test for it (LAC ¶¶ 123-26), and that "issues with the GPS industry and the FCC" were "readily available."  *In re Harbinger Capital Partners Funds Investor Litig.*, No. 12-CV-01244 (S.D.N.Y. Jan. 16, 2013) (Dkt. 102) at 16.  And Harbinger, which admits "LightSquared's bankruptcy . . . as a causational matter, in fact, 'resulted' from the action by the [FCC]" (*id*. at 2; *see* HAC ¶¶ 6, 220), has not pled a decline in value of LightSquared due to any misstatement by Defendants.[14]  HAC ¶¶ 224-41; LAC ¶ 93.[15]

---

[14] Reliance and loss causation are "properly considered at the motion to dismiss stage."  *Terra Sec. Asa Konkursbo v. Citigroup, Inc.*, 740 F. Supp. 2d 441, 449 (S.D.N.Y. 2010), *aff'd*, 450 F. App'x 32 (2d Cir. 2011); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) (affirming dismissal absent allegations that "market reacted negatively to corrective disclosure").

[15] Harbinger's punitive damages request is meritless.  Dismissal of punitive damages requests is routine where, as here, the plaintiff "fails to allege facts necessary to meet the standard for punitive damages."  *In re Marketxt Holdings Corp.*, 361 B.R. 369, 407 (Bankr. S.D.N.Y. 2007).

F.    **Harbinger's Equitable Estoppel and
      Consumer Protection Claims Must Be Dismissed.**

Harbinger improperly invokes equitable estoppel (Count VI) "to create a right where none exists." *Grishman v. City of New York*, 183 A.D.2d 464, 466 (1st Dep't 1992). Equitable estoppel, moreover, is a defense, not an independent claim, and must be "invoked sparingly and only under exceptional circumstances." *Badgett v. N.Y.C. Health & Hosps. Corp.*, 227 A.D.2d 127, 128 (1st Dep't 1996). As Harbinger's own cases confirm, this rule is to be invoked only defensively. H. Br. 17.

Separately, this Court is "bound by decisions of the Appellate Division" dismissing Section 349 claims involving securities transactions as "outside the scope of the statute." *Spirit Partners, L.P. v. Audiohighway.com*, 2000 WL 685022, at *7 (S.D.N.Y. May 25, 2000). A one-sentence, contrary analysis in *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639, 640-41 (4th Dep't 2001), has been widely rejected. *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 342 (W.D.N.Y. 2012); *DeAngelis v. Corzine*, 2014 WL 1695186, at *8 (S.D.N.Y. Apr. 16, 2014); *Pew v. Cardarelli*, 2009 WL 3165759, at *4-6 & n.5 (N.D.N.Y. Sept. 29, 2009).

## V.    HARBINGER'S SECURITIES CLAIMS MUST BE DISMISSED.

A.    **Harbinger's Rule 10b-5 Claim Fails.**

1.    ***Nortel* Forecloses Harbinger's Standing.**

Although Harbinger merges standing and Rule 10b-5's "in connection with" requirement (H. Br. 12-13), standing is a "distinct inquir[y]" that dooms its securities claim from the outset. *Ontario Public Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004). Harbinger's sole standing argument is that *Nortel* does not *automatically* bar third-party securities claims. H. Br. 13. But Defendants' argument is not that any such claim is barred, but rather that, as in *Nortel*, the relationship between the alleged misstatements and

LightSquared's securities is "too remote to sustain an action under Rule 10b-5." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007).  In fact, the connection here is even more tenuous than in *Nortel* because:  (1) *Nortel* allegedly inflated its financial statements so it could use its own stock to acquire a JDS business unit (*Nortel*, 369 F.3d at 29; Amended Compl. at ¶¶ 4-5, *In re Nortel Networks Corp., Sec. Litig.*, 2002 WL 34429376, No. 01-CV-01855 (S.D.N.Y. Jan. 4, 2002) ("Nortel Compl.")); (2) the statements were so inherently material to the value of JDS stock that the revelation of Nortel's fraud caused JDS stock to plummet; and (3) Nortel was the issuer, JDS's, largest customer, had a "number of business relationships" with JDS, and their businesses were "closely entwined," such that statements about Nortel's business necessarily reflected on JDS.  Nortel Compl. ¶ 12.

## 2. __Harbinger's Stated "In Connection With" Rule Is Untenable.__

Harbinger's "in connection with" theory—that a statement is "connect[ed]" to the purchase of third-party securities whenever it "concern[s]" the securities and influences their ultimate purchase, H. Br. 12-13—is impermissibly broad, and would expose corporations to limitless liability for any statement having any potential impact on the value of thousands of third-party securities.  *Id.*; Mot. 34.  Harbinger offers no response to Defendants' cases, which uniformly reject this rule.  Mot. 37; H. Br. 12-13.  Separately, Harbinger does not even try to meet the requirements to plead a proper "connection"—that (i) Defendants made the statements to "induc[e]" Harbinger to buy LightSquared securities, and (ii) Harbinger's investments in LightSquared were "integral" to some alleged scheme.[16]  Mot. 36.

---

[16] Harbinger's cases are consistent with these requirements. H. Br. 13; *see, e.g.*, *Affiliated Ute Citizens of Utah v. U. S.*, 406 U.S. 128, 152 (1972) (defendants fraudulently "encourage[ed] a market" for stock to increase "commission" and "gratuities"); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 93 (2d Cir. 2001) (misstatements encouraging investments in third-party securities partially owned by defendant); *Romano v. Kazacos*, 609 F.3d 512, 524 (2d Cir. 2010) ("proscribed conduct and the sale" were "part of the same

### 3. *Janus* Also Forecloses Harbinger's Section 10(b) Claim.

The parties agree that the GPS Council—not Deere, Garmin and Trimble—made the alleged misstatements.  Although Harbinger concedes *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303-04 (2011), requires allegations that each Defendant controlled the "content" and "decision" by the GPS Council to make and disseminate each claimed misstatement, no such allegations appear in its Complaint.  H. Br. 15; Mot. 38.  Defendants' alleged cooperation with, and oversight roles at, GPS Council, and the payment of unspecified expenses of the GPS Council, are insufficient to plead this element.  HAC ¶¶ 29-30, 109, 119; *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 576-77 (S.D.N.Y. 2012) ("close business ties" and "influence" insufficient); *Janus*, 131 S. Ct. at 2299, 2304-05 (100% overlap in officers insufficient); *Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18, 25 (2d Cir. 2013) ("knowing and substantial assistance" in authoring statements insufficient).  Harbinger also improperly invokes the group pleading doctrine (H. Br. 14), which bars "blanket references to acts or omissions" by all "Defendants," or by "Deere, Garmin, and Trimble" collectively.  *E.g.*, HAC ¶¶ 30-31; *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *9 (S.D.N.Y. Sept. 28, 2012); *In re Lululemon Sec. Litig.*, 2014 WL 1569500, at *14 (S.D.N.Y. Apr. 18, 2014) (requiring "particularized allegations" about defendant's "role in shaping [] content").[17]

### 4. Defendants Owed No Disclosure Duties to Harbinger Under Federal Law.

Contrary to Harbinger's argument (H. Br. 7), disclosure duties under Rule 10b-5 are

---

fraudulent scheme") (citations omitted).  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 169, 176 (3d Cir. 2000), is inapposite because there, unlike here, the defendant was both the tender offeror *and* the author of the misstatement.  Notably, *Semerenko* cited with approval cases dismissing securities claims because, as here, "the degree of proximity between the claimed fraud and the securities transaction was simply too attenuated."  223 F.3d at 175.

[17] Harbinger's cases applying the group pleading doctrine to common law fraud claims (H. Br. 14-15) are inapposite because common law fraud claims are not covered by *Janus*.  *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 263 (S.D.N.Y. 2011).

"imposed and defined by federal common law," not New York law. *Steginsky v. Xcelera, Inc.*, 741 F.3d 365, 367 (2d Cir. 2014). A securities-law duty to disclose requires a "fiduciary or other similar relationship of trust and confidence between the parties to the transaction," *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d at 512 (Berman, J.); *and* "specif[ication]" of the "statement that is alleged to be materially misleading because of the information it omits." *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 362-63 (S.D.N.Y. 2013) (plaintiffs must "cull and identify specific statements" rather than relying on "vague remarks") (cited in H. Br. 6).

A fiduciary relationship with Harbinger was not created by (i) Defendants' supposed superior knowledge of their devices (H. Br. 8), *see In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 372 n.12 (S.D.N.Y. 2011) (deeming inapplicable New York's superior knowledge doctrine); or (ii) Harbinger's claimed expectation, based on FCC rules, that Defendants would volunteer every potential interference issue (H. Br. 4). *See In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d at 512 (government-mandated disclosure of auction practices did not create special relationship with buyer of third-party securities).

Harbinger also fails to plead with particularity any "specific" statement rendered misleading by the claimed omission. *Supra* Point IV.A. The GPS Council allegedly directed its comments at one issue only—out-of-band emissions—and its specific statements on that topic were concededly truthful. H. Br. 3-4, 11. These statements were not rendered misleading because the GPS Council did not volunteer information about "another problem" that "has nothing to do with the transmission of a signal outside its licensed band." LAC ¶¶ 98-99; *supra* Point IV.D; *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (required disclosures about investment risks did not create duty to disclose all "related subjects"); *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 219 (S.D.N.Y. 2012) (no duty to

disclose "full litany of information" because omitted information did not impact accuracy of statements made).

**B.**   **Harbinger's Control Person Claim Should Be Dismissed.**

Harbinger's Complaint is devoid of facts showing each Defendant:  (1) exercised actual control over the GPS Council and the specific transaction in question, as required, *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012); and (2) was a culpable participant.  *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013) (requiring "particularized facts" establishing each Defendant's scienter); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (mandating "individualized determination" of each defendant's "control of the primary violator" and "particular culpability").  Defendants' alleged ownership and control of the GPS Council (H. Br. 16) are "not enough to infer knowledge or recklessness," *Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *12 (S.D.N.Y. Dec. 20, 2002), and "conclusory allegations of an agency relationship" do not properly plead control. *Converse, Inc. v. Norwood Venture Corp.*, 1997 WL 742534, at *3-4 (S.D.N.Y. Dec. 1, 1997).

**VI.**   **LIGHTSQUARED'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED.**

Even LightSquared all but concedes the absurdity of a claim for contractual interference premised on conduct that predates the contract itself.  L. Br. 24.[18]  And, with respect to its claim of interference with *prospective* business relations or expectancies, LightSquared confuses the analysis by citing a case concerning an *existing* contractual relationship.  *See Onyeoziri v. Spivok*, 44 A.3d 279, 282-83 (D.C. 2012).  It also relies on a 30-year old case regarding contact

---

[18] LightSquared is able to unearth only a solitary municipal court decision for the proposition that constructive knowledge of contractual relationships will suffice.  L. Br. 23.  But even that case requires allegations that Defendants actually knew of facts that enabled them to discover the specifics of each transaction.  *Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 62 (Va. Cir. Ct. 1997).

with a third party, even though none is alleged here.  *See Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 593-94 (Va. 1984).  Recent cases confirm that allegations of "direct or indirect contact" with the source of the business expectancy and a competitive relationship—all of which are absent here—are essential to a prospective relations claim.  *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600-01 (E.D. Va. 2005) (collecting Virginia Supreme Court cases).[19]  Moreover, it was the FCC's order suspending the Terrestrial Plan—which Congress enacted into law—that caused any purported termination of business relationships.  LAC ¶¶ 1, 11, 139-40; HAC ¶ 220.  Indeed, LightSquared claims it consummated dozens of agreements *after* Defendants' September 2010 statements about receiver overload but prior to the FCC order blocking the Terrestrial Plan.  LAC ¶ 93.

## VII.   HARBINGER'S COUNTS I-VI AND LIGHTSQUARED'S COUNTS II, III, V AND VI ARE TIME-BARRED.

Harbinger does not dispute that the alleged misrepresentations and omissions occurred more than five years ago, and that 28 U.S.C. § 1658(b) imposes a five-year statute of repose.  Rather, it contends that the statute is tolled based on the "continuing wrong" doctrine.  H. Br. 23.  However, "there is no 'continuing violations' exception to the absolute bar of the statutory limitations period" in the securities fraud context.  *Stoll v. Ardizzone*, 2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007).[20]  Tolling doctrines are "fundamentally inconsistent with" 28 U.S.C. § 1658(b).  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

Plaintiffs' hodgepodge of defenses to the state law statute of limitations bar is meritless.

---

[19] LightSquared allegations that Defendants used "improper methods" (L. Br. 24) is untenable because (1) the underlying commercial relationships did not even exist in the relevant period, and (2) none of Defendants' alleged methods—specifically FCC petitions—were "improper." *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 710 S.E.2d 716, 720 (Va. 2011).

[20] *See also Marini v. Adamo*, 995 F. Supp. 2d 155, 183 (E.D.N.Y. 2014) (five-year statute is "an unqualified bar "); *P. Stolz Family P'ship, L.P. v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004) (repose period "begins to run without interruption [upon] the necessary triggering event").

*First*, fraudulent concealment does not toll the limitations period because Plaintiffs do not plead a "trick or artifice" intended "to conceal the discovery of the cause of action," as required.[21] *Second*, New York's continuing violation doctrine is inapplicable to Harbinger's omission claims (H. Br. 24) because a "passive failure to disclose" is "not a continuing wrong." *Neumann v. Nassau Cnty. Med. Ctr.*, 619 N.Y.S.2d 721, 721 (2d Dep't 1994). Further, Harbinger's alleged "continuing consequential damages" "stemming from this initial fraud"—*i.e.*, investments allegedly made based on identical representations from 2002-2010 that "all interference objections had been resolved" (HAC ¶ 163)—"do[] not change" the accrual date. *Quintana v. Wiener*, 717 F. Supp. 77, 80 (S.D.N.Y. 1989). *Third*, the date of Harbinger's economic loss is irrelevant under CPLR § 213(8). H. Br. 24; Mot. 47, 48 n.30; *Riis v. Mfrs. Hanover Trust Co.*, 632 F. Supp. 1098, 1102-03 (S.D.N.Y. 1986) (statute of limitations begins to run on discovery of securities claim). *Fourth*, the three-year period applicable to its contract and quasi-contract claims has run because the "first and foremost" breach alleged is Defendants' manufacture of "defective" receivers since 2003. L. Br. 24-25; LAC ¶¶ 131, 159, 167; *see id.* ¶¶ 7, 157, 165.

## CONCLUSION

For these reasons, and those in the Motions, the Complaints should be dismissed.

---

[21] *Mid-Atl. Bus. Commc'ns, Inc. v. Va. DMV*, 606 S.E.2d 835, 839 (Va. 2005).

Dated: New York, New York
      September 15, 2014

Respectfully submitted,

By: */s/ William A. Isaacson*

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC  20015
(202) 237-9607
*Counsel for Trimble Navigation Ltd.*

By: */s/ Kenneth I. Schacter*

Kenneth I. Schacter
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000
*Counsel for Deere & Company*

By: */s/ Steven R. Schindler*

Steven R. Schindler
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street
15th Floor
New York, NY  10005
(212) 277-6310
*Counsel for The U.S. GPS Industry Council*
(Joining in all arguments except
Section V(A)(3))

By: */s/ Philip Le B. Douglas*

Philip Le B. Douglas
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939
*Counsel for Garmin International, Inc.*

By: */s/ Michael D. Hays*

Michael D. Hays
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Suite 700
Washington, DC  20004
(202) 776-2711
*Counsel for Garmin International, Inc.*

## DECLARATION OF SERVICE

Paul Bartholomew Green, an attorney admitted to practice before the bar of this Court, declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that a true and correct copy of the accompanying Defendants' Reply Memorandum in Support of Motions to Dismiss will be served via the Court's ECF electronic filing system simultaneously with the filing of this declaration, and that an additional copy will be sent to the parties listed below via UPS overnight mail.

Eugene F. Assaf, P.C.
K. Winn Allen
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Gary M. Elden
Todd C. Jacobs
Jacob W. Harrell
Daniel M. Hinkle
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606

Matthew S. Dontzin
Tibor L. Nagy
David A. Fleissig
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, NY 10075

Dated:  Irvine, CA
        September 15, 2014                    _____/s/ Paul Bartholomew Green_____
                                                        Paul Bartholomew Green